UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---------------------------------- x
:
B.W.P. DISTRIBUTORS, INC.,                :
:
    Plaintiff/Counterclaim Defendant,   :
:   Case No. 07 CIV. 9588
    v.                                    :
:
OE PLUS LTD                               :
:
    Defendant/Counterclaim Plaintiff.   :
:
:
---------------------------------- x

## ANSWER, AFFIRMATIVE DEFENSES AND COUNTERCLAIM

    OE PLUS LTD ("OE Plus"), for its Answer to the Complaint of B.W.P. Distributors, Inc. ("BWP"), its Affirmative Defenses and its Counterclaim against BWP, states as follows:

    1.    Admits the allegations of Paragraph 1.

    2.    Denies the allegations of Paragraph 2.

    3.    Admits that the Complaint seeks the relief described in Paragraph 3; denies that BWP is entitled to such relief or any relief from OE Plus.

    4.    Admits the allegations of Paragraph 4, upon information and belief.

    5.    Admits the allegations of Paragraph 5.

    6.    Does not contest jurisdiction.

    7.    Denies that OE Plus conducts business within the County of Westchester; otherwise does not contest venue.

    8.    Admits that OE Plus derives revenues from interstate commerce; otherwise denies the allegations of Paragraph 8.

9. Admits that the parties entered into an agreement with one of the parties, OE Plus, located in Massachusetts, and the other party, BWP, located in Westchester County, New York; hence, the parties understood that their acts pursuant to their performance under the agreement would have consequences in New York and Massachusetts.

10. Admits the allegations of Paragraph 10, upon information and belief.

11. Admits the allegations of the first sentence of Paragraph 11. In response to the second and third sentences of Paragraph 11, admits that at all times relevant hereto, BWP's purchases of remanufactured automotive parts from OE Plus, and its returns of cores, were made subject to OE Plus's Core Return Policy, a copy of which is attached hereto as Exhibit A; otherwise denies the allegations of the second and third sentences of Paragraph 11.

12. Admits the allegations of Paragraph 12, upon information and belief.

13. Admits that BWP returned cores to OE Plus subject to OE Plus' Core Return Policy, which provides for credits to be given provided BWP's core returns comply with the requirements of said Core Return Policy; otherwise denies the allegations of Paragraph 13.

14. Admits that OE Plus has, at all times relevant hereto, sold automotive parts to competitors of BWP's, and that such sales included credit terms; otherwise denies the allegations of Paragraph 14.

15. Denies the allegations of Paragraph 15.

16. Denies the allegations of Paragraph 16.

17. Denies the allegations of Paragraph 17.

18. Admits that OE Plus has informed BWP that it would not allow BWP to take credits for core returns which were not in compliance with OE Plus' Core Return Policy; otherwise denies the allegations of Paragraph 18.

19. Admits that OE Plus has demanded payment from BWP of the sum of $1,019,106.17, which sum is due and owning from BWP to OE Plus; otherwise denies the allegations of Paragraph 19.

20. Denies the allegations of Paragraph 20.

21. Repeats its responses to Paragraphs 1 through 20 above as if fully set forth herein.

22. Admits the allegations of the first sentence of Paragraph 22. In response to the second sentence of Paragraph 22, admits that at all times relevant hereto, BWP's purchases of remanufactured automotive parts from OE Plus, and its returns of cores, were made subject to OE Plus' Core Return Policy, a copy of which is attached hereto as Exhibit A; otherwise denies the allegations of the second sentence of Paragraph 22.

23. Denies the allegations of Paragraph 23.

24. Admits that OE Plus has demanded payment from BWP of the sum of $1,019,106.17, which sum is due and owing from BWP to OE Plus; otherwise denies the allegations of Paragraph 24.

25. Admits there is an actual dispute and controversy between the parties; otherwise denies the allegations of Paragraph 25.

26. Denies the allegations of Paragraph 26.

27. Admits that BWP seeks the relief described in Paragraph 27; denies that BWP is entitled to such relief or any relief whatsoever from OE Plus.

28. Denies the allegations of Paragraph 28.

29. Repeats its responses to Paragraphs 1 through 28 above as if fully set forth herein.

30. Admits the allegations of the first sentence of Paragraph 30. In response to the second sentence of Paragraph 30, admits that at all times relevant hereto, BWP's purchases of remanufactured automotive parts from OE Plus, and its returns of cores, were made subject to OE Plus' Core Return Policy, a copy of which is attached hereto as Exhibit A; otherwise denies the allegations of the second sentence of Paragraph 30.

31. Denies the allegations of Paragraph 31.

32. Denies the allegations of Paragraph 32.

33. Denies the allegations of Paragraph 33.

34. Denies the allegations of Paragraph 34.

35. Denies the allegations of Paragraph 35.

36. Denies the allegations of Paragraph 36.

37. Repeats its responses to Paragraphs 1 through 36 above as if fully set forth herein.

38. Denies the allegations of Paragraph 38.

39. Denies that OE Plus has dishonored any commitments to BWP; otherwise denies the allegations of Paragraph 39.

40. Denies the allegations of Paragraph 40.

41. Repeats its responses to Paragraphs 1 through 40 above as if fully set forth herein.

42. Denies the allegations of Paragraph 42.

43. Denies that OE Plus has dishonored any commitments to BWP; otherwise denies the allegations of Paragraph 43.

## AFFIRMATIVE DEFENSES

By alleging the defenses set forth below, OE Plus intends no alteration of the burden of proof and/or burden of going forward with evidence which otherwise exists with respect to any particular issue in law or equity. Furthermore, all such defenses are pled in the alternative, and do not constitute an admission of liability or that BWP is entitled to any relief whatsoever.

### FIRST AFFIRMATIVE DEFENSE
(Failure To State A Cause Of Action)

BWP's Complaint, and every purported cause of action contained therein, fails to allege facts sufficient to state a cause of action against OE Plus.

### SECOND AFFIRMATIVE DEFENSE
(Unclean Hands)

OE Plus is informed and believes and on that basis alleges, without admitting any liability whatsoever, that BWP's Complaint, and each and every purported cause of action contained therein, is barred in whole or in part by the doctrine of unclean hands.

### THIRD AFFIRMATIVE DEFENSE
(Estoppel)

OE Plus is informed and believes and on that basis alleges, without admitting any liability whatsoever, that BWP's Complaint, and each and every purported cause of action contained therein, is barred in whole or in part by the doctrine of estoppel.

### FOURTH AFFIRMATIVE DEFENSE
(Waiver)

OE Plus is informed and believes and on that basis alleges, without admitting any liability whatsoever, that BWP's Complaint, and each and every purported cause of action contained therein, is barred in whole or in part by the doctrine of waiver.

## FIFTH AFFIRMATIVE DEFENSE
(Laches)

OE Plus is informed and believes and on that basis alleges, without admitting any liability whatsoever, that BWP's Complaint, and each and every purported cause of action contained therein, is barred in whole or in part by the doctrine of laches

## SIXTH AFFIRMATIVE DEFENSE
(Contract)

OE Plus is informed and believes and on that basis alleges, without admitting any liability whatsoever, that BWP's Complaint, and each and every purported cause of action contained therein, is barred in whole or in part by contractual agreements between the parties.

## SEVENTH AFFIRMATIVE DEFENSE
(Failure To Comply With Core Return Policy)

OE Plus is informed and believes and on that basis alleges, without admitting any liability whatsoever, that BWP's Complaint, and each and every purported cause of action contained therein, is barred in whole or in part by BWP's failure to comply with the terms and conditions of OE Plus' Core Return Policy, pursuant to which all core returns by BWP were required to be made.

## EIGHTH AFFIRMATIVE DEFENSE
(Offset / Set-Off)

OE Plus alleges, without admitting any liability whatsoever, that it is entitled to an offset for amounts due and owing from BWP to OE Plus as alleged in OE Plus' Counterclaim below.

**COUNTERCLAIM**

Introduction

Counterclaim Plaintiff, OE Plus, Ltd., a remanufacturer of automotive starters and alternators, brings this Counterclaim against the Counterclaim Defendant, B.W.P. Distributors, Inc., a distributor and seller of automotive parts and a purchaser of OE Plus' products, pursuant to, <u>inter alia</u>, Massachusetts General Laws ("M.G.L.") Chapter 93A, section 11. OE Plus hereby seeks, <u>inter alia</u>, a judgment and award of treble damages and attorneys' fees under M.G.L. Chapter 93A for conduct constituting unfair and deceptive business practices in violation of M.G.L. Chapter 93A.

Parties

1. Counterclaim Plaintiff OE Plus, Ltd. ("OE Plus") is a Massachusetts corporation with a principal place of business at 620 Spring Street, P.O. Box 508, North Dighton, Massachusetts.

2. Counterclaim Defendant, B.W.P. Distributors, Inc. ("BWP") is, on information and belief, a New York corporation with a principal place of business at 215 Business Park Drive, Armonk, New York.

Factual Allegations

3. OE Plus is a remanufacturer of automotive parts known as remanufactured automotive starters and alternators. The remanufacturing process requires the remanufacturer first to acquire a used, non-functioning starter or alternator, known as a core. The remanufacturer obtains the cores from core brokers, automotive disassembly yards, other remanufacturers, or their customers. After obtaining a core, the remanufacturer completely disassembles the unit into its component parts, cleans, refinishes, replaces and repairs all worn

7

components, and then reassembles the product into a "good as new" starter or alternator. Approximately ninety percent of all automotive starters and alternators sold in the United States are remanufactured.

4.   When a remanufacturer sells the remanufactured starter or alternator to its customers, the price includes two components. The first component, known as the Exchange Price, accounts for the value added in the remanufacturing process by the remanufacturer. The second component, known as the Core Charge, accounts for the value of the core that is part of the unit sold. When the remanufacturer's customer sells the remanufactured product to the end user, it often accepts the return of a core from the end user. If the customer then ships the core to the remanufacturer within specified time limits (usually within twelve months of the original sale), the remanufacturer will credit the customer for the core charge price.

5.   The cost of a core to a remanufacturer varies greatly by application. The market price for cores fluctuates dramatically based upon supply and demand. For example, an alternator core that fits a brand new late model vehicle would be very expensive, somewhere between $80 and $100. That is because there are very few cores available for such models. Cores for older model vehicles are more readily available because more starters and alternators fail, and become available for exchange, the older the vehicle is. Thus the price for cores decreases dramatically according to the age of the starter or alternator part number. As the part number ages, the value of the core associated with that part in the core market decreases to the point where it ultimately is reduced to scrap value.

6.   As a part number ages, the demand for the part from end users decreases. Therefore, when a manufacturer's customer's sales of a part slows, upon making a sale of that part, it may decide to return the core to the remanufacturer but not order a replacement. That

8

returned core may be virtually worthless to the remanufacturer, but the customer could still seek to get back the original core charge of $80 to $100. For this reason, every remanufacturer has core return policies in place to protect it from abuse by customers.

       7.     In the case of OE Plus, the most important components of its Core Return Policy are the requirements that to receive credit for the return of a core, a customer: (a) must return the core only as a result of a purchase made from OE Plus of a specific part number; and (b) must return the core within twelve months of the original purchase from OE Plus. These requirements are critical to protect OE Plus from customers who attempt to abuse the system by dumping worthless old cores on OE Plus and seeking to be reimbursed for their original core charge.

       8.     OE Plus's Core Return Policy is printed in every OE Plus parts catalog that is distributed to its customers. Each sale of parts to its customers is made pursuant to that Core Return Policy. During all times relevant to this action, OE Plus's Core Return Policy stated as follows:

> "All cores must be returned in the original box, as distributed by OE Plus, LTD and identified by the corresponding OE Plus part number and UPC Code. Cores are subject to verification. In cases where a core does not match the number on its box, credit will be issued based upon our determination of that cores part number. All cores being returned must be as a result of purchases made on those specific units direct from the factory. <u>NO</u> substitutions are permitted. All cores must be returned within 12 months of the original purchase for credit eligibility, after that <u>NO</u> core credit will be allowed. Cores will be credited at the most current printed prices. <u>NO CORE CREDIT</u> WILL BE ISSUED FOR: Disassembled or broken cores, damaged cores as the result of fire or water, obsolete cores, modified or aftermarket cores not suitable for rebuilding, direct drive starter cores being returned for gear reduction units originally supplied or cores that are of scrap value only."

A copy of OE Plus's Core Return Policy is attached hereto as Exhibit A.

       9.     In approximately June, 2002, OE Plus began selling remanufactured starters and alternators to BWP. Since that time, the majority of goods sold by OE Plus to BWP were

BO1 15894284.1

shipped from OE Plus' facilities in North Dighton, Massachusetts to BWP's Distribution Center in Sutton, Massachusetts.

10. In May, 2005, BWP awarded OE Plus the starter and alternator business at BWP's Delran, New Jersey, Distribution Center. In order to get this business, BWP required that OE Plus remove or "lift" all of the existing product -- in this case, "Westling" brand starters and alternators – that was in the Delran facility, and provide a credit for such "lifted" product to BWP of approximately $600,000. OE Plus agreed to provide the credit in twenty four monthly installments, and also to provide payment terms of twenty four monthly installments for OE Plus product that replaced the Westling product. In accordance with the parties' discussions and industry practice, BWP and OE Plus understood that BWP would give OE Plus all of the Delran business for a period of time which would exceed the initial payment and credit period.

11. Since the mid-1990's, OE Plus has sold remanufactured starters and alternators to a competitor of BWP's, Autopart International ("AI'). OE Plus sold these products in at least ten locations that directly competed with BWP locations for many years. In April, 2006, OE Plus expanded its sales to AI and became the exclusive supplier of remanufactured starters and alternators to all of AI's stores.

12. Once BWP knew of the expanded OE Plus – AI relationship, BWP complained to OE Plus that this relationship would make it more difficult for BWP to compete with AI. Within a few months thereafter, BWP began over returning cores to OE Plus, i.e., returning cores where the original sale of the part associated with that core was more than twelve months prior to the date of return of the core. In fact, contrary to its past practices with OE Plus, during the last six months of 2006, BWP over returned large quantities of old cores on OE Plus and demanded full credit for them. Upon information and belief, BWP knew that such cores were not eligible for

10

credit under OE Plus' Core Return Policy because of their age, but it nonetheless attempted to take such credits from OE Plus.

13. Upon information and belief, BWP's over returning of cores to OE Plus in late 2006 constituted an attempt on BWP's part to cause economic injury to OE Plus in retaliation for OE Plus' decision to increase its business with BWP's competitor, AI.

14. On or about January 11, 2007, after repeated requests for orders from BWP's Delran Distribution Center (OE Plus had not received the normal weekly orders from the Delran Distribution Center for four to five weeks), BWP informed OE Plus that BWP would no longer be purchasing product from OE Plus for delivery to the BWP Delran Distribution Center, notwithstanding that the twenty four month period described in Paragraph 10 above had not yet expired.

15. On or about February 16, 2007, BWP informed OE Plus that BWP would no longer be purchasing product from OE Plus for delivery to the BWP Sutton, Massachusetts Distribution Center. With that notice, BWP effectively terminated its business relationship with OE Plus. At that time, Neil Stockel, President of BWP, told Eric Roberts, President of OE Plus, that BWP would pay all amounts owing to OE Plus and "would not hurt OE Plus on the way out."

16. At that time of the termination of the relationship between BWP and OE Plus, BWP owed OE Plus in excess of $1,000,000 for goods sold and delivered. Notwithstanding numerous demands for payment, BWP has failed and refused to pay the amounts due and owing to OE Plus.

17. On September 14, 2007, OE Plus, by and through its attorneys, sent a letter to BWP, by certified mail, return receipt requested, demanding payment of the sum of

$1,019,106.17. In that letter, counsel for OE Plus informed BWP that said amount is comprised of two components: (a) $264,410.77 for an accounts receivable balance that remains unpaid; and (b) $754,695.40 for excess core and warranty returns made during calendar year 2006. Counsel for OE Plus further informed BWP therein that said letter constituted a demand for relief pursuant to Massachusetts General Laws, Chapter 93A, Section 11, and that if the sum of $1,019,106.17 were not paid in full within fourteen days, OE Plus would have no choice but to seek to enforce its rights and remedies, and to take whatever action is necessary within the bounds of the law to recover all amounts due from BWP to OE Plus. Counsel for OE Plus further informed BWP therein that pursuant to Massachusetts General Laws, Chapter 93A, Section 11, OE Plus would be entitled to, and would seek recovery of three times the amount of its actual damages, along with all attorneys' fees incurred in connection with the prosecution of its action against BWP. A copy of this letter is attached hereto as Exhibit B.

18. During the month of October, 2007, OE Plus' counsel was contacted by BWP's counsel. During a series of telephone conversations, counsel for the parties discussed OE Plus' claims against BWP.

19. During one of those telephone conversations, OE Plus' President, Eric Roberts, participated. Mr. Roberts informed BWP's counsel, Andrew Greene, of the factual basis for the amounts due and owing from BWP to OE Plus.

20. At a time when OE Plus was compiling information at the request of BWP's counsel, BWP, through Mr. Greene, without any prior notice to OE Plus or its counsel, filed this action in an attempt to forestall the filing of an action by OE Plus against BWP in the Massachusetts courts.

21.     As of the date of the filing of this Counterclaim, the sum of $1,019,106.17, together with interest, attorneys' fees and treble damages, remains due and owing from BWP to OE Plus.

## COUNT ONE
### (Breach of Contract)

22.     OE Plus realleges the allegations of Paragraphs 1 through 21 above as if fully set forth herein.

23.     BWP's conduct alleged above constitutes multiple breaches of its contracts with OE Plus.

24.     Said breaches have caused OE Plus to suffer damages in an amount to be determined at trial.

## COUNT TWO
### (Breach of the Covenant of Good Faith and Fair Dealing)

25.     OE Plus realleges the allegations contained in Paragraphs 1 through 24 above as if fully set forth herein.

26.     There is implied in every contract an obligation that the parties deal with each other fairly and with good faith in the performance of their respective obligations.

27.     By its conduct described above, BWP has breached the covenant of good faith and fair dealing.

28.     As a direct and proximate result of BWP's conduct described above, OE Plus has sustained substantial damages in an amount to be determined at trial.

## COUNT THREE
### (Quantum Meruit)

29.     OE Plus realleges the allegations contained in Paragraphs 1 through 28 above as if fully set forth herein.

13

30. OE Plus conferred a measurable benefit upon BWP, namely, the shipment of product to BWP.

31. OE Plus had the reasonable expectation that it would be paid for such product.

32. BWP knowingly accepted the benefit of its receipt of said product and has failed and refused to pay for same, and has been unjustly enriched thereby.

COUNT FOUR
(Breach of Massachusetts General Laws Chapter 93A, Section 11)

33. OE Plus realleges the allegations contained in Paragraphs 1 through 32 above as if fully set forth herein.

34. OE Plus and BWP were, at all times relevant hereto, engaged in the conduct of trade or commerce within the meaning of Massachusetts General Laws ("MGL") Chapter 93A, Section 11.

35. The acts material to this claim occurred primarily and substantially in the Commonwealth of Massachusetts.

36. The acts of BWP as set forth above constitute unfair and deceptive acts or practices in violation of MGL Chapter 93A, Section 11.

37. The acts of BWP as set forth above were taken willfully and knowingly.

38. As a result of the acts of BWP as set forth above, OE Plus has suffered damages in a total amount to be determined at trial, plus interest, attorneys' fees, costs and treble damages.

**RELIEF REQUESTED**

WHEREFORE, OE Plus prays as follows:

1. That BWP's Complaint be dismissed in its entirety, with prejudice;

2. That judgment enter against BWP on Count I in an amount to be determined at trial, plus interest and costs;

14

3. That judgment enter against BWP on Count II in an amount to be determined at trial, plus interest and costs;

4. That judgment enter against BWP on Count III in an amount to be determined at trial, plus interest and costs;

5. That judgment enter against BWP on Count IV for violation of Massachusetts General Laws Chapter 93A, Section 11, for actual damages, consequential damages, treble damages, plus interest, costs and attorneys' fees; and

6. For such other relief as this Court deems just and proper.

                                        Respectfully submitted,

                                        OE Plus, Ltd.,

                                        By its attorneys,

/s/ Kent D.B. Sinclair
Kent D.B. Sinclair (Bar No. KS4877)
SEYFARTH SHAW LLP
World Trade Center East
Two Seaport Lane, Suite 300
Boston, MA 02210-2028
Telephone:    (617) 946-4800
Telecopier:    (617) 946-4801
Email:  ksinclair@seyfarth.com

Of Counsel:

Kevin J. Lesinski
SEYFARTH SHAW LLP
World Trade Center East
Two Seaport Lane, Suite 300
Boston, MA 02210-2028
Telephone:    (617) 946-4800
Telecopier:    (617) 946-4801

Dated:  November 30, 2007        Email:  klesinski@seyfarth.com