UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X
B.W.P. DISTRIBUTORS, INC.,                  ::          **ECF CASE**
                                            ::
                     Plaintiff,             ::          **The Hon. Kenneth M. Karas**
                                            ::
       -against-                            ::          **07 CV 9588**
                                            ::
OE PLUS LTD.,                               ::
                                            ::
                     Defendant.             ::
                                            ::
------------------------------------------------------------X

**MEMORANDUM OF LAW**

**IN SUPPORT OF MOTION TO DISMISS**

> Andrew Greene & Associates, P.C.
> Attorneys for Plaintiff
> 202 Mamaroneck Avenue
> White Plains, NY 10601
> 914-948-4800 (Tel)
> 914-948-4936 (Fax)

Of counsel: Thomas C. Landrigan, Esq.
            Daniel M. Felber, Esq.

## TABLE OF CONTENTS

PRELIMINARY STATEMENT .................................................. 1

STATEMENT OF FACTS .................................................... 3

    A.    Sophisticated Business Parties Enter Into Agreement Concerning Autoparts, Specifically Contemplating A Credit For Valuable Used And Returned Alternator Autoparts Known As "Cores" Which Are "Required" For Remanufacturing Process ........................................... 3

    B.    OE Plus Receives *Upfront* Benefit By Receiving $600,000 Worth of Autopart "Cores"Required For Its Business , Not To Be Fully Credited To BWP Until Conclusion of a Twenty Four Month Period ........................... 4

    C.    According To The Counterclaim, OE Plus Received And Accepted Valuable Autopart Cores Now Being Disputed For At Least *Seven* Months Prior To Termination of the Parties Relationship By BWP ...................... 6

    D.    OE Plus Now Claims That A "Catalog" Was *Always* The Exclusive Basis For Parties Agreement As To When Credits Should Be Given For Autopart "Cores" Actually Returned ...................................... 7

    E.    Failed Attempts To Settle Commercial Dispute In New York Concerning What Credits BWP Is Entitled To For Cores Actually Returned And Whether Any Amounts Are Owed ................................. 7

ARGUMENT

POINT I

    RECENT SUPREME COURT PRECEDENT REQUIRES DISMISSAL OF CLAIMS THAT ARE MERELY "CONCEIVABLE", BUT WHICH ARE NOT SUFFICIENTLY AMPLIFIED TO MAKE THESE CLAIMS "PLAUSIBLE" ON THEIR FACE ......................................................... 8

POINT II

NEW YORK CHOICE OF LAW RULES ...................................... 10

POINT III

    THE FIRST COUNTERCLAIM FOR BREACH OF CONTRACT
    SHOULD BE DISMISSED AS VIOLATIVE OF THE STATUTE
    OF FRAUDS ........................................................ 11

POINT IV

    THE FIRST COUNTERCLAIM  FOR BREACH OF CONTRACT
    SHOULD BE DISMISSED BECAUSE OE PLUS ACCEPTED THE
    GOODS PURSUANT TO THE UNIFORM COMMERCIAL CODE .......... 12

POINT V

    THE THIRD COUNTERCLAIMS ALLEGING VIOLATION OF
    MASSACHUSETTS CONSUMER PROTECTION LAW HAS NO
    APPLICATION TO THE PRESENT DISPUTE INVOLVING THE
    ALLEGED BREACH OF AN ARMS-LENGTH AGREEMENT
    BETWEEN SOPHISTICATED PARTIES AND MUST BE
    DISMISSED AS A MATTER OF NEW YORK LAW ....................... 16

    A.    Third Counterclaim Must Be Dismissed Under New York Law .......... 16

    B.    Third Counterclaim Must Be Dismissed Under Massachusetts Law ...... 17

POINT VI    THE THIRD CAUSE OF ACTION MUST BE DISMISSED
    BECAUSE SAME FAILS TO PLEAD FRAUD WITH
    PARTICULARITY .............................................. 20

POINT VII

    PARAGRAPHS 18, 19 AND 20 OF THE COUNTERCLAIMS
    PERTAINING TO THE PARTIES SETTLEMENT DISCUSSIONS
    SHOULD BE STRICKEN PURSUANT TO FEDERAL RULE OF
    CIVIL PROCEDURE 12(f) AS SAME CONTAIN IMMATERIAL,
    IMPERTINENT OR SCANDALOUS MATTER ........................... 22

CONCLUSION ....................................................... 24

**TABLE OF AUTHORITIES**

*Ahanotu v. Massachusetts Turnpike Authority*, 466 F. Supp. 2d 378 (D. Mass. 2006) . . . . . . . . 14

*Bell Atl. Corp. v. Twobly*, 127 S.Ct 1955, 164-165 (2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8,9

*Blimpie Int', Inc. v. Blimpie of the Keys,*
371 F.Supp2d. 469, 470-71 (S.D.N.Y. 2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

*Brink's Ltd. v. South African Airways*, 93 F.3d 1022, 1030-31 (2d Cir.1996)
(same), cert. denied, 519 U.S. 1116, 117 S.Ct. 959, 136 L.Ed.2d 845 (1997) . . . . . . . . . . . . . 10

*Celle v. Filipino Reporter Enter.*, 209 F.3d 163, 175 (2d Cir.2000) . . . . . . . . . . . . . . . . . . . . . . 10

*Chosum Int'l, Inc. v. Crisha Creations, Ltd.,* 413 F.3d 324,327 (2d Cir 2005) . . . . . . . . . . . . . . 9

*Clark-Fitzpatrick. Inc. v. Long Island R.R. Co.,*70 N.Y.2d 382,
389, 516 N.E.2d 190, 193-94, 521 N.Y.S.2d 653, 656-57 (1987) . . . . . . . . . . . . . . . . . . . . . . . . 17

*Concannon v. Galanti,* 348 Mass. 71, 202 N.E.2d 236 (Mass. 1964) . . . . . . . . . . . . . . . . . . . . . 16

*Conley v. Gibson, 355 U.S. 41 (1957)* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8,10

*Doyle v. Hasbro, Inc.,* 103 F.3d 186, 194 (1st Cir.1996) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

*Duclersaint v. Federal National Mortgage Assoc.,* 427 Mass. 809, 814 (1998) . . . . . . . . . . . . 19

*Foster v. WNYC-TV,* 1989 WL 146277 at 6 (S.D.N.Y.1989) . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

*Framingham Auto Sales, Inc. v. Workers' Credit Union,*
41 Mass.App.Ct. 416, 671 N.E.2d 963(Mass.App.Ct. 1996) . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

*Guaranty Trust Co. v. York,* 326 U.S. 99, 108-09, 65 S.Ct.
1464, 89 L.Ed. 2079 (1945) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*In re. Cabletron Sys., Inc.,* 311 F.3d 11, 28 (1st Cir.2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

*Hayduk v. Lanna,* 775 F.2d 441, 444 (1st Cir.1985) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

*Kelly v. L.L. Cool J.,* 145 F.R.D. 32 (S.D.N.Y.,1992.)
aff'd 23 F.3d 398 (2d Cir. 1992) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

*Klaxon Co. v. Stentor Elec. Mfg. Co.,* 313 U.S. 487, 496,
61 S.Ct. 1020, 87 L.Ed. 1477 (1941) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*Knapp Shoes, Inc. v. Sylvania Shoe Mfg. Corp.,* 72 F.3d 190, 200 (1st Cir.1995) . . . . . . . . . . 15

*Lazard Freres & Co. v. Protective Life Ins. Co.,* 108 F.3d 1531,
1539 (2d Cir.), cert. denied, 522 U.S. 864, 118 S.Ct. 169, 139 L.Ed.2d 112 (1997) . . . . . . . . . 10

*Mattoon v. City of Pitsfield,* 56 Mass.App.Ct. 124, 140, 775 N.E.2d
770, 783 (Mass.App.Ct. 2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

*McGinty v. Beranger Volkswagen, Inc.,* 633 F.2d 226, 228 (1st Cir.1980) . . . . . . . . . . . . . . . . 21

*Mead Corp. v. Stevens Cabinets, Inc.,,* 938 F.Supp. 87 D.Mass.1996 . . . . . . . . . . . . . . . . . . . . 21

*Meng v. Trustees of Boston University,* 44 Mass.App.Ct. 650,
651-652, 693 N.E.2d 183, 185 (Mass.App.Ct., 1998) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*Mills v. Polar Molecular Corp.,* 12 F.3d 1170, 1174 (2d Cir. 1993) . . . . . . . . . . . . . . . . . . . . . . . 9

*New England Data Services, Inc. v. Becher,* 829 F.2d 286, 288 (1st Cir.1987) . . . . . . . . . . . . . 21

*Newman & Schwartz v. Asplundh Tree Expert Co.,* 102 F.3d 660, 662 (2d Cir. 1996) . . . . . . . . 9

*Quaker State Oil Refining Corp. v. Garrity Oil Co., Inc.,*
884 F.2d 1510, 1513 (1st Cir.1989) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

*Romani v. Shearson Lehman Hutton,* 929 F.2d 875, 878 (1st Cir.1991) . . . . . . . . . . . . . . . . . . . 21

*Southwick Clothing, LLC v. GFT (USA) Corp.,* 2004 WL 2914093 (S.D.N.Y.) . . . . . . . . . . . . 18

*Spence v. Boston Edison Co.,* 390 Mass. 604, 616, 459 N.E.2d 80 (1983) . . . . . . . . . . . . . . . . 18

*Swenson Yellow Transp., Inc.,* 317 F.Supp.2d 51, 54 (D.Mass.2004) . . . . . . . . . . . . . . . . . . . . 18

*Teitelbaum v. Hallmark Cards Inc.,* 25 Mass.App.Ct. 555, 562,
520 N.E.2d 1333 (1988) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

*Wall v. CSX Transp., Inc.,* 471 F.3d 410 (2d Cir. 2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

*Wechsler v. Hunt Health Systems, Ltd.,* 330 F.Supp.2d 383, 424 (S.D.N.Y.,2004) . . . . . . . . . . 16

**STATUTES:**

Massachusetts General Law, Chapter 93 A, Section 11 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

Rule 12(b)(6) of the Federal Rules of Civil Procedure . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

Rule 12(f) of the Federal Rules of Civil Procedure . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

## PRELIMINARY STATEMENT

In or about October 26, 2007, BWP Distributors, Inc. ("BWP") commenced this action against OE Plus, Ltd. ("OE Plus") seeking, *inter alia*, declaratory relief and breach of contract in order to vindicate its customary rights to receive credits for automotive starter and alternator cores actually returned by BWP to OE Plus pursuant to the parties long-standing practices and dealings.

OE Plus counterclaimed asserting claims sounding in breach of contract, quantum meruit, and Massachusetts General Law, Chapter 93 A, Section 11, a Massachusetts consumer protection statute. OE Plus, incredibly, contends that it is entitled to money damages in excess of One Million Dollars for goods delivered, plus retain the entire value of automotive parts-goods and "cores" actually returned by BWP to OE Plus without credits of any kind being issued to BWP, plus recover treble damages and attorneys fess under a consumer protection statute. *See*, First Amended Answer, Affirmative Defenses & Counterclaim, dated February 28, 2008 ("Counterclaim"). BWP brings the instant motion to dismiss these overreaching claims which must fail as a matter of law.

The First Counterclaim sounding in breach of contract must be dismissed because this cause of action clearly violates both the Statute of Frauds and the basic requirements of the Uniform Commercial Code. At the outset, the breach of contract claim seeks to rely on an alleged two year distribution agreement that is not in writing, thus violating both New York's and Massachusetts' Statute of Frauds.[1]

---

[1]Indeed, the Court may recall that during the pre-motion conference of the parties, counsel for OE Plus initially agreed to withdraw any claim of breach of contract based upon this alleged, oral agreement, and then later, inexplicably, recanted. As set forth below, counsel may have done so after realizing that an elimination of this claim undermines the core premise of its deeply flawed consumer fraud claim, to wit: BWP cannot be deemed to have engaged in tortious conduct, which, at bottom, derives from "retaliation" by way of an alleged early termination of a two year oral "agreement" that was, in any event, unenforceable as a matter of law.

Equally egregious, the breach of contract claim violates the basic requirements under the Uniform Commercial Code that deems returned goods accepted unless specifically rejected. Here, the Counterclaim, on its face, concedes that for over seven months prior to termination of the parties' relationship, BWP delivered to OE Plus valuable goods (i.e. automotive part "cores") essential to their re-manufacturing business, without any objection or rejection of any kind by OE Plus. Indeed, it is clear from defendant's pleading that it was only after the termination of the parties' relationship that OE Plus first raised its claim seeking to deny to BWP customary monetary credits for goods actually "accepted" by OE Plus in the course of the parties custom and practices, all in contravention of well settled principles of commercial law. Accordingly for this reason, alone, the breach of contract claim must be dismissed.[2]

BWP also moves to dismiss the Third Counterclaim to prevent OE Plus Ltd. from "re-engineering" a garden variety contractual dispute between sophisticated business entities with a long term relationship in the automotive parts re-manufacturing industry into an entirely inappropriate claim under Massachusetts "Consumer Protection"statute, M.G.L. Chapter 93A, Section 11.

Yet, as set forth in greater length herein, this counterclaim can allege, at best nothing more than a simple breach of contract and failure to pay disputed amounts. Or put another way, there can be no showing of the required "rascality" that would raise an eyebrow of a person engaging in the rough and tumble commercial area. Here, OE Plus actually received and accepted the benefit of the goods delivered by OE Plus for over seven months prior to the termination of the parties relationship, yet it now seeks to deny BWP any monetary credit for same goods in contravention of the parties'

---

[2]Likewise, it is questionable that the Complaint even alleges any agreement by BWP to the purported "Catalog" "Policy" forming the basis of the claims herein (See Counterclaim at ¶8).

historical crediting practices. This is hardly the "coercive" conduct required to make out a claim under the Massachusetts Consumer Protection Statute.

Finally, the Third Counterclaim for consumer fraud should be dismissed as a matter of Massachusetts contract law because the counterclaim fails to allege even a basic breach of contract claim as set forth herein.[3]

Finally, BWP seeks to dismiss scandalous materials in the Counterclaim pertaining to inadmissable settlement discussions of counsel which, respectfully, have no place in pleadings submitted to this Court. Accordingly, these allegations should be dismissed pursuant to Rule 12(f) of the Federal Rules of Civil Procedure.

For the reasons set forth above, the Counterclaim must be dismissed.

## STATEMENT OF FACTS[4]

A.    **Sophisticated Business Parties Enter Into Agreement
Concerning Automotive Parts, Specifically Contemplating
A Credit For Valuable Used And Returned Alternators And
Starters Known As "Cores" Which Are "Required" For The
Remanufacturing Process**

"The Defendant OE Plus is a remanufacturer of automotive parts known as remanufactured automotive starters and alternators. *The remanufacturing process **requires** the remanufacturer [OE*

---

[3]In addition to the grounds set forth above, the Third Counterclaim must also be dismissed, in that the defendant's conclusory allegation that OE Plus was somehow deceived or defrauded, fails to plead fraud with the particularity required by Rule 9(b) of the Federal Rules of Civil Procedure, and, for this reason as well, the Third Counterclaim cannot be sustained.

[4]For purposes of this motion, alone, the Plaintiff assumes that the facts alleged in the Counterclaims are true.

3

*Plus] **first** to acquire a used, non-functioning starter or alternator, known as a **core**."* (Counterclaim at ¶3)(emphasis added). Among other sources, OE Plus obtains the used alternator "cores" that OE Plus requires from its own "customers". (Counterclaim at ¶3).

"When a remanufacturer sells the remanufactured starter or alternator to its customers, the price includes two components. . . the Exchange Price. . .[and]. . .the Core Charge. . .for the value of the <u>core</u> part of the unit sold." (Counterclaim at ¶4). If the customer "sells the remanufactured product to the end user", then the "remanufacturer "often accepts the return of a core from the end user", allegedly subject to certain conditions (Counterclaim at ¶4).

Finally, the "cores" shipped by the customer to the remanufacturer at the "market price" can be "very expensive, somewhere between $80 and $100" and may decrease in price based on certain alleged factors, such as age (Counterclaim at ¶5).

Accordingly, in the ordinary course of business, the customers of OE Plus provide valuable (potentially "expensive") "cores" that OE Plus "requires" for its re-manufacturing business and the customer receives a "credit" for cores that the customer "ships. . . . .to the remanufacturer". (Counterclaim at ¶¶ 3, 4 & 5).

**B.    OE Plus Receives *Upfront* Benefit By Receiving**
**$600,000 Worth of Autopart "Cores"Required**
**For Its Business , Not To Be Fully Credited To**
**BWP Until Conclusion of a Twenty-Four Month Period**

The parties' relationship began "(i)n approximately June 2002" concerning BWP's North Dighton facility. (Counterclaim at ¶9). In May of 2005 the parties relationship expanded to a second BWP Distribution Center in Delran, New Jersey. As part of the parties expanded relationship, OE

4

Plus was to "remove or 'lift'. . .starters and alternators - that were located at the Delran facility, and provide a credit for such 'lifted' product to BWP in the of approximate amount of $600,000." (Counterclaim at ¶10).

Unlike the upfront benefit to OE Plus of receiving the product, the benefit to BWP was deferred, as "OE Plus agreed to provide the credit in *twenty four monthly* installments. . ." (Counterclaim at ¶10)(emphasis added).  Indeed, OE Plus alleges that the credit was given only because "BWP agreed to give OE Plus all of the Delran business for a minimum of *twenty four months.*" (Counterclaim at ¶10)(emphasis added).  Accordingly, OE Plus actually *complains* that it received $600,000 worth of product in an <u>upfront</u> <u>windfall</u>, while deferring the benefit to BWP over a twenty four month period.[5]

Notably,  <u>no</u> <u>written</u> <u>agreement</u> of any kind is alleged to exist concerning the purported <u>twenty-four month</u> <u>agreement</u>, nor is a writing otherwise alleged in the Counterclaim.  It is also significant to note that the source of this alleged "agreement" concerning cores received by OE Plus from BWP, and monetary credits to be given to BWP by OE Plus, is not even alleged to be based upon the OE Plus' "catalog", which OE Plus otherwise alleges to govern the parties dealings concerning monetary credits for returned "cores".

---

[5]As set forth below, this is but one representative example of the fundamental flaw of OE Plus' claims, that is, OE Plus has retained both the valuable automotive parts and "cores" provided by BWP, yet seeks to obtain full payment from BWP without acknowledging <u>any</u> credits for these cores/parts in OE Plus' possession.  OE Plus even goes so far as to claim a consumer fraud claim under these circumstances.

**C.    According To The Counterclaim, OE Plus Received
       And Accepted Valuable Automotive Part Cores Which
       Were Not Disputed For At Least *Seven* Months Prior
       To Termination of the Parties Relationship By BWP**

The gravamen of the Counterclaim is that "during the last six months of 2006, BWP over

returned large quantities of old cores on OE Plus and demanded full credit for them." (Counterclaim

at ¶12)(emphasis added).   OE Plus alleges that the return of these cores (as opposed to cores

customarily returned to OE Plus as part of the historical dealings with BWP) was in "retaliation for

OE Plus' decision to increase its business with BWP's competitor, AI (Autopart International)".

(Counterclaim at ¶13).  In this regard, it is further alleged that on "January 11, 2007'" and "February

16 2007", BWP informed "OE Plus that BWP would no longer be purchasing product" from two

of BWP distribution facilities (Counterclaim at ¶¶15, 16), a period of time exceeding seven months

from the time that BWP allegedly began over returning cores.

More importantly, the Counterclaim does not allege that the alternator cores actually returned

by BWP to OE Plus were ever rejected or objected to prior to the termination of the parties'

relationship some seven months after the alleged over returning of cores began in January and

February of 2007.  Likewise, the Counterclaim fails to allege that the cores returned by BWP were

not actually used or sold by OE Plus or lacked any value or explain why BWP was not entitled to

a "*full* credit" (Counterclaim at ¶17)(emphasis added).   Finally, the alleged twenty-four month

agreement between the parties which allegedly "had not expired" is not alleged to be in writing.

Indeed, no cancellation provision or required notice period is alleged concerning cancellation of the

parties relationship of any kind.  (Counterclaim at ¶10, 15).

6

**D.    OE Plus Now Claims That A "Catalog" Was *Always*
        The Exclusive Basis For Parties Agreement As To
        When Credits Should Be Given For Automotive Part
        "Cores" Actually Returned**

OE Plus' now contends that the "cores" return by BWP in the last six months of 2006 were

not in accordance with the "OE Plus Core Return Policy [that] is printed in every OE Parts *catalog.*

. ." (Counterclaim ¶8; See, also, ¶12)(emphasis added).    Nevertheless, OE Plus has failed to allege

that BWP ever agreed, orally or in writing, to the "Catalog" "Policy" of OE Plus, nor even alleged

that the "catalog" was meant to be the exclusive terms of the return of "cores" by OE Plus

customers.[6]

**E.    Failed Attempts To Settle Commercial Disputes
        In New York Concerning What Credits BWP Is
        Entitled To For Cores Actually Returned And
        Whether Any Amounts Are Owed.**

On September 4, 2007 OE Plus issued a demand letter to BWP's President, alleging that OE

Plus was entitled to "(a) $264,410.77 for accounts receivable balance that remains unpaid; and

---

[6]As set forth below, the Court should be very skeptical of OE Plus' claim that its unilateral
listing of terms and conditions in a "catalog" governs the parties five year course of dealings,
particularly where the pleadings inconsistently alleged separate agreements being reached not subject
to the policy set forth in the "catalog" (*Compare*, Counterclaim ¶10 and ¶8). Indeed, it does not
appear that the pleadings allege any actual agreement by BWP to the Catalog "Policy" (Counterclaim
at ¶8).

7

(b)$754,695.40 for *excess core and warranty returns*". (See, Counterclaim at Exhibit B)(hereinafter,

"Demand Letter"). Although the Demand Letter stated that it was a "demand for relief pursuant to

assachusetts General Law, Chapter 93 A, Section 11", no unfair or deceptive trade practice is alleged

or described in the letter.

　　　Beyond the foregoing, the Counterclaim actually purports to describe unsuccessful settlement

discussions between　the parties and their counsel after the Demand Letter was issued.

(Counterclaim at ¶¶19, 20 & 21).

## ARGUMENT

## POINT I

### RECENT SUPREME COURT PRECEDENT REQUIRES DISMISSAL OF CLAIMS THAT ARE MERELY "CONCEIVABLE", BUT WHICH ARE NOT SUFFICIENTLY AMPLIFIED TO MAKE THESE CLAIMS "PLAUSIBLE" ON THEIR FACE

　　　The Supreme Court has recently held that "[w]hile a [pleading] attacked by a Rule 12(b)(6)

a motion to dismiss does not need detailed factual allegations, a [party's] obligation to provide the

'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic

recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twobly*, 127 S.Ct 1955,

164-165 (2007)(citations omitted and second alteration in original).

　　　In *Bell Atlantic, supra*, 127 5.Ct. at 164-169, the Supreme Court also abandoned reliance on

the oft-cited line from *Conley v. Gibson* that, "a complaint should not be dismissed for failure to state

a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his

claim which would entitle him to relief[,]" 355 U.S. 41, 45-46 (1957). As the Court explained, a

literal application of *Conley 's* "no set of facts" rationale is improper because "a wholly conclusory

8

statement of claim would survive a motion to dismiss whenever the pleadings left open the possibility that a plaintiff might later establish some 'set of [undisclosed] facts' to support recovery." *Bell Atl.*, 127 S.Ct. at 1968.

Instead, the Court emphasized that "[f]actual allegations must be enough to raise a right to relief *above the speculative level* ... [,]" *Id.* at 1965 and "once a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint[,]" *Id.* at 1969. A party must allege "*enough facts to state a claim to relief that is plausible on its face.*" *Id.* at 1974. If it "*ha[s] not nudged [its] claims across the line from conceivable to plausible, [its] pleading] must be dismissed.*" *Id.* (emphasis added).

When considering a Rule 12(b)(6) motion, a court must limit itself to facts stated in the pleading, documents attached to the pleading, and documents incorporated into the pleading via reference. *See, Newman & Schwartz v. Asplundh Tree Expert Co.*, 102 F.3d 660, 662 (2d Cir. 1996) (citation omitted). The Court may accept as true a parties' non-conclusory allegations and draw all reasonable inferences in that parties' favor. *See, Mills v. Polar Molecular Corp.*, 12 F.3d 1170, 1174 (2d Cir. 1993); *Blimpie Int', Inc. v. Blimpie of the Keys*, 371 F.Supp2d. 469, 470-71 (S.D.N.Y. 2005). At this stage, the Court is not concerned with weighing the evidence that would be presented at trial. *See, Chosum Int'l, Inc. v. Crisha Creations, Ltd.*, 413 F.3d 324, 327 (2d Cir 2005).

Here, the claims raised in OE Plus' Counterclaim fail to meet the foregoing standards.

9

## POINT II

## NEW YORK CHOICE OF LAW RULES

A federal court sitting in diversity must apply the choice of law principles of *the forum state in order to decide what state substantive law applies. See*, *Guaranty Trust Co. v. York*, 326 U.S. 99, 108-09, 65 S.Ct. 1464, 89 L.Ed. 2079 (1945); *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496, 61 S.Ct. 1020, 87 L.Ed. 1477 (1941); *Celle v. Filipino Reporter Enter.*, 209 F.3d 163, 175 (2d Cir.2000).

In contract cases, New York courts apply a "center of gravity" or "grouping of contacts" approach to conflict-of-law issues. "Under this approach, courts may consider a spectrum of significant contacts, including the place of contracting, the places of negotiation and performance, the location of the subject matter, and the domicile or place of business of the contracting parties." *Lazard Freres & Co. v. Protective Life Ins. Co.*, 108 F.3d 1531, 1539 (2d Cir.), cert. denied, 522 U.S. 864, 118 S.Ct. 169, 139 L.Ed.2d 112 (1997); *Brink's Ltd. v. South African Airways*, 93 F.3d 1022, 1030-31 (2d Cir.1996) (same), cert. denied, 519 U.S. 1116, 117 S.Ct. 959, 136 L.Ed.2d 845 (1997).

Here, the gravamen of the Counterclaim is the Agreement between the Plaintiff and the Defendant surrounding automotive parts and a dispute over whether monies are owed and/or whether the Plaintiff is entitled to a credit of "cores" actually returned to the Defendant.

Accordingly, this matter is a contract case with claims all rooted in the alleged breach of the agreement asserted by both Plaintiff and Defendant herein.

10

As to the center of gravity and contacts to the state of New York, the Defendant readily concedes that this Court has jurisdiction over this matter and venue is proper. Accordingly, Defendant has already conceded that there are significant contacts with the New York forum that warrant jurisdiction to govern the parties dispute. Moreover, Plaintiff has a principal place of business in New York. Finally, the Defendant readily concedes that the Agreement between the parties has an effect and impact in the state of New York. Accordingly, there are more than ample contacts to conclude that this contractual dispute should be governed by New York law.

However, at the pleading stage, BWP respectfully submits that even under Massachusetts law, the Complaint must be dismissed.[7]

### POINT III

### THE FIRST COUNTERCLAIM FOR BREACH OF CONTRACT SHOULD BE DISMISSED AS VIOLATIVE OF THE STATUTE OF FRAUDS

Massachusetts' General Laws 259 §1 concerning "Actionable contracts; necessity of writing" provides in pertinent part as follows:

No action shall be brought.

Fifth, *Upon an agreement that is not to be performed within one year from the making thereof.*

MGLA 259 §1 (emphasis added).

Accordingly, under Massachusetts law contracts which are not performable within one year violate the statute of frauds. *See, generally, Meng v. Trustees of Boston University* 44 Mass.App.Ct.

---

[7]For the purposes of this motion, movant has applied Massachusetts' law.

650, 651-652, 693 N.E.2d 183, 185 (Mass.App.Ct., 1998)(clause has been construed to apply to a contract that, by its terms cannot be fully performed within a one-year period from the making of the contract); *See, also, Ahanotu v. Massachusetts Turnpike Authority*, 466 F. Supp. 2d 378 (D. Mass. 2006) (Statute of Frauds bars claim for breach of implied contract of employment where allegation that employee was promised a permanent stay at the end of multibillion dollar public works project was based on assumption he had a contract for a definitive period of employment in excess of one year that was not capable of being performed within one year of making the contract).

Here, the Counterclaim relies upon a "twenty-four month" distribution agreement. However, at no time does the Counterclaim allege that this agreement was in writing. Upon information and belief, no such written agreement exists. In short, the alleged agreement is incapable of being performed in less than a year based upon the plain face of the pleadings and thus clearly violates the Statute of Frauds. Accordingly, the breach of contract claim must be dismissed, along with any Consumer Fraud Claim which seek to rely upon the same oral agreement.

## POINT IV

### THE FIRST COUNTERCLAIM FOR BREACH OF CONTRACT
### SHOULD BE DISMISSED BECAUSE OE PLUS ACCEPTED THE GOODS PURSUANT
### TO THE UNIFORM COMMERCIAL CODE

As a preliminary, it is questionable whether the Complaint even alleges that an agreement exists between the parties arising out of the purported "Catalog" "Policy" that allegedly sets forth a period of time that automotive cores-goods can be returned for a monetary credit. (See Counterclaim at ¶8). Nevertheless, even if the Court looks beyond these deficiencies, the

12

Defendants' breach of contract cause of action must be dismissed pursuant to well settled principles of the Uniform Commercial Code.

As a threshold matter, the Uniform Commercial Code Article 2 Provisions of Massachusetts are limited to transactions in "goods." See G.L. c. 106, § 2-102. "Goods" is a term defined in G.L. c. 106, § 2-105(1) as "all things ... which are movable at the time of identification to the contract for sale." *See also, Mattoon v. City of Pittsfield,* 56 Mass.App.Ct. 124, 140, 775 N.E.2d 770, 783 (Mass.App.Ct. 2002). Here, there is no question that the automotive cores are a "movable" "thing". As such, issues related to the return of these valuable goods required by OE Plus as party of its remanufacturing process are governed by the provisions of the Uniform Commercial Code.

The failure of OE Plus to reject the automotive core goods provided by BWP is an acceptance under the Uniform Commercial Code and is fatal to the Counterclaim of OE Plus herein. First, on the issue of rejection, the Uniform Commercial Code provides in pertinent part as follows:

**§ 2-602. Manner and Effect of Rejection.**

(1) Rejection of goods must be within a reasonable time after their delivery or tender. It is ineffective unless the buyer seasonably notifies the seller.

(2) Subject to Sections 2-603, 2-604, and Section 2-608(4):

(a) after rejection any exercise of ownership by the buyer with respect to any commercial unit is wrongful as against the seller; and

(b) if the buyer has before rejection taken physical possession of goods in which the buyer does not have a security interest under Section 2-711(3),the buyer is under a duty after rejection to hold them with reasonable care at the seller's disposition for a time sufficient to permit the seller to remove them; but

(c) the buyer has no further obligations with regard to goods rightfully rejected.

(3) The seller's rights with respect to goods wrongfully rejected    are governed by the provisions of this Article on Seller's remedies in general (Section 2-703).

To be certain, the Counterclaim makes clear that for over seven months prior to termination of the parties relationship that goods were provided by BWP to OE Plus, yet no where does OE Plus allege that any of these goods were rejected in any fashion or that OE Plus notified BWP in any reasonable time frame. Indeed, the Complaint makes no reference of any issue until correspondence was written by OE Plus only after the parties relationship was terminated.

Second, the Uniform Commercial Code makes clear that the failure to reject these goods constitutes an acceptance by OE Plus of same, as indicated by the following provisions:

**§ 2-606. What Constitutes Acceptance of Goods.**

(1) Acceptance of goods occurs when the buyer:

(a) after a reasonable opportunity to inspect the goods signifies to the seller that the goods are conforming or that the buyer will take or retain them in spite of their nonconformity;

(b) fails to make an effective rejection under Section 2-602(1), but such acceptance does not occur until the buyer has had a reasonable opportunity to inspect them; or

(c) Subject to Section 2-608(4), does any act inconsistent with the seller's ownership.

(2) Acceptance of a part of any commercial unit is acceptance of that entire unit.

Accordingly, it is clear that, by failing to reject the goods provided by BWP, OE plus is deemed to have accepted the goods delivered. To be clear, the UCC does not allow buyers to repudiate their contracts simply because they change their mind or regret their purchase decision. On the contrary, buyers who accept goods forfeit a right to subsequently "reject the tender" and are

14

obligated to pay for the goods "at the contract rate." *See UCC § 2-607(1)*, (2); *Knapp Shoes, Inc. v. Sylvania Shoe Mfg. Corp.*, 72 F.3d 190, 200 (1st Cir. 1995).

Of course, a buyer who accepts goods in certain limited instances may be able to "revoke" his acceptance under § 2-608, but only if the goods in question are nonconforming and the nonconformity "substantially impairs [their] value to the buyer." Here, OE Plus does not contend that the any non-conformity substantially impaired its value in this particularly case, nor does OE Plus allege that the goods provided by BWP were not usable or were not of value. Indeed, glaringly absent from the pleadings is any basic allegation that the cores-goods provided by BWP to OE Plus were not actually used in the ordinary course of OE Plus' remanufacturing business.

Rather, OE Plus seeks to have this Court (i) to award damages for monies allegedly owed by BWP for parts BWP received; (ii) to retain the valuable automotive cores-goods received and accepted by OE Plus without paying the contract credit pursuant to the parties dealings, and (iii) to receive treble damages and attorneys fees, based upon a Consumer Fraud claim routed in a an alleged breach of "contract" claim that is barred by the Statute of Frauds and the Uniform Commercial Code. In short, the Court should reject the convenient allegations that the goods provided by BWP to OE Plus were not satisfactory, raised for the first time after the parties relationship was terminated. Accordingly, the Court should dismiss OE Plus breach of contract cause of action in its entirety.

POINT V

**THE THIRD COUNTERCLAIM ALLEGING VIOLATION OF MASSACHUSETTS
CONSUMER PROTECTION LAW HAS NO APPLICATION TO THE PRESENT
DISPUTE INVOLVING THE ALLEGED BREACH OF AN ARMS-LENGTH
AGREEMENT BETWEEN SOPHISTICATED
PARTIES AND MUST BE DISMISSED UNDER BOTH
NEW YORK OR MASSACHUSETTS LAW**

A.    **Third Counterclaim Must Be Dismissed
        Under New York Law**

As a preliminary matter, the consumer protection statute, which provides for treble damages

and attorneys' fees, is contrary to basic New York law that holds that a party who has suffered

damages from a breach of a contract should only be put in as good a position as if the parties'

contract had been kept.    *Wechsler v. Hunt Health Systems, Ltd.*, 330 F.Supp.2d 383, 424

(S.D.N.Y.,2004)(A "general principle" of contracts is that recovery for breach of contract should put

the injured party "in as good a position as he would have occupied had the contract been

kept."(citations omitted); *See also Concannon v. Galanti*, 348 Mass. 71, 202 N.E.2d 236 (Mass.

1964)(plaintiff is entitled to damages sufficient to put her in as good a position as if there had been

no breach and the contract had been completed).

As such, the Court should be weary that defendant seeks to gain a windfall and/or improper

settlement leverage by recasting a simple breach of contract claim into a Consumer Protection statute

with potential *treble damages*.  In short, this overreaching tactic should not be countenanced.

Moreover, the consumer protection statute claim is inconsistent with the "well established

principle [of New York law] that a simple breach of contract is not to be considered a tort unless a

16

legal duty independent of the contract itself has been violated." *Clark-Fitzpatrick. Inc. v. Long Island R.R. Co.*, 70 N.Y.2d 382, 389, 516 N.E.2d 190, 193-94, 521 N.Y.S.2d 653, 656-57 (1987). In order to be actionable, such duty must "spring from circumstances extraneous to, and not constituting elements of, the contract" Id.    This steadfast principle of New York law remains true even where the alleged breach of the Agreement is "intentional". *See* e.g. *Wall v. CSX Transp., Inc.*, 471 F.3d 410 (2d Cir. 2006) (Under New York law, general allegations that a defendant entered into a contract while lacking the intent to perform it are insufficient to support a tort claim).

Here, the facts supporting the Counterclaim, including the Third Counterclaim, arise entirely out of the alleged breach of the terms of the Agreement between the parties. In particular, the Defendant alleges that the Plaintiff owes monies to the Defendant under the Agreement. Further, Defendant disputes that the Plaintiff is entitled to any credit for automotive parts actually returned by the Plaintiff to the Defendant pursuant to the alleged terms of the parties' Agreement.

Finally, Defendant alleges that Plaintiff "*knew* that such cores were not eligible for such credit. . .but it nonetheless *attempted* to take such credits". (Complaint at ¶12).   In essence, Defendant alleges that Plaintiff intentionally "attempted" to obtain a credit in breach to the Agreement, an odd claim which, under New York law, entitles Plaintiff to only the contractual damages Plaintiff is able to prove.

**B.    Third Counterclaim Must Be Dismissed
Under Massachusetts Law**

The Third Counterclaim also fails under Massachusetts law.  To state a valid consumer protection claim, Defendant must allege, among other elements, an "unfair or deceptive act or practice" that was committed by Plaintiff in the conduct of any trade or commerce, and that "the act

17

or practice caused [the party] to sustain injury." *Southwick Clothing, LLC v. GFT (USA) Corp.*, 2004 WL 2914093 (S.D.N.Y.)(*citing, Swenson Yellow Transp., Inc.*, 317 F.Supp.2d 51, 54 (D.Mass.2004).

Relying on Massachusetts case law, the Southern District has held that the "unfair or deceptive act requires a showing of 'rascality' [and that] *(s)uch a showing is particularly difficult to make in a case involving an arm's-length transaction between sophisticated business entities. Southwick Clothing, LLC v. GFT (USA) Corp.*, 2004 WL 2914093 (S.D.N.Y.)(*citing, Knapp Shoes, Inc. v. Sylvania Shoe Mfg. Corp.*, 72 F.3d 190, 200 (1st Cir.1995)(emphasis added).

Moreover, "(t)o rise to the requisite level of rascality, the subject conduct must be of such a nature that " '*would raise an eyebrow of someone inured to the rough and tumble of the world of commerce.*" ' *Id.* (*citing, Quaker State Oil Refining Corp. v. Garrity Oil Co., Inc.*, 884 F.2d 1510, 1513 (1st Cir.1989). To do so, it must be established that the objectionable act "falls 'within at least a penumbra of some common-law, statutory, or other established concept of fairness,' or was 'immoral, unethical, oppressive or unscrupulous, and resulted in substantial injury to competitors or other business [persons]." *Id.* (citations omitted). Massachusetts courts are reluctant to find a claim for Consumer Protection where the claim "would defeat commercial expectations and foment litigation to impose c. 93A, § 11, liability in the present case because the parties are commercially sophisticated." *See Spence v. Boston Edison Co.*, 390 Mass. 604, 616, 459 N.E.2d 80 (1983); *Teitelbaum v. Hallmark Cards Inc.*, 25 Mass.App.Ct. 555, 562, 520 N.E.2d 1333 (1988).

A breach of contract generally does not give rise to a claim unless there is some "*coercive or extortionate objective*". *See, e.g. Framingham Auto Sales, Inc. v. Workers' Credit Union*, 41 Mass.App.Ct. 416, 671 N.E.2d 963 (Mass.App.Ct. 1996)(emphasis added). Moreover, "*a good faith dispute as to whether money is owed, or performance of some kind is due, is not the stuff of which*

*a c.93A claim is made."* *Duclersaint v. Federal National Mortgage Assoc.*, 427 Mass. 809, 814 (1998)(emphasis added).

For example, in *Duclersaint*, the parties disagreed over whether there was a surplus after the purchase of a property at auction. *Duclersaint v. Federal National Mortgage Assoc*, 427 Mass. at 814. Because there was a "genuine difference of opinion about whether there was a surplus," the Court held that the dispute was an "ordinary" one "without conduct that was unethical, immoral, oppressive, or unscrupulous." *Id.* at 814.

Here, the present contractual dispute between sophisticated parties concerning whether or not BWP is entitled to receive a monetary credit for valuable automotive alternator "cores" actually provided by BWP to OE Plus in the ordinary course of their business dealings is a far cry from "coercive" or "extortionate" conduct.

Indeed, as set forth above, these claims do not even give rise to a claim for breach of contract as even this claim is reliant on the alleged improper early termination of an oral twenty- four month agreement that violates the statute of frauds. (Counterclaim at ¶10, 15). Accordingly, how could this possibly be the basis for an retaliatory or unfair practice, as BWP was permitted to terminate its agreements prior to the purported twenty four month term. Accordingly, OE Plus' conclusory allegation that BWP "already intended" to terminate its arrangement with OE Plus is of no moment as their was no prohibition on cancelling the agreement.

Likewise, the allegations that BWP "flooded" OE Plus with the valuable goods (i.e. automotive "cores") is simply an illogical basis for a claim for consumer fraud. Indeed, the suggestion that OE Plus is somehow harmed by receiving valuable goods is astounding. Equally baffling, OE Plus failed to reject these goods, and thereby accepted such goods during the period that

it was provided with these goods. At no time does OE Plus contend that it rejected these goods, and apparently, had no issue whatsoever with cores it received until the parties relationship was severed.

Only now does OE Plus raise its convenient claim for both breach of contract of the goods it accepted and even seeks treble damages on the theory that it was deceived to the point that it was somehow an "unfair practice" that it received goods (i.e. "cores") in the ordinary course of the parties relationship. Indeed, there are no facts that even remotely rise to the level of "rascality" or "coerciveness" that rely solely on a "Catalog" "Policy" not alleged to have been agreed to by BWP. (Counterclaim at ¶8).

This claim, which is, at best, a claim for breach of contract only, is facially deficient and is wholly implausible. Accordingly, the overreaching Massachusetts Consumer Protection claim, and the treble damages and attorneys fees sought thereunder, should be dismissed.

## POINT VI

### THE THIRD CAUSE OF ACTION MUST BE DISMISSED BECAUSE SAME FAILS TO PLEAD FRAUD WITH PARTICULARITY

In essence, OE Plus pleads in utterly conclusory fashion that it was defrauded and deceived in some tortious manner. However, in order to avoid a motion to dismiss such a claim must be plead with particularity.

Rule 9(b) provides as follows: "In all averments of fraud, mistake, duress or undue influence, the circumstances constituting fraud, mistake, duress or undue influence shall be stated with particularity. Malice, intent, knowledge, and other condition of mind of a person may be averred generally." The particularity requirement means that a pleading must specify "the time, place, and

content of an alleged false representation." *Doyle v. Hasbro, Inc.,* 103 F.3d 186, 194 (1st Cir.1996)

(quoting *McGinty v. Beranger Volkswagen, Inc.,* 633 F.2d 226, 228 (1st Cir.1980), *superseded by*

*statute on other grounds,* Private Securities Litigation Reform Act of 1995, Pub.L. No. 104-67, 109

Stat. 737); *Mead Corp. v. Stevens Cabinets, Inc.,*, 938 F.Supp. 87 D.Mass.1996 (complaint which

failed to specify date or dates of seller's alleged misrepresentations, where and how they occurred,

and *their content did not plead fraud claim under Massachusetts consumer protection statute with*

*requisite particularity*). Conclusory allegations and references to "plans and schemes" are not

sufficient. *Id.* (quoting, *Hayduk v. Lanna,* 775 F.2d 441, 444 (1st Cir.1985)).

      Court have recognized that, under Rule 9(b), a plaintiff may make allegations of fraud on the

basis of personal knowledge or on "information and belief." *New England Data Services, Inc. v.*

*Becher,* 829 F.2d 286, 288 (1st Cir.1987). However, such "information and belief" allegations

remain subject to the particularity requirements of Rule 9(b). Moreover, allegations of fraud made

on information and belief are also subject to the additional requirement that "the [pleading] forth the

facts on which the belief is founded." *Id.; see also, In re. Cabletron Sys., Inc.,* 311 F.3d 11, 28 (1st

Cir.2002) (noting that "this circuit imposed a strict requirement [on security fraud allegations based

on information and belief] under 9(b) before enactment of the PSLRA [Private Securities Litigation

Reform Act]")(citing, *Romani v. Shearson Lehman Hutton,* 929 F.2d 875, 878 (1st Cir.1991)

("Where allegations of fraud are ... based only on information and belief, the complaint must set

forth the source of the information and the reasons for the belief.").

      Here, the Third Counterclaim makes conclusory allegations that not only fails to set forth the

required particularity for fraud, but, even lacks the basic factual content necessary to allege even a

plausible cause of action as required by Supreme Court precedent. *See, Point I supra.* Indeed, the

Third Counterclaim fails to state the time, place, date or person who actually engaged in any particular fraudulent or deceptive practice, instead Defendant engages in a series of deficient and conclusory claims.  Accordingly, the Third Counterclaim must be dismissed.

## POINT VII

### PARAGRAPHS 19, 20 AND 21 OF THE COUNTERCLAIMS PERTAINING TO THE PARTIES SETTLEMENT DISCUSSIONS SHOULD BE STRICKEN PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 12(f) AS SAME CONTAIN IMMATERIAL, IMPERTINENT OR SCANDALOUS MATTER

Rule 12(f) of Federal Rules of Civil Procedure states that "the court may order stricken from any pleading any insufficient defense or any redundant, immaterial, impertinent, or scandalous matter.  Settlement discussions are inadmissible to show fault under Fed.R.Evid. 408, and accordingly may be *stricken from a complaint* as immaterial and potentially prejudicial."  *Kelly v. L.L. Cool J.*, 145 F.R.D. 32 (S.D.N.Y.,1992.) *aff'd* 23 F.3d 398 (2d Cir. 1992)(emphasis added)(*citing, Foster v. WNYC-TV*, 1989 WL 146277 at 6 (S.D.N.Y.1989).

Here, there are a series of allegations concerning discussions regarding the parties attempts to resolve the matter that have been improperly included in the Counterclaim, that are clearly settlement discussions that are immaterial to the substantive allegations, namely paragraphs 19, 20 and 21 of the Counterclaim. which refer to ". . .a series of telephone conversations that [took place wherein] counsel for the parties discussed OE plus' claims. . . [and that] during one of those telephone conversations, OE Plus' President, Eric Roberts, participated.  Mr. Roberts informed BWP's counsel Andrew Greene, of the factual basis for amounts due. . ." (Counterclaims at ¶¶19, 20).

22

These allegations clearly refer to the parties discussions after the September Demand Letter was issued and the efforts of the parties to resolve their dispute. There is no material basis to leave these allegations in the Counterclaim other than to include counsel in the Counterclaim for improper prejudicial purposes. Accordingly, these immaterial allegations should be stricken.

Finally, Paragraph 21 of the Counterclaim should likewise be stricken, which states as follows: "At a time when OE Plus was compiling information at the request of BWP's counsel, BWP, through Mr. Greene, without any prior notice to OE Plus or its counsel, filed this action in an attempt to forestall the filing of an action by OE Plus against BWP in the Massachusetts courts." (Counterclaims at ¶20).

This allegation likewise refers to settlement discussions and compiling of information in furtherance of same, and, as such, should be stricken. Moreover, given that OE Plus has freely consented to the jurisdiction and venue of this Court, it is both immaterial and illogical to allege that the commencing of suit in this district has any effect of "forestalling" a resolution of the parties disputes. To the contrary, after counsel improperly threatened baseless claims in September of 2007, including wholly overreaching claims under a Consumer Protection statute, BWP was the first to seek a resolution of these issues, and accordingly, BWP acted in a manner to expedite an adjudication of the parties disputes.

23

## CONCLUSION

For the foregoing reasons, the Court should dismiss the First and Third causes of action of the Counterclaim  pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure and strike Paragraphs 19, 20 and 21 of the Counterclaim pursuant to Rule 12(f) of the Federal Rules of Civil Procedure.

Dated: White Plains, New York
      April 7, 2008

                        ANDREW GREENE & ASSOCIATES, P.C.

                        By:    /s/ Thomas C. Landrigan
                        Thomas C. Landrigan (TL-3116)
                        Attorneys for Plaintiffs
                        202 Mamaroneck Avenue
                        White Plains, New York 10602
                        (914) 948-4800