written policy against possessing weapons at work did not mandate that the employee be discharged. See *supra* at 390, 504 A.2d 1132. The policy allowed for the imposition of a penalty less severe than permanent discharge, and said that disciplinary actions would be taken in accordance with applicable collective bargaining agreements. The applicable collective bargaining agreement gave the arbitrator the authority to impose a less severe sanction than termination. The department could have had a policy requiring discharge of employees who possess guns at work. It did not.

While Arsenault may have violated criminal statutes, such as G.L. c. 269, §§ 10 & 11C (1992 ed.),[6] and the policies the statutes embody, the arbitration award reinstating him did not. The criminal laws do not dictate that an employee who is found to possess an illegal firearm must be terminated. The policies embodied in the criminal laws do not relate to Arsenault's employment. Arsenault's conduct was wrong in itself; his employment did not make it any more so. His possession of the gun at work did not go to the heart of his employment duties. See *American Postal Workers Union, supra* at 825. The policy against the possession of unlicensed and otherwise illegal handguns was meant to be vindicated, and may be vindicated, through the criminal justice system. See *Otis Elevator Co., supra* at 29. This policy does not dictate that a violator also lose his job.[7]

The arbitration award also did not violate the policy in favor of safety in the workplace. See *Barrett v. Rodgers*, 408 Mass. 614, 619, 562 N.E.2d 480 (1990) (employer has duty to provide safe work environment); *Longever v. Revere Copper & Brass, Inc.*, 381 Mass. 221, 223, 408 N.E.2d 857 (1980) ("Among the common law duties placed on an employer was the responsibility to provide a safe place to work"). As a result of the time lag between firing and reinstatement, the arbitration award had the effect of an unpaid suspension for seven months and ten days. The arbitrator, as final judge of the proper means of discipline, concluded that this, in addition to a record of wrongful conduct, was sufficient disciplinary action.[8] While Arsenault's conduct "would have provided sufficient grounds for an arbitrator to find 'just cause' for discharge, we recognize that the parties bargained for the arbitrator's interpretation of the contract and that even our strong disagreement with the result does not provide sufficient grounds for vacating the arbitrator's award." *State Auditor v. Minnesota Ass'n of Professional Employees*, 504 N.W.2d 751, 757–758 (Minn.1993).

*Judgment affirmed.*



420 Mass. 39

MASSACHUSETTS EMPLOYERS INSURANCE EXCHANGE & others[1]

v.

PROPAC-MASS, INC.

Supreme Judicial Court of Massachusetts, Suffolk.

Argued Jan. 12, 1995.

Decided April 11, 1995.

Unincorporated domestic reciprocal insurance exchange brought action against at-

---

6. Arsenault was charged with possession of a handgun with an obliterated serial number, G.L. c. 269, § 11C (1992 ed.), and unlicensed possession of a handgun, G.L. c. 269, § 10 (1992 ed.). The former charge was continued without a finding and the latter charge was dropped.

7. Criminal charges and termination of employment are unrelated. Each furthers different policies and imposes different penalties. The parties are different, as are the rules of evidence and burden of proof. An employer need not await the outcome of a criminal trial before terminating an employee who violates clear workplace rules. Termination need not be contingent on the outcome of criminal litigation.

8. In determining that the safety of the work environment was not sufficiently threatened by Arsenault's behavior to require permanent discharge, the arbitrator could consider the fact that the department waited nearly one year after the gun was discovered before firing Arsenault or bringing lesser disciplinary action such as suspension.

1. Associated Industries of Massachusetts, Inc.; ATCO Plastics, Inc.; and Humboldt Storage & Moving Co., as representative members of the Massachusetts Employers Insurance Exchange.

torney-in-fact to recover for breach of implied covenant of good faith and fair dealing. The Superior Court Department, Suffolk County, David M. Roseman, J., ruled in favor of exchange. Attorney-in-fact's application for direct appellate review was granted. The Supreme Judicial Court, Wilkins, J., held that: (1) exchange validly terminated contract through board of advisors; (2) attorney-in-fact breached implied covenant of good faith and fair dealing and engaged in unfair act or practice; and (3) longstanding members of exchange could serve as representatives of class.

Affirmed.

1. Workers' Compensation ⚖=1045

Board of advisors acting as advisory committee for unincorporated domestic reciprocal insurance exchange providing workers' compensation insurance had authority to terminate agreement with attorney-in-fact; exchange's bylaws placed direction of business of exchange in hands of board, and if board did not have authority to act for exchange to terminate agreement, termination provision would have no effective purpose.

2. Workers' Compensation ⚖=1045

Workers' compensation insurance exchange's attorney-in-fact breached implied covenant of good faith and fair dealing and engaged in unfair act or practice by its acts after exchange validly terminated agreement; attorney-in-fact removed files to another location without notice to exchange, informed exchange that it was vacating exchange's principal office, told subscribers that their workers' compensation insurance would be jeopardized if they signed new power of attorney appointing different attorney-in-fact, instructed subscriber to pay premiums to attorney-in-fact instead of exchange, and conducted campaign to solicit subscribers for its own account. M.G.L.A. c. 93A, § 2.

3. Workers' Compensation ⚖=1045

Longstanding members of unincorporated domestic reciprocal insurance exchange providing workers' compensation insurance could act as representative members in prosecuting action against attorney-in-fact; representatives shared interest that control of exchange would remain with subscribers through board of advisors. Rules Civ.Proc., Rule 23.2, 43A M.G.L.A.

---

Edward B. Deutsch, Morristown, NJ (Raymond J. Kenney, Jr., Boston, with him), for defendant.

Mitchell Kaplan, Boston (Michael R. Reinemann with him), for plaintiffs.

Before LIACOS, C.J., and WILKINS, NOLAN and GREANEY, JJ.

₄₀WILKINS, Justice.

The principal issue in this case is whether the plaintiff, an unincorporated domestic reciprocal insurance exchange (Exchange), created pursuant to G.L. c. 175, §§ 94A–94M (1992 ed.), lawfully terminated its attorney-in-fact agreement (agreement) with the defendant (Propac). Under the agreement, Propac agreed to perform certain management service functions in providing workers' compensation insurance to members of the Exchange. The Exchange was established under the auspices of the plaintiff Associated Industries of Massachusetts, Inc. A Superior Court judge ruled that the Exchange had lawfully terminated the agreement and that Propac had violated (a) the agreement's implied covenant of good faith and fair dealing and (b) G.L. c. 93A, §§ 2 & 11 (1992 ed.). He also granted injunctive relief. We allowed Propac's application for direct appellate review and now affirm the judgment.

The termination issue can be answered by deciding straight-forward questions of law without the need to understand the detail of

the functions of a reciprocal insurance exchange [2] or the role of an attorney-in-fact [3] in the exchange of contracts of insurance of subscribers [4] of an exchange. The attorney-in-fact agreement between the Exchange and Propac provided that, unless terminated for cause, it would be effective for a five-year term from the first day of the month in which the Exchange commenced operations (which was January 1, 1989) "unless terminated by either party on [41] the fifth year, by one year's prior written notice" (or annually thereafter on one year's written notice).

[1] The Exchange had a board of advisors or advisory committee, as required by G.L. c. 175, § 94K (1992 ed.). By letter dated December 4, 1992, the advisory committee informed Propac that it was "terminating the Agreement on the completion of the five year term, ending December 31, 1993." [5] The Exchange's bylaws provide that "[t]he business and affairs of the Exchange, subject to the contract with the Attorney-In-Fact, shall be under the advice and direction of the Board of Advisors." Propac argues that the agreement could only be terminated by a "party" and that the Exchange, not its advisory committee, was the only other party that had the power to terminate the agreement.

The Exchange, an unincorporated association of hundreds of individual subscribers, as a party to the agreement, had to act through some person or persons in exercising its right. By agreement of the subscribers, the Exchange's bylaws placed the direction of the business of the Exchange in the hands of its board of advisors.[6] If the board of advisors did not have authority to act for the Exchange to terminate the agreement without cause, the termination provision would have no effective purpose for the Exchange. As the judge in effect noted, one is unlikely to attribute to the parties an intention to accept a contract provision that has no practical effect. It is [42] hardly a surprise that we rule that an organization may act through its designated representatives.

[2] The judge ruled that Propac had violated both G.L. c. 93A, § 11 (1992 ed.), and the agreement's implied covenant of good faith and fair dealing. See *Anthony's Pier Four, Inc. v. HBC Assocs.*, 411 Mass. 451, 471–472, 474, 583 N.E.2d 806 (1991). He found that following notice of termination Propac had refused and continued to refuse "to cooperate with the Exchange in an orderly transition to a new attorney-in-fact. Rather, Propac engages in a campaign to retain office in breach of a covenant, fairly read, that permits the Exchange, without cause, to terminate it." The agreement provided that, on notice of termination, Propac "will cooperate with the Exchange toward the end that

---

2. An "[e]xchange" is defined in G.L. c. 175, § 94A (1992 ed.), as follows: "an aggregation of individuals, partnerships or corporations, herein called subscribers, who or which, under a common name, exchange contracts of insurance on the reciprocal or inter-insurance plan through the office of an attorney in fact, being the place where contracts of insurance are issued."

3. An "attorney in fact" is defined in G.L. c. 175, § 94A, as "an individual, partnership or corporation acting under power of attorney as the representative of the subscribers in the exchange of reciprocal or inter-insurance contracts and matters incident thereto."

4. "Subscribers" are defined in G.L. c. 175, § 94A, as: "the participants or policyholders, who have given to an attorney in fact a power of attorney giving authority to obligate them separately and severally, as specified therein, in the exchange of reciprocal or inter-insurance contracts."

5. General Laws c. 175, § 94K (1992 ed.), directs that the manner of election or appointment of an exchange's advisory or similar committee and the committee's authority and duties are those provided in the power of attorney. The attorney-in-fact agreement in this case contained no such provision. The Exchange's members placed such provisions in the Exchange's bylaws. Propac has no basis for relying on this omission, which was known to the then Commissioner of Insurance when he approved the Exchange. The commissioner had a copy of the bylaws at the time of that approval.

6. We are deeply unimpressed with Propac's various arguments, which we shall not detail, based on (a) the use in various places in this agreement of the different words "Advisory Committee" (i.e., board of advisors), "Exchange," or "parties," and (b) changes made during the drafting of the attorney-in-fact agreement.

there will be an orderly transfer of management service functions, in respect to the Exchange's business, from [Propac] to the Exchange or its designee." The judge was fully warranted in concluding that Propac violated that provision.

The judge found that, while it was challenging the Exchange's authority to terminate the agreement, Propac removed files to another location without notice to the Exchange; informed the Exchange on November 15, 1993, that it was vacating the Exchange's principal office; told subscribers that their workers' compensation insurance would be jeopardized if they signed a new power of attorney appointing a different attorney-in-fact; instructed subscribers to pay premiums to it instead of to the Exchange; and conducted a campaign to solicit subscribers for its own account.

Propac argues that it relied in good faith on its construction of the agreement and that its breach of contract cannot alone be an unfair act or practice under G.L. c. 93A, § 2. We view as uninstructive phrases such as "level of rascality" (*Levings v. Forbes & Wallace, Inc.*, 8 Mass.App.Ct. 498, 504, 396 N.E.2d 149 [1979]) and "rancid flavor of unfairness" (*Atkinson v. Rosenthal*, 33 Mass. App.Ct. 219, 226, 598 N.E.2d 666 [1992]), in deciding questions of unfairness under G.L. c. 93A. We focus on the nature of challenged conduct and on the purpose and effect of that conduct as the crucial factors in making a G.L. |₄₃c. 93A fairness determination. See *PMP Assocs., Inc. v. Globe Newspaper Co.*, 366 Mass. 593, 596, 321 N.E.2d 915 (1975). Propac proceeded to act as if it were to be an effective authorized attorney-in-fact after the end of the five-year term of the agreement without the approval of, or even consultation with, the State regulatory authority. While it is correct that a breach of contract alone does not amount to an unfair act or practice under G.L. c. 93A, § 2 (see *Whitinsville Plaza, Inc. v. Kotseas*, 378 Mass. 85, 100–101, 390 N.E.2d 243 [1979]), conduct undertaken as leverage to destroy the rights of another party to the agreement while the agreement is still in effect and jeopardizing the interests of subscribers in preserving their workers' compensation coverage has a coercive quality that, with the other facts, warranted a finding of unfair acts or practices.

Moreover, unilateral, self-serving conduct, as found by the judge, during the course of a dispute as to Propac's right to continue as attorney-in-fact was not fair dealing in good faith. This is particularly so because Propac's assertion that the attorney-in-fact agreement had not been terminated had no substantive merit. Propac points to no evidence that it proceeded on the advice of counsel. Moreover, by its conduct, Propac created unnecessary uncertainty among the Exchange's subscribers concerning their workers' compensation coverage.

The judge was warranted in ruling that Propac's conduct constituted an unfair act or practice under G.L. c. 93A and a breach of the implied covenant of good faith and fair dealing. We have said that a breach of the implied covenant of good faith and fair dealing may constitute an unfair or deceptive act or practice for the purposes of G.L. c. 93A. That is true on the facts found by the judge. *Anthony's Pier Four, Inc. v. HBC Assocs.*, *supra*, 411 Mass. at 476, 583 N.E.2d 806.

[3] Propac's argument that the named plaintiffs had no right to prosecute this action on behalf of all the Exchange's subscribers lacks merit. Rule 23.2 of the Massachusetts Rules of Civil Procedure, 365 Mass. 769 (1974), permits an action to be maintained by "members of an unincorporated association as a class by naming certain members as representative parties"₄₄ ... "if it appears that the representative parties will fairly and adequately protect the interests of the association and its members." The judge found that the individual plaintiff companies were long-standing members of the Exchange and shared the interest that control of the Exchange remain with the subscribers through the board of advisors. He did not abuse his discretion in ruling that the representative members could prosecute this action on behalf of the Exchange and its subscribers.

See *Cheever v. Graves*, 32 Mass.App.Ct. 601, 604–605, 592 N.E.2d 758 (1992).

*Judgment affirmed.*



420 Mass. 1001

⌊₁₀₀₁Michael ROSS

v.

COMMONWEALTH.

No. SJC-06787.

Supreme Judicial Court of Massachusetts.

April 18, 1995.

Defendant charged with knowing possession of firearm and possession of firearm without complying with requirements relating to firearm identification card moved to dismiss amended complaint. The Lynn District Court, Wilkins, J., denied motion. Defendant sought extraordinary pretrial relief. The Supreme Judicial Court held that: (1) defendant was not entitled to extraordinary relief, and (2) prosecutor could seek a new complaint with a new charge prior to trial.

Affirmed.

1. Courts ⚖=207.1

Defendant was not entitled to extraordinary pretrial relief from denial of his motion to dismiss where he did not demonstrate a substantial claim of violation of substantive rights and a remedial error such that he could not be placed in the status quo in the regular course of appeal after trial. M.G.L.A. c. 211, § 3; Rules Crim.Proc., Rule 13(c)(1), 43C M.G.L.A.

2. Indictment and Information ⚖=39

Where defendant was arrested for knowing possession of a firearm and possession of a firearm without complying with requirements relating to firearm identification card and prosecutor learned during discovery period that the more serious of the two crimes was not included in complaint, prosecutor could obtain a new complaint with the new charge added before trial. M.G.L.A. c. 269, § 10(a, h).

Steven A. Colarossi, Revere, for plaintiff, submitted a brief.

WILKINS, Justice.

[1] The plaintiff, Michael Ross, filed a motion to dismiss an amended complaint in the Lynn District Court. See Mass. R.Crim.P. 13(c)(1), 378 Mass. 871 (1979). The motion to dismiss was denied. Ross then sought relief from the denial of his motion to dismiss pursuant to G.L. c. 211, § 3 (1992 ed.). After hearing, a single justice of this court denied Ross's request for relief. "A denial of a motion to dismiss pursuant to Mass.R.Crim.P. 13(c)(1) ... may not be appealed until after trial, and relief under G.L. c. 211, § 3, is not available as a matter of right." *Epps v. Commonwealth*, 419 Mass. 97, 99, 642 N.E.2d 1026 (1994). "To obtain review, a defendant must demonstrate both a substantial claim of violation of his substantive rights and irremediable error, such that he cannot be placed in statu quo in the regular course of appeal." *Morrissette v. Commonwealth*, 380 Mass. 197, 198, 402 N.E.2d 492 (1980). Ross's claim for review does not meet the two-part test set forth in *Morrissette v. Commonwealth*, 380 Mass. 197, 198, 402 N.E.2d 492 (1980). The single justice did not reserve and report the issue; nor did he decide the issue. He simply denied relief pursuant to G.L. c. 211, § 3. There was no error.

[2] Ross was arrested for violations of G.L. c. 269, §§ 10(*a*) and 10(*h*) (1992 ed.). During the discovery period, the prosecutor learned that the more serious crime, violation of G.L. c. 269, § 10(*a*), was not included in the complaint. The prosecutor sought and obtained a new complaint which charged a violation of G.L. c. 269, § 10(*a*). Ross seeks to dismiss the new complaint claiming that the prosecutor cannot obtain a new complaint. There is no merit to and no authority