credibility of the witness' present testimony here in this courtroom."

At the end of the charge and before the jury retired, defense counsel objected specifically to the language at the beginning of the final charge on use of prior convictions.

The judge's instruction that prior convictions of a witness are not used by the jury to "decide that you don't believe that witness" was at best confusing and was likely to have misled the jury. Conviction of a crime may be shown to affect the credibility of a witness. G.L. c. 233, § 21 (1990 ed.). See *Commonwealth v. Bohannon*, 376 Mass. 90, 93, 378 N.E.2d 987 (1978), S.C., 385 Mass. 733, 434 N.E.2d 163 (1982); *Commonwealth v. Leno*, 374 Mass. 716, 717, 374 N.E.2d 572 (1978). The second part of the instruction was correct. The jury were, however, left with a contradictory statement, which seemed to distinguish the use of prior convictions described correctly in the second part of the charge, from the use "to decide that you don't believe that witness" which she told the jury was improper in the first part of the charge. "[W]e cannot know whether the jury were guided by the correct or the incorrect portion of the instructions." *Commonwealth v. Richards*, 384 Mass. 396, 403–404, 425 N.E.2d 305 (1981), quoting *Green v. United States*, 405 F.2d 1368, 1370 (D.C.Cir.1968), aff'd, 424 F.2d 912 (D.C.Cir.1970), cert. denied, 400 U.S. 997, 91 S.Ct. 473, 27 L.Ed.2d 447 (1971). The jury were entitled to consider the prior convictions in determining how much of the testimony of these witnesses they believed. Because the jury may have thought it was improper for them to do so, we think the erroneous instruction was prejudicial.

₁₇₂₅For the reasons stated we reverse the judgment and remand for a new trial.³

*So ordered.*



31 Mass.App.Ct. 57

₅₇P & F CONSTRUCTION CORPORATION

v.

FRIEND LUMBER CORPORATION OF MEDFORD (and a companion case¹).

No. 89-P-1236.

Appeals Court of Massachusetts, Middlesex.

Argued March 8, 1991.

Decided July 17, 1991.

Appeal was taken from an order of the Superior Court Department, Middlesex County, Robert J. Hallisey, J., which rendered judgment in consolidated cases arising out of sale of goods. The Appeals Court, Kass, J., held that: (1) buyer failed within reasonable time to notify seller of claimed deficiency in goods furnished, and (2) court would not reach issue where parties neglected to include any pertinent material in record appendix.

Affirmed in part and remanded.

1. Sales ⚖10

Specially manufactured things which are movable at time of identification to

---

3. We address one further issue which may arise at a new trial. One witness was released from custody during the course of the trial. The fact that he may have been released from jail as a result of information received from other Commonwealth witnesses is of dubious relevance and should not be raised by the prosecutor. However, if, as happened in the first trial, the defendant thinks that evidence of the circumstances attending the witness's release helps his case under some theory, and raises it again himself, then it may be open to the prosecutor to allude to the entire circumstances thereof, if the trial judge finds the defendant has created an erroneous impression.

1. Friend Lumber Corporation of Medford vs. P & F Construction Corporation and Vincent C. Fantasia, trustee of Winchester Investment Trust.

contract of sale are "goods" within meaning of Uniform Commercial Code. M.G.L.A. c. 106, § 2-105(1).

See publication Words and Phrases for other judicial constructions and definitions.

**2. Sales ⚖=179(6)**

When tender of goods has been accepted, buyer must within reasonable time after he discovers or should have discovered any breach notify seller of breach or be barred from any remedy. M.G.L.A. c. 106, § 2-607(3)(a).

**3. Sales ⚖=182(1)**

Generally, timeliness of notice of displeasure with goods is question to be determined by fact finder because whether notice is sufficiently prompt is function of what was reasonable in the commercial circumstances. M.G.L.A. c. 106, § 2-607(3)(a).

**4. Sales ⚖=179(6)**

Principal purpose underlying buyer's obligation to make seller aware within reasonable time that its goods do not conform to contract is to prepare ground for working out commercial dispute through compromise. M.G.L.A. c. 106, § 2-607(3)(a).

**5. Sales ⚖=179(6)**

Where buyer gave notice to seller three and one-half months after door units had been delivered to construction site that units, which were wrapped in clear plastic, were the wrong size, buyer's notice was not made within reasonable time and, thus, buyer was barred from any remedy. M.G.L.A. c. 106, § 2-607(3)(a).

**6. Sales ⚖=168(2)**

Qualities that are apparent in goods, such as size or color, reasonably should be inspected and complained of soon after goods for construction job have been delivered to job site. M.G.L.A. c. 106, § 2-607(3)(a).

**7. Appeal and Error ⚖=766**

Reviewing court would not reach issue where parties had neglected to include in record appendix any material which would enable court to review question. Rules App.Proc., Rules 9(a), 18, 43B M.G.L.A.

**8. Appeal and Error ⚖=598**

In civil cases, original record remains in court below and is not transmitted to appellate court in absence of express order for transmission which is entered by appellate court or by single justice thereof. Rules App.Proc., Rules 9(a), 18, 43B M.G.L.A.

**9. Attachment ⚖=58**
   **Execution ⚖=41**

Property held by individual as trustee of developer would not be subject to direct attachment or taking on execution by creditor of buyer/contractor, even though individual was both president of buyer/contractor and trustee of developer.

---

Judy A.S. Metcalf, Woburn, for Friend Lumber Corp. of Medford.

Brad W. Greenberg, Boston, for P & F Const. Corp., et al., submitted a brief.

Before KASS, FINE and IRELAND, JJ.

KASS, Justice.

For the reason that the buyer, P & F Construction Corporation ("P & F"), failed within a reasonable time to notify the seller, Friend Lumber Corporation ("Friend"), of a claimed deficiency in goods furnished, see G.L. c. 106, § 2-607(3)(a), summary judgment was correctly entered for Friend.

On the basis of the affidavits and depositions served up with Friend's motion for summary judgment, we may take it to have been established as undisputed facts that on August 4, 1985, P & F ordered 338 door units (doors with jambs) for an apartment condominium project on which P & F was the general contractor. There was an identity of interest between the contractor and the owner; i.e., Vincent C. Fantasia, the president, clerk, and a director of P & F, was also trustee of Winchester Investment Trust, the developer of the condominium project. With what Fantasia, in his role as chief executive of P & F, regarded as excessive promptness, the door units arrived on the job site on August 26, 1985. Each door unit came wrapped in clear plastic.

Fantasia made the first documented complaint about the shipment on October 30, 1985, when he rejected an interest charge on a bill for the balance due on P & F's open account with Friend. As the goods had arrived prematurely and it was a nuisance having them around the job site, Fantasia wrote in a letter to Friend, an interest charge on his balance was not warranted. Until December 15, 1985, there was no documented complaint that the door units were one quarter inch off size, and, even then, the only grievance articulated as the basis for a back charge was "for the storage and handling of said shipment." Cf. *Nugent v. Popular Mkts., Inc.*, 353 Mass. 45, 48–50, 228 N.E.2d 91 (1967). During deposition, Fantasia "believed" he had notified Friend prior to December 15 of his dissatisfaction with the size of the door jambs, but "[e]xpressions of belief and understanding fall short of such specific facts 'as would be ₅₉admissible in evidence'...." *Hartford Acc. & Indem. Co. v. Millis Roofing & Sheet Metal, Inc.*, 11 Mass.App.Ct. 998, 999, 418 N.E.2d 645 (1981). See *Key Capital Corp. v. M & S Liquidating Corp.*, 27 Mass.App.Ct. 721, 727–728, 542 N.E.2d 603 (1989).

Lustily disputed by the parties was whether the door units in fact deviated from what P & F had ordered. Reading the record favorably to P & F, the nonmoving party, see *Riley v. Presnell*, 409 Mass. 239, 240–241, 565 N.E.2d 780 (1991), there was evidentiary material submitted from which one could infer that P & F had ordered door units fabricated to be installed on 2 by 4 inch stud framing and that what Friend delivered were units fabricated for 2 by 3 inch framing. Friend offered evidentiary material that it delivered what had been ordered and that what it had delivered was fully incorporated in the work. P & F asserted it had incurred costs incident to adjustments required to incorporate the door units into the work, and those costs were the basis for its claim of damages.

[1–3] Specially manufactured things which are moveable at the time of identification to the contract of sale are "goods" within the meaning of the Uniform Commercial Code. G.L. c. 106, § 2-105(1). When, as occurred in this case, the tender of the goods has been accepted, "the buyer must within a reasonable time after he discovers or should have discovered any breach notify the seller of breach or be barred from any remedy...." G.L. c. 106, § 2-607(3)(a), as inserted by St.1957, c. 765, § 1. Generally, the timeliness of a notice of displeasure with the goods is a question to be determined by the fact finder because whether notice is sufficiently prompt is a function of what was reasonable in the commercial circumstances. *Delano Growers' Coop. Winery v. Supreme Wine Co.*, 393 Mass. 666, 675, 473 N.E.2d 1066 (1985). *City Welding & Mfg. Co. v. Gidley-Eschenheimer Corp.*, 16 Mass.App. Ct. 372, 373, 451 N.E.2d 734 (1983). See also G.L. c. 106, § 1-204(2). There is a category of cases, however, in which courts, on the basis of facts developed in the record, sometimes on summary judgment motions, have decided whether, as matter of law, a buyer has given timely notice of defects in the goods. See *Steel & Wire Corp. v. Thyssen Inc.*, 20 ₆₀U.C.C.Rep.Serv. (Callaghan) 892, 897–898 (E.D.Mich.1976); *Atlantic Bldg. Sys., Inc. v. Alley Constr. Corp.*, 32 U.C.C.Rep.Serv. (Callaghan) 1414, 1420–1421 (D.Mass.1981); *Oregon Lumber Co. v. Dwyer Overseas Timber Prod. Co.*, 280 Or. 437, 444, 571 P.2d 884 (1977). See also *United Cal. Bank v. Eastern Mountain Sports, Inc.*, 546 F.Supp. 945, 957–960 (D.Mass.1982) (dealing with both timeliness and adequacy of notice); *M.K. Associates v. Stowell Prod., Inc.*, 697 F.Supp. 20 (D.Me.1988). We think this is such a case.

[4–6] A principal purpose underlying the obligation imposed by § 2-607(3)(a), to make a seller aware within a reasonable time that its goods do not conform, is to prepare the ground for working out a commercial dispute through compromise. See *Nugent v. Popular Mkts., Inc.*, 353 Mass. at 48–49, 228 N.E.2d 91; *Atlantic Bldg. Sys., Inc. v. Alley Constr. Corp., supra* at 1420; *United Cal. Bank v. Eastern Mountain Sports, Inc., supra* at 958. It is easier to accept that a claim of breach is in

good faith and should be responded to in good faith when the buyer makes the claim soon after the goods arrive, rather than when the claim is made after payment has become overdue. On this record, the first mention that the door units were in some manner flawed came three and a half months after the goods had been delivered. Section 2-607(3)(a) requires notice within a reasonable time not only of when a buyer discovers any breach but within a reasonable time of when the buyer should have discovered the breach. Although the door units arrived on the job site individually wrapped, those units were susceptible to inspection, including a check of measurements (the wrapping, it will be recalled, was clear plastic). This was not a case where the defect alleged was hidden. Compare *Mastercraft Wayside Furniture Co. v. Sightmaster Corp.*, 332 Mass. 383, 384-387, 125 N.E.2d 233 (1955) (defect in television sets could not be detected until three and one half months after delivery, when television broadcasting began in the area). Qualities that are apparent, such as size or color, reasonably should be inspected and complained of soon after the goods for a construction job have been delivered to the job site. We hesitate to specify the outer limits of "soon after"[6] but think, in the circumstances described, three and one half months is not soon enough. Compare *Fortin v. Ox-Bow Marina, Inc.*, 408 Mass. 310, 318-319, 557 N.E.2d 1157 (1990), in which the court, construing G.L. c. 106, § 2-608, a provision analogous to § 2-607(3)(a), decided revocation four months after acceptance of a boat was timely because the buyer had immediately registered its complaint about the product with the seller. During the next several months the seller had attempted to solve the problems in the product which the buyer had called to attention.

[7, 8] Ancillary to the main action, which was initiated by P & F and in which Friend counterclaimed, Friend brought an action to reach and apply assets owed to P & F and held by Fantasia in his capacity as trustee of Winchester Investment Trust. See G.L. c. 214, § 3(6). The action to reach and apply was consolidated in the Superior Court with the underlying cause for hearing. Concerning the action to reach and apply, a judgment was entered that "Friend Lumber Corp. of Medford shall be entitled to reach any and all assets of P & F Construction Corp. being held by Vincent C. Fantasia, Trustee and apply the same toward the satisfaction of P & F Construction Corp.'s indebtedness to Friend." The parties have debated on appeal the correctness of that portion of the judgment but have neglected to include in the record appendix any material which would enable us to review the question. As to this issue and others, the appellee has repeatedly referred to exhibits and memoranda which are not in the record appendix. We have often called to the attention of counsel, and now do so again in wan hope that it will be noticed, that in civil cases the original record "remains in the court below and is not transmitted to the appellate court in the absence of an express order for transmission which is entered by the appellate court" or a single justice thereof. *Kunen v. First Agric. Natl. Bank*, 6 Mass.App.Ct. 684, 690, 382 N.E.2d 750 (1978). See Mass. R.A.P. 9(a), as amended, 378 Mass. 935 (1979); Mass.R.A.P. 18, as amended, 378 Mass. 940 (1979), 399 Mass. 1217 (1987).

[9] It is our practice generally not to ferret for material in the record which the parties have failed to place in appendices. *Kunen*, 6 Mass.App.Ct. at 690-691, 382 N.E.2d 750. Counsel will understand the practice is not just some judicial crotchet when they reflect that much of the time Justices spend in studying briefs and appendices in preparation for oral argument and in writing decisions is during hours when the physical records are unavailable. *Id.* at 690, 382 N.E.2d 750. The instant case does not present circumstances which warrant departure from the normal practice or what in the vocabulary of computer technology would be called the default mode; the case is unlike that of *Menard v. McCarthy*, 410 Mass. 125, 571 N.E.2d 23 (1991). In *Menard*, review of the case depended on the full transcript, which the appellant had intentionally not reproduced, having been discouraged from so doing by the language in Mass.R.A.P. 18(b), as amended, 378 Mass. 941 (1979), which

states that "[i]n designating parts of the record for inclusion in the appendix, the parties shall have regard for the fact that the entire record is always available to the court for reference and examination and shall not engage in unnecessary designation." The appellant, as the *Menard* case points out, 410 Mass. at 128, 571 N.E.2d 23, was mistaken about the import of the rule, but well motivated. In the instant case, there is no sign of similar motivation. The appendix is a hodgepodge of transcript excerpts and documents with other documents missing, to which the appellee later found it expedient to refer. It is an apt occasion not to hunt for what is missing from the appendix. See *Shawmut Community Bank, N.A. v. Zagami*, 30 Mass. App.Ct. 371, 372–374, 568 N.E.2d 1163 (1991).

[9] It is obvious from the face of the reach and apply aspect of the judgment that some further inquiry is required. As a result of the decision about P & F's liability to Friend, we know that one of the criteria of G.L. c. 214, § 3(6), has been established: P & F has a debt to Friend, its creditor. We cannot discern from the record whether Winchester Investment Trust still has money owed to P & F and, indeed, the judgment suggests the motion judge was uncertain on that score. Property in the hands of Fantasia, as trustee of Winchester Investment Trust, would not be subject to direct attachment [63]or taking on execution by a creditor of P & F. See *Massachusetts Elec. Co. v. Athol One, Inc.*, 391 Mass. 685, 687–688, 462 N.E.2d 1370 (1984).

As to the liability of P & F to Friend, the judgment is affirmed. The case is remanded for inquiry pursuant to Mass.R.Civ.P. 69, 365 Mass. 836 (1974) (discovery in aid of judgment), about whether there are assets in the hands of Fantasia, as trustee, subject to being reached and applied, or whether P & F has assets to pay the judgment directly.

*So ordered.*



575 N.E.2d—4

31 Mass.App.Ct. 64
[64]COMMONWEALTH

v.

Thomas CHILDS.

No. 90-P-267.

Appeals Court of Massachusetts, Suffolk.

Argued March 8, 1991.

Decided July 17, 1991.

Further Appellate Review Granted Sept. 26, 1991.

Defendant was convicted before the Superior Court, Suffolk County, William W. Simons, J., of second-degree murder and he appealed. The Appeals Court, 20 Mass.App. 985, 482 N.E.2d 1188, affirmed, and defendant petitioned for rehearing. On rehearing, the Appeals Court, 23 Mass. App. 33, 499 N.E.2d 299, reversed. The Supreme Judicial Court, 400 Mass. 1006, 511 N.E.2d 336, upheld the reversal and ordered new trial. On remand, defendant was again convicted before the Superior Court, Charles R. Alberti, J., of second-degree murder, and he appealed. The Appeals Court, Ireland, J., held that judge erred in declaring witness who testified at first trial unavailable for second trial, and in admitting recorded testimony of witness at second trial.

Remanded.

1. Criminal Law ⚖=541, 543(1), 544

Testimony given at a prior hearing may be introduced at a later criminal trial if defendant had the opportunity fully to cross-examine witness at prior proceeding, witness was unavailable at trial because of death or other legally sufficient reason, and testimony could be substantially reproduced in all material particulars.

2. Criminal Law ⚖=541, 543(1)

Prior recorded testimony is admissible only when it is established that witness is