that there was a conflict of interest on the part of counsel. Cf. Allstate Ins. Co. v. Keller, 17 Ill.App.2d 44, 52–53, 149 N.E.2d 482 (1958). The record does not show that counsel was aware of the conflict for any substantial period of time before he notified the insureds.

4. *Disposition.* The final decree is reversed, and the case is remanded to the Superior Court. A new final decree is to be entered declaring that the insurer has no right to disclaim liability under the policy and indorsement issued by it. The appeal from the denial of a motion for a new trial is treated as waived. The defendants and intervener are to have costs of appeal.

So ordered.



PMP ASSOCIATES, INCORPORATED

v.

GLOBE NEWSPAPER COMPANY.

Supreme Judicial Court of Massachusetts, Suffolk.

Argued Nov. 6, 1974.

Decided Jan. 6, 1975.

Operator of escort service brought bill in equity in which it was alleged that newspaper publisher committed an unfair trade practice in refusing to accept operator's advertising for publication. The Superior Court, Suffolk County, Kalus, J., entered interlocutory decree sustaining demurrer and final decree dismissing bill, and operator appealed. The Supreme Judicial Court, Tauro, C. J., held that, absent monopolistic purpose or concerted effort to hinder trade, mere refusal to accept advertising for publication was not an "unfair trade practice" in violation of statute.

Interlocutory decree affirmed.

Final decree affirmed with costs of appeal.

1. Pleading ⟸214(1)

Facts alleged in plaintiff's bill are accepted as true for purposes of ruling on demurrer.

2. Newspapers ⟸6¼

Publication and sale of newspapers is a private enterprise as distinguished from a business affected with a public interest and those engaged in such newspaper business are free to deal with whomever they choose.

3. Newspapers ⟸6¼

Publisher is under no obligation to accept advertising from all who apply for it, and a newspaper, acting alone, is commonly at liberty to reject advertising if it sees fit.

4. Monopolies ⟸12(3)

Newspapers ⟸6½

Trade Regulation ⟸861

Press may be subject to regulation by statutes of general applicability including antitrust and trade acts.

5. Trade Regulation ⟸861

Absent monopolistic purpose or concerted effort to hinder trade, mere refusal to accept escort service operator's advertising for publication in newspaper was not an "unfair trade practice" in violation of statute proscribing any unfair acts or practices in the conduct of any trade or commerce. M.G.L.A. c. 93A §§ 1 et seq., 2, 2(a) 11; Federal Trade Commission Act, §§ 5, 5(a)(1), 15 U.S.C.A. §§ 45, 45(a)(1).

See publication Words and Phrases for other judicial constructions and definitions.

6. Trade Regulation ⟸834

Judgments of Federal Trade Commission are to be given great weight by reviewing courts.

Robert J. Ciolek, Salem, for plaintiff.

Bertram E. Snyder, Boston, for defendant.

**916** Mass.  321 NORTH EASTERN REPORTER, 2d SERIES

Before TAURO, C. J., and QUIRICO, BRAUCHER, KAPLAN and WILKINS, JJ.

TAURO, Chief Justice.

This bill in equity was brought pursuant to G.L. c. 93A, § 11, and the general equity power of the court, c. 214, § 1, alleging that the defendant committed an unfair trade practice in refusing to accept the plaintiff's advertising for publication in its newspaper. This is an appeal by the plaintiff from an interlocutory decree sustaining a demurrer to the bill, and from the consequent final decree dismissing the bill. We are of opinion that the demurrer was rightly sustained.

[1] The plaintiff's bill alleges the following facts which we accept as true for purposes of ruling on the defendant's demurrer. Palmer v. Motley, 323 Mass. 129, 133, 80 N.E.2d 460 (1948). The plaintiff is a business enterprise providing escort services to the general public. Its principal mode of obtaining business is through advertising, and it is a potential consumer of advertising space of the defendant. The defendant publishes a newspaper known as The Boston Globe, and solicits advertising therein. The plaintiff offered to purchase advertising space in The Boston Globe and was willing to meet all specifications and requirements of the defendant in order to secure such space. The defendant, however, refused and refuses to accept the plaintiff's advertising. It does accept advertising from business ventures offering conducted tours and escorted travel groups, which services the plaintiff alleges are comparable to its own. The defendant publishes one of two large newspapers in the area.

[2-4] It is well settled in this Commonwealth that "the publication and sale of newspapers is a private enterprise as distinguished from a business affected with a public interest and that those engaged in such a business are free to deal with whomever they choose." J. J. Gordon, Inc. v. Worcester Telegram Publishing Co. Inc., 343 Mass. 142, 143–144, 177 N.E.2d 586, 588 (1961). A publisher is under no obligation to accept advertising from all who apply for it, and "a newspaper, acting alone, is commonly at liberty to reject advertising as it sees fit." Opinion of the Justices, — Mass. —, —,[a] 298 N.E.2d 829, 832 (1973). The *Gordon* case, *supra*, at 144, 177 N.E.2d 586. See Commonwealth v. Boston Transcript Co., 249 Mass. 477, 144 N.E. 400 (1924). See also North Station Wine Co. Inc. v. United Liquors, Ltd., 323 Mass. 48, 80 N.E.2d 1 (1948). The same conclusion has been reached by virtually every court which has dealt with this issue, including the United States Supreme Court, Lorain Journal Co. v. United States, 342 U.S. 143, 155, 72 S.Ct. 181, 96 L.Ed. 162 (1951), and various Federal and State courts.[1] See, e. g., Chicago Joint Bd. Amalgamated Clothing Wrkrs. of America, AFL–CIO v. Chicago Tribune Co., 307 F.Supp. 422 (N.D.Ill.1969), affd. 435 F.2d 470 (7th Cir. 1970), cert. den. 402 U.S. 973, 91 S.Ct. 1662, 29 L.Ed.2d 138 (1971); America's Best Cinema Corp. v. Fort Wayne Newspapers, Inc., 347 F.Supp. 328 (N.D.Ind.1972); Modla v. Tribune Publishing Co. Inc., 14 Ariz.App. 82, 480 P.2d 999 (1971); Approved Personnel, Inc. v.

---

a. Mass.Adv.Sh. (1973) 1061, 1064.

1. The only decision to the contrary is found in Uhlman v. Sherman, 22 Ohio N.P.,N.S. 225 (1919). However, even the Ohio courts do not follow that case. In Bloss v. Federated Publications, Inc., 5 Mich.App. 74, 83, 145 N.W.2d 800, 804 (1966), affd. 380 Mich. 485, 157 N.W.2d 241 (1968), the Court of Appeals of Michigan said "That the *Uhlman Case* . . . was not followed by another Ohio court is evidenced by the case of Sky High Theatre, Inc. v. The Gaumer Publishing Co. (unreported, No. 22820) in the common pleas court of Champaign county. The court therein stated [in part], . . . '*It should be followed unless it clearly appears to this court that the decision is wrong—which is the case*' ([e]mphasis supplied)."

Tribune Co., 177 So.2d 704 (Dist.Ct.App. Fla.1965). Cf. Miami Herald Publishing Co., Div. of Knight Newspapers, Inc. v. Tornillo, 418 U.S. 241, 94 S.Ct. 2831, 41 L.Ed.2d 730 (1974). See also annotation, 18 A.L.R.3d 1286 (1968). Thus, the defendant's refusal to accept the plaintiff's advertising is not actionable unless it falls within the proscriptions of G.L. c. 93A.[2]

[5] General Laws c. 93A, § 2(a), makes unlawful any "[u]nfair . . . acts or practices in the conduct of any trade or commerce." Section 1 provides that "trade" and "commerce" shall include the advertising or offering for sale of any services or property directly or indirectly affecting the people of this Commonwealth, and § 11 gives a private cause of action to any person engaged in trade or commerce who suffers a loss as a result of the employment by another engaged in trade or commerce of an unfair act declared unlawful by § 2. Chapter 93A itself, however, furnishes no definition of what constitutes an unfair act or practice made unlawful by § 2(a). Commonwealth v. DeCotis, —— Mass. —— ——,[b] 316 N.E.2d 748 (1974). Instead, it directs us to consider the interpretations of unfair acts and practices under § 5 of the Federal Trade Commission Act, 15 U.S.C. § 45(a)(1) (1970), as construed by the Federal Trade Commission (commission) and the Federal courts. Accordingly, we must look to these interpretations to determine whether the defendant's refusal to accept the plaintiff's advertising constitutes an unfair trade practice.

In recent years, the United States Supreme Court has clarified and expanded the power of the commission to declare practices unfair and thus violative of the Federal Trade Commission Act, 15 U.S.C. § 45(a)(1) (1970), even where no violation of the common law or the anti-trust acts is shown. Federal Trade Commn. v. R. F. Keppel & Bro. Inc., 291 U.S. 304, 309–313, 54 S.Ct. 423, 78 L.Ed. 814 (1934). Federal Trade Commn. v. Brown Shoe Co. Inc., 384 U.S. 316, 321–322, 86 S.Ct. 1501, 16 L.Ed. 2d 587 (1966). Federal Trade Commn. v. Sperry & Hutchinson Co., 405 U.S. 233, 244, 92 S.Ct. 898, 31 L.Ed.2d 170 (1972). In the *Sperry & Hutchinson* case, the Supreme Court made it clear that "the Federal Trade Commission does not arrogate excessive power to itself if, in measuring a practice against the elusive, but congressionally mandated standard of fairness, it, like a court of equity, considers public values beyond simply those enshrined in the letter or encompassed in the spirit of the antitrust laws." *Id.* at 244, 92 S.Ct. at 905. In a footnote, the court apparently approved the standards developed by the commission regarding the considerations to be used in determining whether a practice is to be deemed unfair: "(1) whether the practice . . . is within at least the penumbra of some common-law, statutory, or other established concept of unfairness; (2) whether it is immoral, unethical, oppressive, or unscrupulous; (3) whether it causes substantial injury to consumers (or competitors or other businessmen). If all three factors are present, the challenged conduct will surely violate Section 5 . . . if it is exploitive or inequitable and if, in addition to being morally objectionable, it is seriously detrimental to con-

---

2. It is clear that the press may be subject to regulation by statutes of general applicability. Opinion of the Justices, —— Mass. ——, —— (Mass.Adv.Sh. [1973] 1061, 1065), 298 N.E. 2d 829 (1973). This includes the anti-trust and trade acts, Associated Press v. National Labor Relations Bd. 301 U.S. 103, 132–133, 57 S.Ct. 650, 81 L.Ed. 953 (1937); Associated Press v. United States, 326 U.S. 1, 20, 65 S.Ct. 1416, 89 L.Ed. 2013 (1945); Lorain Journal Co. v. United States, *supra*; Branzburg v. Hayes, 408 U.S. 665, 682, 92 S.Ct. 2646, 33 L.Ed.2d 626 (1972); Kansas City Star Co. v. United States, 240 F.2d 643 (8th Cir. 1957), cert. den. 354 U.S. 923, 77 S.Ct. 1381, 1 L.Ed.2d 1438 (1957); cf. Albrecht v. Herald Co., 390 U.S. 145, 88 S.Ct. 869, 19 L.Ed.2d 998 (1968), and accordingly would include c. 93A.

b. Mass.Adv.Sh. (1974), (decided September 12, 1974).

sumers or others." 29 Fed.Reg. 8325, 8355 (1964).

We have examined the factors set out above in order to determine whether the defendant's refusal to accept the plaintiff's advertising constitutes an unfair trade practice. We rule that the practice in question is not within any recognized conception of unfairness, is neither immoral, unethical, oppressive nor unscrupulous, and would not cause substantial injury to consumers, competitors or other businessmen. Accordingly, we hold that the defendant's mere refusal to sell, without more, does not constitute an unfair trade practice, and is therefore not unlawful under c. 93A.

We are bolstered in our conclusion by the treatment of refusals to deal under the Federal acts by both the Federal courts and the commission. Although most of the "refusal to deal" cases have arisen under the anti-trust acts, the analysis therein is applicable to the instant case. In Lorain Journal Co. v. United States, 342 U.S. 143, 155, 72 S.Ct. 181, 187, 96 L.Ed. 162 (1951), the Supreme Court stated: "'*In the absence of any purpose to create or maintain a monopoly*, the [Sherman] act does not restrict the long recognized right of trader or manufacturer engaged in an entirely private business, freely to exercise his own independent discretion as to parties with whom he will deal' ([e]mphasis supplied)," quoting from United States v. Colgate & Co., 250 U.S. 300, 307, 39 S.Ct. 465, 63 L.Ed. 992 (1919). "Refusals to sell, without more, do not violate the law." Times-Picayune Publishing Co. v. United States, 345 U.S. 594, 625, 73 S.Ct. 872, 889, 97 L.Ed. 1277 (1953). In each of these cases, the court emphasized that more than a mere refusal to deal would be required to violate the Federal acts.

In Federal Trade Commn. v. Raymond Bros.-Clark Co., 263 U.S. 565, 44 S.Ct. 162, 68 L.Ed. 448 (1924), an early case arising under the Trade Commission Act, the court made it clear that it is the right of one engaged in a private business to refuse to deal, or discontinue dealing, with anyone, for any reason, unless the dealer combines with others in a concerted effort to hinder free trade. The court reaffirmed this rule in United States v. Bausch & Lomb Optical Co., 321 U.S. 707, 721–723, 64 S.Ct. 805, 88 L.Ed. 1024 (1944). Cf. Otter Tail Power Co. v. United States, 410 U.S. 366, 377, 93 S.Ct. 1022, 35 L.Ed.2d 359 (1973). In America's Best Cinema Corp. v. Fort Wayne Newspapers, Inc., 347 F.Supp. 328 (N.D.Ind.1972), a case involving a newspaper's refusal to accept advertising from movie houses showing X-rated films, the District judge stated: "The critical inquiry in a refusal to deal action is . . . 'whether the refusal to deal . . . is so anti-competitive in purpose or effect, or both, as to be an unreasonable restraint of trade.' Alpha Distributing Co. of California, Inc. v. Jack Daniels Distillery, 454 F.2d 442, 452 (9th Cir. 1972)." Id. at 333. The judge went on to say, "In those cases cited by the plaintiffs, where courts have restrained newspapers from refusing to accept advertising, the courts have found a purpose or motive either to exclude a person or group from the market or to accomplish some other anticompetitive objective." Id. at 333. There is no allegation of such anti-competitive motive or effect in this case.

[6] As stated, the commission's treatment of refusals to deal also reinforces the conclusion we have reached.[3] In Matter of Sun Elec. Corp., 69 F.T.C. 571, 595–596 (1966) the commission stated: "'We have not yet reached the stage where the selection of a trader's customers is made for him by the government' (either directly or indirectly), Great Atlantic & Pacific Tea Co. v. Cream of Wheat Co., 227 F. 46, 48

---

3. Judgments of the commission are to be given great weight by reviewing courts. Federal Trade Commn. v. Motion Picture Advertising Serv. Co. Inc. 344 U.S. 392, 396, 73 S.Ct. 361, 97 L.Ed. 426 (1953). Federal Trade Commn. v. Colgate-Palmolive Co., 380 U.S. 374, 385, 85 S.Ct. 1035, 13 L.Ed.2d 904 (1965).

(2d Cir. 1915), unless the exercised business policy at issue is (1) reflective of an illegal monopolistic tendency, (2) discriminatory and injuriously affects competition, (3) inherently unconscionable or (4) otherwise violative of public policy. . . . The right to select one's customers existed at common law, is recognized by statute, and is limited *only* if the selection is concerted or monopolistic" (footnotes deleted, emphasis added).

The commission's position regarding refusals to deal has not been altered by the expansive interpretation given to § 5 by the Supreme Court in the *Sperry & Hutchinson* case. This is evidenced by recent republication of a series of advisory opinions issued by the commission. In one opinion, the commission was asked to decide whether a newspaper has a right under the antitrust laws to reject advertisements which are submitted to it for publication. The commission found that the newspaper was "acting in accord with the exercise of its own independent judgment and not in concert with others," and stated that in these circumstances it "could see no objection to the exercise by the newspaper of its right to refuse to accept the advertisement." F. T. C. Advisory Opinion No. 93, summary, 70 F.T.C. 1877 (1966), 31 Fed.Reg. 13210 (1966), reprinted in 16 C.F.R. (1974) § 15.-93. In that case, the newspaper had refused to publish the advertisement because it believed it to be misleading. However, the language of the opinion seems to have much wider application, and would be relevant to the instant case.

Two other recently republished opinions also indicate that the commission will not strike down a refusal to deal as violative of the Federal statutes unless it involves some anti-competitive motive or effect. See F. T. C. Advisory Opinion No. 28, summary 69 F.T.C. 1214 (1966), 31 Fed. Reg. 5660 (1966), reprinted in 16 C.F.R. (1974) § 15.28, where no violation was found in the proposed sale of promotional pamphlets to only certain customers. The commission there stated: "[T]he antitrust laws do not restrict the right of a seller who does not have monopoly power to select those customers to whom he will sell his product, provided that the right is not exercised for the purpose of monopolization or is otherwise linked to an unlawful course of conduct in restraint of trade." See also F. T. C. Advisory Opinion No. 136, summary, 72 F.T.C. 1042 (1967), 32 Fed.Reg. 10567 (1967), reprinted in 16 C. F.R. (1974) § 15.136, where the commission found no violation in a shopping center developer's proposal to select tenants on the basis of a statistical study purporting to show optimum occupancy mix. The opinion stated that, "in the absence of any purpose or intent to create a monopoly, prospective lessees could be accepted or rejected at will provided the action taken was taken independently and as the result of the lessor's individual judgment."

Our careful examination of the Federal acts and their interpretation has led us to the conclusion that a refusal to deal, without a showing of monopolistic purpose or concerted effort to hinder free trade, is not an unfair trade practice under G.L. c. 93A, and is therefore not actionable. The plaintiff's bill alleges no monopolistic purpose or concerted action. In alleging merely that the defendant has refused to accept its advertising, the plaintiff fails to set forth a cause of action. Accordingly, the court below did not err in sustaining the defendant's demurrer.

Interlocutory decree affirmed.

Final decree affirmed with costs of appeal.