—— of —— Mass.App.[e] 309 N.E.2d 510), as to all parties involved below, provided, however, that the last paragraph of the final decree shall not include the insurer if the plaintiff seasonably moves to amend his bill to allege a proper claim against the insurer.[3] If such a motion is filed and allowed, the decree shall be final as to all defendants except the insurer.

So ordered.



Richard SLANEY

v.

WESTWOOD AUTO, INC.

Supreme Judicial Court of Massachusetts, Norfolk.

Argued Oct. 8, 1974.

Decided Jan. 30, 1975.

Automobile buyer brought action against seller under Consumer Protection Act. The Superior Court, Brogna, J., sustained seller's demurrer and buyer appealed. The Supreme Judicial Court, Quirico, J., held that purchaser's pleadings properly invoked jurisdiction of equity court to enforce disaffirmance of the contract by the buyer, who was a minor; that complaint based on private remedy provisions of Consumer Protection Act properly invoked equity jurisdiction of the court; that complaint was not required to set forth the elements of common-law action of fraud and deceit; and that the complaint in question contained necessary allegations for maintaining action under private remedy provisions of the Consumer Protection Act.

Reversed and remanded.

e. Mass.App.Ct.Adv.Sh. (1974) at 371.

3. The last paragraph provided that "[t]he respondents are not liable to the petitioner in

**1. Appeal and Error ⚖=870(5)**

Although no appeal was taken from interlocutory decree sustaining demurrer, propriety of that decree was open on appeal from final decree. M.G.L.A. c. 214 § 27.

**2. Pleading ⚖=214(1)**

Factual allegations in the bill are taken as true when ruling on a demurrer. M.G.L.A. c. 214 § 27.

**3. Infants ⚖=58(1)**

Under the common law of Massachusetts, any contract, except one for necessaries, entered into by an unemancipated minor can be disaffirmed by him before he reaches the age of 21 or within a reasonable time thereafter; no particular words are actually required for disaffirmance and any unequivocal repudiation of the contract is sufficient.

**4. Infants ⚖=58(1)**

Bringing suit to rescind contract is an unequivocal repudiation of contract sufficient to disaffirm contract entered into by minor.

**5. Infants ⚖=92**

Pleading of minor that he was under 21 at the time of purchase of automobile and that he did not have requisite written permission from his parent or guardian properly invoked jurisdiction of equity court to enforce disaffirmance of the contract by appropriate decree. M.G.L.A. c. 90 § 2C.

**6. Trade Regulation ⚖=864**

Burden of proving exemption of action or practice from provisions of the Consumer Protection Act is on the person claiming the exemption. M.G.L.A. c. 93A § 3.

respect to any matters alleged in the Bill of Complaint."

**7. Trade Regulation ⚖=861**

Massachusetts Consumer Protection Act, by directing the courts to be guided, in interpreting the Consumer Protection Act by interpretations given by the Federal Trade Commission and the federal courts to the Federal Trade Commission Act has wholly incorporated the federal Act into the statute. Federal Trade Commission Act, § 5(a)(1), 15 U.S.C.A. § 45(a)(1); M.G.L.A. c. 93A § 2(b).

**8. Trade Regulation ⚖=864**

If used automobile buyer had any claim at all under the Consumer Protection Act, it was properly sought in equity, whether or not buyer had a complete and adequate remedy at law. M.G.L.A. c. 93A § 9(1).

**9. Equity ⚖=43**

Where equity jurisdiction is specifically conferred by statute, it is no objection that the plaintiff also has a plain, adequate, and complete remedy at law.

**10. Trade Regulation ⚖=864**

In order to state claim under private remedy provisions of Consumer Protection Act, there must be alleged an included transaction, i. e., a purchase or lease of goods, services, or real or personal property, and the included transaction must have been undertaken primarily for personal, family, or household purposes. M.G.L.A. c. 93A § 9.

**11. Trade Regulation ⚖=864**

Complaint in which automobile buyer sought rescission and damages under the Consumer Protection Act and which alleged the purchase of an automobile sufficiently alleged the purchase of goods to allow buyer to maintain claim under the private remedy provisions of the Act. M.G.L.A. c. 93A § 9.

**12. Trade Regulation ⚖=864**

Since private remedy provisions of Consumer Protection Act protect only consumers, one who asserts rights under the section must be claiming to be consumer so that fact that claim was asserted under the private remedy provisions of the Act inferentially presented allegations that the transaction in question was one of the transactions included under the Act, i. e., one undertaken primarily for personal, family, or household purposes. M.G.L.A. c. 93A § 9.

**13. Pleading ⚖=8(1)**

Although, under the new rules, reliance on inferences or conclusory statements may not necessarily render a pleading defective, pleader may well be advised to avoid undue reliance on inferences which can only invite a motion to dismiss for failure to state a claim on which relief can be granted. M.G.L.A. c. 106 § 2-316A; c. 231 § 7; Rules of Civil Procedure, rule 12(b)(6).

**14. Trade Regulation ⚖=864**

Allegations that used automobile seller failed to fulfill promises, made as a part of sale transaction, to repair specified parts of the automobile and refused to fulfill a promise, relied upon by the buyer, to repair all other defects in the automobile subsequent to expiration of 30-day warranty provided in order form was sufficient to meet requirement of pleading under the private remedy provisions of the Consumer Protection Act that the seller used or employed an unfair or deceptive act or practice declared unlawful by the statute or by regulations issued pursuant to the statute. M.G.L.A. c. 93A §§ 2, 9(1).

**15. Trade Regulation ⚖=861, 864**

Failure to disclose defect in engine of automobile is unlawful under provisions of the Consumer Protection Act and is actionable under private remedy provisions of the Act. M.G.L.A. c. 93A §§ 2, 9.

**16. Fraud ⚖=3**

Specific elements of common-law action for fraud and deceit are that the defendant made a false representation of a

322 N.E.2d—49

material fact with knowledge of falsity for the purpose of inducing the plaintiff to act thereon, and that the plaintiff relied upon the representation as true and acted upon it to his damage.

**17. Trade Regulation ⊕=864**

In order for a person to recover under private remedy provisions of the Consumer Protection Act, it is not necessary to establish that the defendant knew that the representation was false. M.G.L.A. c. 93A §§ 2, 9.

**18. Trade Regulation ⊕=864**

Claim for relief under private remedy provisions of Consumer Protection Act is a creation of the statute and is sui generis; it is neither wholly tortious nor wholly contractual in nature, and is not subject to the traditional limitation of preexisting causes of actions such as tort for fraud and deceit. M.G.L.A. c. 93A §§ 2, 9.

**19. Trade Regulation ⊕=864**

Automobile buyer, by alleging in complaint for relief under Consumer Protection Act, that he sent a letter to the seller demanding rescission and other action on the part of the seller, satisfied demand letter prerequisite to bringing of action for private remedy under the Consumer Protection Act. M.G.L.A. c. 93A § 9(3).

**20. Trade Regulation ⊕=864**

Where it appears that alleged acts or practices of seller are clearly declared unlawful by Attorney General's rules and regulations pursuant to the Consumer Protection Act, there has been an effective allegation that the seller had reason to know that those acts or practices violated the Act. M.G.L.A. c. 93A §§ 2, 9(3).

**21. Appeal and Error ⊕=1201(3)**

Because of unsettled nature of law concerning private actions under Consumer Protection Act prior to plaintiff's appeal from sustaining of demurrer to his complaint which sought relief under those provisions, plaintiff, on remand, would be allowed amendment as to all claims for relief. M.G.L.A. c. 93A § 1 et seq.

---

Ralph S. Tyler, Roxbury, for plaintiff.

Before TAURO, C. J., and REARDON, QUIRICO, BRAUCHER, HENNESSEY, KAPLAN and WILKINS, JJ.

QUIRICO, Justice.

[1] This case raises novel questions under the Regulation of Business Practice and Consumer Protection Act, G.L. c. 93A, inserted by St.1967, c. 813, § 1. It is before us on the plaintiff's appeal from a final decree of the Superior Court, following the sustaining of a demurrer, dismissing his bill in equity seeking damages, contract rescission, and other relief. The alleged right to this relief arose out of the plaintiff's purchase of a used automobile from the defendant. Although no appeal was taken from the interlocutory decree sustaining the demurrer, the propriety of that decree is open on appeal from the final decree. See former G.L. c. 214, § 27; Nochemson v. Aronson, 279 Mass. 278, 280, 181 N.E. 188 (1932); Clinton Housing Authy. v. Finance Comm. of Clinton, 329 Mass. 495, 496, 109 N.E.2d 449 (1952).[1] It is the sustaining of the demurrer which has been urged as error by the plaintiff.

[2] The factual allegations in the bill, which are taken as true when ruling on a

---

1. Former G.L. c. 214, § 27, was repealed by St.1973, c. 1114, § 62. Review of interlocutory orders on appeal from a final judgment is now provided for in Rule 3(a) of the Mass. R.A.P., —— Mass. ——. However, since the appeal in this case was claimed prior to July 1, 1974 (the effective date of the new rules), it is governed by the transitional rule, Rule 1A, subparagraph 7, of the Mass. R.A.P., —— Mass. ——, which requires that pre-July 1 procedures be followed.

demurrer, Shea v. Shea, 296 Mass. 143, 144, 4 N.E.2d 1015 (1936); Fred C. McClean Heating Supplies, Inc. v. Westfield Trade High Sch. Bldg. Comm. of Westfield, 345 Mass. 267, 269, 186 N.E.2d 911 (1962), can be broken down into four groups, each of which could be construed as purporting to state a cause of action:

1. The defendant failed to fulfil promises, made as part of the sale transaction, to repair the exhaust system, the spare tire, and the tail light, and to align the front end.

2. The defendant refused to fulfil a promise, relied on by the plaintiff in making his purchase, to repair all other defects in the automobile subsequent to the expiration of the thirty-day warranty period provided for in the car order form.[2] This refusal occurred when the plaintiff discovered after the thirty-day warranty period that the entire engine was defective and had to be replaced and that the radiator was defective and needed repairs.

3. The defendant knew or should have known that the engine was defective at the time of sale and did not disclose this fact to the plaintiff. The plaintiff did not discover it until after the expiration of the thirty-day warranty period.

4. The plaintiff, as the defendant knew or should have known, was under twenty-one years of age at the time of purchase, and did not have the written parental consent required at that time by former G.L. c. 90, § 2C, for the purchase of an automobile.[3]

The bill further alleges that the defendant's failure to fulfil the repair promises noted above constituted a breach of the Uniform Commercial Code express warranty provision, G.L. c. 106, § 2–313, and that the sale of the automobile with the previously mentioned defects amounted to a breach of the Code's implied warranty of merchantability provisions, G.L. c. 106, §§ 2–314, 2–316A. Other sections of the bill allege that the plaintiff, through counsel, sent a demand letter complying with G.L. c. 93A, § 9, and that the defendant failed to respond thereto. Finally, the bill alleges the damages suffered by the plaintiff and requests various kinds of relief, principally rescission of the contract of sale and reimbursement for expenses incurred in repairing defects in the automobile.

The defendant offered three grounds of demurrer: "(1) The plaintiff does not set forth a cause of action within the jurisdiction of equity; (2) The statute that the plaintiff relies on for jurisdiction in equity, namely, G.L. c. 93A, § 9, is not applicable on the facts contained in the Bill to sustain a cause of action in equity; and (3) The plaintiff has a complete and adequate remedy at law." The trial judge, apparently agreeing with statement (2) above, ruled "that Chapter 93A of the General Laws created no new cause of action for this type of case which is the classic breach of express or implied warranty under the Commercial Code, . . . [and] that the buyer's rights of rescission are similarly covered in the Commercial Code and that no new equitable cause of action was created by Chapter 93A."

Because this case presents the first opportunity this court has had to consider the procedural and substantive scope of the private remedy provisions of c. 93A,[4] we

---

2. The order form was checked in a box reading as follows: "SOLD WITH WARRANTY. We the dealer warranty this car for 30 days after date of delivery on a 50-50 retail basis of parts & labor used. (Owner pays half and dealer pays half of total retail cost of parts & labor used). All repairs must be made in our service shop. We do not warranty speedometer reading, tires, battery, glass, radio or heater."

3. Former G.L. c. 90, § 2C, was repealed by St.1973, c. 925, § 11.

4. In Gordon v. Hardware Mut. Cas. Co., —— Mass. —— (Mass.Adv.Sh. [1972] 757), 281 N.E.2d 573 (1972), we ruled on the rather narrow question whether a plaintiff was required to exhaust his available administrative remedies before seeking judicial relief under c. 93A for an allegedly unfair increase in his

shall examine the pleading requirements of the statute and determine whether the instant bill meets those requirements. Incident to this examination, we shall touch on the various forms of relief afforded by the statute under proper pleadings and proof. Before doing this, however, we shall consider the question of the plaintiff's age at the time of entering into the contract.

### I. THE MINORITY ISSUE.

[3–5] Under the common law of this jurisdiction, any contract, except one for necessaries, entered into by an unemancipated minor could be disaffirmed by him before he reached the age of twenty-one or within a reasonable time thereafter. Frye v. Yasi, 327 Mass. 724, 728, 101 N.E.2d 128 (1951), and cases therein cited. No particular words or acts are required for disaffirmance; any unequivocal repudiation of the contract is sufficient. Tracy v. Brown, 265 Mass. 163, 164–165, 163 N.E. 885 (1928). Bringing suit to rescind is certainly such an unequivocal repudiation. See Del Santo v. Bristol County Stadium, Inc., 273 F.2d 605, 607–608 (1st Cir. 1960). Former G.L. c. 90, § 2C, merely altered these common law principles by making an exception to them for automobile purchases where the minor was over eighteen years of age and had the written permission of his parent or guardian to make the purchase. The plaintiff here alleged that he was under twenty-one at the time of the purchase and did not have the requisite written permission. This pleading properly invoked the jurisdiction of an equity court to enforce the disaffirmance by an appropriate decree. See Reed, Equity Pleading and Practice, §§ 282, 342 (1952). Whether the plaintiff was emancipated, whether the automobile was a necessary, or whether the disaffirmance was timely are all factual questions to be resolved at trial. See, for example, Welch v. King, 279 Mass. 445, 450, 181 N.E. 846 (1932). As to the request for relief on the ground of minority at least, the demurrer should have been overruled.[5]

### II. THE CHAPTER 93A ISSUES

A. *The Background and Structure of c. 93A.*

Chapter 93A of the General Laws is designated as the "Regulation of Business Practice and Consumer Protection Act." St.1967, c. 813, § 2. It is a statute of broad impact which creates new substantive rights and provides new procedural devices for the enforcement of those rights. We recently had occasion to comment on the far-reaching effects of this statute in our opinion in Commonwealth v. DeCotis, — Mass. —, —, fn. 8[a], 316 N.E.2d 748 (1974), where we said: "We would not concur with the . . . argument that . . . [by enacting G.L. c. 93A] 'the Legislature did not confer new substantive rights on consumers,' . . . Although G.L. c. 93A admittedly established new procedural devices to aid consumers and others . . ., it also created new substantive rights by making conduct unlawful which was not unlawful under the common law or any prior statute."

---

automobile insurance premium. We held that he was so required. *Id.* at 763, 281 N.E.2d 573. See, however, St.1973, c. 939, which amended G.L. c. 93A, § 9, so as to obviate, except in specified cases, the requirement that administrative remedies be exhausted before relief can be granted under c. 93A.

5. The plaintiff has treated the minority issue as independent of his rights under c. 93A. It is therefore not necessary for us to decide whether the right of disaffirmance of certain contracts by minors is brought within the purview of G.L. c. 93A, § 2, by § XV(C) of the Attorney General's rules and regulations promulgated under G.L. c. 93A, § 2(c). Section XV provides that "an act or practice is a violation of Chapter 93A, Section 2 if: . . . (C) It fails to comply with existing statutes, rules, regulations or laws, meant for the protection of the public's health, safety, or welfare promulgated by the Commonwealth or any political subdivision thereof intended to provide the consumers of this Commonwealth protection . . . ."

a. Mass.Adv.Sh. (1974) 1425, 1434, fn. 8.

We also quoted with approval the statement "that the statutory words '"[u]nfair and deceptive practices" [in G.L. c. 93A, § 2] are not limited by traditional tort and contract law requirements.'" *Ibid.*

Chapter 93A as presently in force consists of five segments which combine to form a comprehensive substantive and procedural business and consumer protection package:

(a) Section 1 provides definitions for some of the terms employed in the remainder of the chapter.[6]

[6, 7] (b) Sections 2 and 3 indicate the proscribed conduct and enumerate the transactions which are exempt from those proscriptions.[7] The burden of establishing exemptions, none of which is at issue here, is on the person claiming them. Commonwealth v. DeCotis, *supra*, at —, 316 N.E.2d 748.[b] Section 2, the substantive heart of c. 93A, declares that unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce are unlawful. Two methods are given for construction of the terms "unfair methods of competition," "unfair or deceptive acts or practices," and "in the conduct of any trade or commerce." First, the courts are directed by the Legislature to be guided by the interpretations given by the Federal Trade Commission (FTC) and the Federal Courts to § 5(a)(1) of the Federal Trade Commission Act, 15 U.S.C. § 45(a)(1) (1970) (Federal act).[8] Second, the Attorney General is empowered to make interpretive rules and regulations consistent with the FTC's and the Federal Courts' construction of the Federal act.

(c) Sections 4 through 8 include the public remedy provisions, i. e., the procedures and relief available to the Attorney General when he has reason to believe that anyone is committing, or is about to commit, any act which is unlawful under § 2.[9]

---

6. As stated in § 2 (fn. 7, *infra*), c. 93A's proscriptions extend to certain activities "in the conduct of any trade or commerce." The definitions in § 1, as amended by St.1972, c. 123, state: "'Trade' and 'commerce' shall include the advertising, the offering for sale, rent or lease, the sale, rent, lease or distribution of any services and any property, tangible or intangible, real, personal or mixed, and any other article, commodity, or thing of value wherever situate, and shall include any trade or commerce directly or indirectly affecting the people of this commonwealth."

7. SECTION 2. "(a) Unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce are hereby declared unlawful. (b) It is the intent of the legislature that in construing paragraph (a) of this section the courts will be guided by the interpretations given by the Federal Trade Commission and the Federal Courts to section 5(a)(1) of the Federal Trade Commission Act (15 U.S.C. 45(a)(1)), as from time to time amended. (c) The attorney general may make rules and regulations interpreting the provisions of subsection 2(a) of this chapter. Such rules and regulations shall not be inconsistent with the rules, regulations and decisions of the Federal Trade Commission and the Federal Courts interpreting the provisions of 15 U.S.C. 45(a)(1) (The Federal Trade Commission Act), as from time to time amended."

Section 3 exempts from the reach of c. 93A three groups of acts or practices: (a) those otherwise permitted under laws as administered by State or Federal agencies; (b) those occurring primarily in interstate commerce, and (c) those already the subject of complaints by the Federal Trade Commission. The burden of establishing these exemptions is on the one who claims that they apply.

b. At 1430.

8. For purposes of national uniformity and certainty of construction, Massachusetts, along with a few other States, has thus wholly incorporated the Federal act into its statute. See An Act to Prohibit Unfair and Deceptive Trade Practices, comment to § 3–201, 7 Harv.J. on Legislation, 122, 129 (1969).

9. Section 4 empowers the Attorney General, whenever he has reason to believe c. 93A is being violated, to seek a temporary or permanent injunction to restrain the use of the allegedly unlawful method, act, or practice. Section 5 allows the Attorney General to accept an assurance of discontinuance in lieu of obtaining an injunction whenever an injunction could have been sought under § 4. Section 6 permits the Attorney General, under certain procedural restrictions, to hold hearings and obtain evidence pertaining to possible violations of the chapter. Section

These public remedy sections, as they relate to the conduct proscribed by the chapter, provided the focus of our recent examination in the *DeCotis* case.

(d) Sections 9 and 11 (the latter section having been inserted by St.1972, c. 614, § 2) provide the chapter's private remedies and procedures.[10] These are available to

---

7 provides the penalties to enforce appropriate orders for appearance, discovery, and so forth, issued under § 6. Section 8 provides that the court may order that a corporation which habitually violates injunctions issued under § 4 lose its right to do business in the Commonwealth.

10. "SECTION 9. (1) Any person who *purchases or leases* goods, or services or property, real or personal, *primarily* for personal, family or household purposes and thereby *suffers any loss* of money or property, real or personal, as a result of the use or employment by another person of an unfair or deceptive act or practice declared unlawful by section two or by any rule or regulation issued under paragraph (c) of said section two may, as hereinafter provided, bring an action in the superior court in equity for damages and such equitable relief, including an injunction, as the court deems to be necessary and proper [emphasis supplied].

"(2) Any persons entitled to bring such action may, if the use or employment of the unfair or deceptive act or practice has caused similar injury to numerous other persons similarly situated and if the court finds in a preliminary hearing that he adequately and fairly represents such other persons, bring the action on behalf of himself and such other similarly injured and situated persons; the court shall require that notice of such action be given to unnamed petitioners in the most effective practicable manner. Such action shall not be dismissed, settled or compromised without the approval of the court, and notice of any proposed dismissal, settlement or compromise shall be given to all members of the class of petitioners in such manner as the court directs.

"(3) At least thirty days prior to the filing of any such action, a written demand for relief, identifying the claimant and reasonably describing the unfair or deceptive act or practice relied upon and the injury suffered, shall be mailed or delivered to any prospective respondent. Any person receiving such a demand for relief who, within thirty days of the mailing or delivery of the demand for relief, makes a written tender of settlement which is rejected by the claimant may, in any subsequent action, file the written tender and an affidavit concerning its rejection and thereby limit any recovery to the relief tendered if the court finds that the relief tendered was reasonable in relation to the injury actually suffered by the petitioner. In all other cases, if the court finds for the petitioner, recovery shall be in the amount of actual damages or twenty-five dollars, whichever is greater; or up to three but not less than two times such amount if the court finds that the use or employment of the act or practice was a willful or knowing violation of said section two or that the refusal to grant relief upon demand was made in bad faith with knowledge or reason to know that the act or practice complained of violated said section two. In addition, the court shall award such other equitable relief, including an injunction, as it deems to be necessary and proper. The demand requirements of this paragraph shall not apply if the prospective respondent does not maintain a place of business or does not keep assets within the commonwealth, but such respondent may otherwise employ the provisions of this section by making a written offer of relief and paying the rejected tender into court as soon as practicable after receiving notice of an action commenced under this section.

"(4) If the court finds in any action commenced hereunder that there has been a violation of section two, the petitioner shall, in addition to other relief provided for by this section and irrespective of the amount in controversy, be awarded reasonable attorney's fees and costs incurred in connection with said action; provided, however, the court shall deny recovery of attorney's fees and costs which are incurred after the rejection of a reasonable written offer of settlement made within thirty days of the mailing or delivery of the written demand for relief required by this section.

"(5) The provisions of clause (c) of paragraph (1) of section three shall not apply to actions brought pursuant to this section.

"(6) Any person entitled to bring an action under this section shall not be required to initiate, pursue or exhaust any remedy established by any regulation, administrative procedure, local, state or federal law or statute or the common law in order to bring an action under this section or to obtain injunctive relief or recovery damages or attorney's fees or costs or other relief as provided in this section. Failure to exhaust administrative remedies shall not be a defense to any proceeding under this section, except as provided in paragraph seven.

"(7) The court may upon motion by the respondent before the time for answering and after a hearing suspend proceedings brought under this section to permit the respondent to initiate action in which the petitioner shall be named a party before any appropriate regula-

the individual consumer [11] or businessman [12] (or class of consumers or businessmen in appropriate cases) who suffers a loss, in the case of the consumer, as a result of the employment of an unfair or deceptive act or practice by a businessman, or, in the case of a businessman, as a result of the employment by another businessman of either an unfair or deceptive act or practice or of an unfair method of competition. Section 9—the consumer remedy section—along, with the substantive provisions of § 2, is at the center of our inquiry in the instant case.

(e) Finally, § 10 provides for the interrelationship between the public and private remedy sections by requiring the clerk of court to notify the Attorney General of the entry and disposition of private remedy actions, and by making certain court orders entered in public actions admissible in private actions as prima facie evidence that the defendant engaged in proscribed acts or practices.

B. *The Background of § 9.*

Chapter 93A contained no private remedy provisions when it was originally inserted by St.1967, c. 813, § 1. Unfair methods of competition and unfair or deceptive acts or practices were declared unlawful, but only the Attorney General could bring enforcement proceedings. Moreover, unless he could obtain a consent decree or voluntary agreement to that effect, even the Attorney General had no power to ensure that reparations were made to injured persons. G.L. c. 93A, §§ 4, 5, inserted by St. 1967, c. 813, § 1 (later revised by St.1969,

---

tory board or officer providing adjudicatory hearings to complainants if the respondent's evidence indicates that:

"(a) there is a substantial likelihood that final action by the court favorable to the petitioner would require of the respondent conduct or practices that would disrupt or be inconsistent with a regulatory scheme that regulates or covers the actions or transactions complained of by the petitioner established and administered under law by any state or federal regulatory board or officer acting under statutory authority of the commonwealth or of the United States; or

"(b) that said regulatory board or officer has a substantial interest in reviewing said transactions or actions prior to judicial action under this chapter and that the said regulatory board or officer has the power to provide substantially the relief sought by the petitioner and the class, if any, which the petitioner represents, under this section.

"Upon suspending proceedings under this section the court may enter any interlocutory or temporary orders it deems necessary and proper pending final action by the regulatory board or officer and trial, if any, in the court, including issuance of injunctions, certification of a class, and orders concerning the presentation of the matter to the regulatory board or officer. The court shall issue appropriate interlocutory orders, decrees and injunctions to preserve the status quo between the parties pending final action by the regulatory board or officer and trial and shall stay all proceedings in any court or before any regulatory board or officer in which petitioner and respondent are necessarily involved. The court may issue further orders, injunctions or other relief while the matter is before the regulatory board or officer and shall terminate the suspension and bring the matter forward for trial if it finds (a) that proceedings before the regulatory board or officer are unreasonably delayed or otherwise unreasonably prejudicial to the interests of a party before the court, or (b) that the regulatory board or officer has not taken final action within six months of the beginning of the order suspending proceedings under this chapter.

"(8) Except as provided in section ten, recovering or failing to recover an award of damages or other relief in any administrative or judicial proceeding, except proceedings authorized by this section, by any person entitled to bring an action under this section, shall not constitute a bar to, or limitation upon relief authorized by this section."

Section 11 provides for the businessman, see fn. 12, *infra*, remedies against unfair methods of competition or unfair or deceptive acts or practices. These remedies are comparable to those provided for the consumer by § 9.

11. We use the word consumer for convenience here. The statutory term is "[a]ny person who purchases or leases goods, services or property, real or personal, primarily for personal, family or household purposes." G.L. c. 93A, § 9.

12. We use the word businessman for convenience here. The statutory term is "[a]ny person who engages in the conduct of any trade or commerce." G.L. c. 93A, § 11.

c. 814, § 3). Rice, New Private Remedies for Consumers: The Amendment of Chapter 93A, 54 Mass.L.Q. 307, 309 (1969) (hereinafter Rice, New Private Remedies).[13] The limited scope of the Attorney General's powers of litigation caused the Consumer Protection Division (Division) to rely more and more on attempts at conciliation. Relatively few cases were settled by the use of voluntary agreements, and even fewer ever reached litigation. Rep.A.G., Pub.Doc.No.12 (1969) 11. Rice, New Private Remedies, at 309. As the existence of the Division became more widely known by the public, the number of complaints received reached flood proportions.[14] In the year ending June 30, 1969, 2,473 written and "incalculable" telephone complaints were received by the Division. Rep.A.G., Pub.Doc.No.12 (1969) 12. Volume disposition of these complaints by telephone and letter was required for expediency; staff time and effort were consumed in this mass project at the expense of the institution of formal proceedings. Consumers whose complaints could not be settled by informal methods, therefore, often could not obtain relief. Rice, New Private Remedies, at 309, 311. The problems of the Division are mirrored by those of comparable offices in other jurisdictions. It has been observed that most such agencies are "woefully understaffed and underfinanced, morassed in a sea of red tape, and unbearably slow acting." Travers and Landers, The Consumer Class Action, 18 U. of Kans.L.Rev. 811, 812 (1970). See comment, 67 Northwestern U.L.Rev. 413, 415-416 (1972), and sources cited therein.

Because of the inability of the Division to handle all the complaints it was receiving, it became clear that private remedies were needed under c. 93A. Moreover, it was apparent that for these private remedies to be effective, several problems would have to be overcome in the enabling legislation. It is a central premise of our legal system that professional advocates will represent the parties to a dispute. Indeed, the complexities of the machinery of justice are often severe enough to discourage even the seasoned attorney. In sum, "causes for which advocates cannot be obtained are, in effect, not adjudicable. Consumer grievances usually involve small amounts which are substantially less than the fee required to compensate members of the private bar." Eovaldi and Gestrin, Justice for Consumers: The Mechanisms of Redress, 66 Northwestern U.L.Rev. 281, 286 (1971).[15]

The Attorney General sought to meet the pressing need for an effective private remedy under c. 93A by proposing the bill which evolved into 1969 Senate Doc.No. 1259. While this bill was awaiting final approval, the Attorney General discussed its import in his annual report: "Some significant legislation was proposed and sup-

---

13. It is noted at the beginning of the cited article that Professor David A. Rice was the principal draftsman of the 1969 amendments to c. 93A, St.1969, c. 690, and St.1969, c. 814. He has written widely on consumer protection statutes. In addition to the article cited above, see Rice, Remedies, Enforcement Procedures and the Duality of Consumer Transaction Problems, 48 B.U.L.Rev. 559 (1968); Rice, Exemplary Damages in Private Consumer Actions, 55 Iowa L.Rev. 307 (1969); Rice, Uniform Consumer Sales Practices Act—Damages Remedies: The NCCUSL Giveth and Taketh Away, 67 Northwestern U.L.Rev. 369 (1972).

14. Merely making consumers aware of the existence of the Division was probably a substantial achievement. Studies have indicated that lack of awareness of sources of professional help is a major consumer problem, particularly for low income groups. Caplovitz, The Poor Pay More, 175-178 (1967 ed.).

15. The existence of small claims courts in this Commonwealth, provided for by G.L. c. 218, §§ 21-25, ameliorates the problem somewhat by making informal proceedings available for the adjudication of civil cases involving "small" amounts, now up to $400. G.L. c. 218, § 21, as amended by St.1971, c. 271, § 1. See McLaughlin v. Municipal Court of Roxbury Dist. of Boston, 308 Mass. 397, 32 N.E.2d 266 (1941). Such proceedings, however, are not a panacea for consumer problems. The small claims proceedings sometimes have the appearance of being principally collection tools for business creditors against individual debtors. Comment, 52 Cal.L.Rev. 876, 884 (1964).

ported during this period. . . . Two important amendments to Chapter 93A are pending and favorable action is anticipated. One . . . provides the consumer with a private remedy, including a minimum recovery of $25.00, attorney's fees, a class action provision,[16] and, in certain cases, treble damages." In substantially the form proposed by the Attorney General, a private remedy bill was enacted. St.1969, c. 690, inserting G.L. c. 93A, § 9.

C. *Pleading under § 9.*

[8, 9] The defendant's demurrer was sustained in this case for failure to state an equitable cause of suit under c. 93A. One of the grounds of demurrer, that the plaintiff had a complete and adequate remedy at law, is clearly inapplicable here. If the plaintiff has any claim at all under the chapter, § 9(1) directs that suit be brought "in the superior court in equity." It has long been the law that where equity jurisdiction is specifically conferred by statute, it is no objection that the plaintiff also has a plain, adequate, and complete remedy at law. Bernard v. Barney Myroleum Co., 147 Mass. 356, 359, 17 N.E. 887 (1888). Powers v. Heggie, 268 Mass. 233, 241–242, 167 N.E. 314 (1929). Salvucci v. Sheehan, 349 Mass. 659, 661–662, 212 N.E.2d 243 (1965). Moreover, now that there is but one form of action in this Commonwealth, Rule 2 of the Mass.R.Civ.P. — Mass. —, we must scrutinize carefully any action which tends to declare or perpetuate the supremacy of technical law-equity distinctions over the accomplishment of substantial justice.

Another ground of the demurrer, that the plaintiff did not set forth a cause of suit within the jurisdiction of equity, seems to amount merely to a less specific statement of the ground accepted by the trial judge: that the facts pleaded did not set forth a cause of suit under c. 93A. We therefore turn to a consideration of what is necessary to establish such a claim. What is said in this regard is, except where indicated otherwise, generally applicable to practice under the new rules, which require that a complaint set forth "(1) a short and plain statement of the claim showing that the pleader is entitled to relief, and (2) a demand for judgment for the relief to which he deems himself entitled." Rule 8(a) of the Mass.R.Civ.P. — Mass. —.

[10–13] The first and third paragraphs of § 9 indicate the matters which must be alleged if a c. 93A claim is to be maintained. The § 9 private remedy is available only to a consumer, that is, a "person who purchases or leases goods, services or property, real or personal, primarily for personal, family or household purposes." We believe two pleading requirements are indicated here. First, there must be alleged an included transaction, i. e., a purchase or lease of goods, services, or real or personal property. Second, the included transaction must have been undertaken primarily for personal, family, or household purposes. It appears from the plaintiff's bill that the first of these requirements has been clearly met, but the second has not. This second element, however, could be found at least inferentially present in the allegation that § 9 of c. 93A had been violated. That is to say, because the section protects only consumers, one who asserts rights under the section must be claiming to be a consumer. A similar inference could be drawn from the reference in the bill to G.L. c. 106, § 2–316A, pertaining to the exclusion or modification of warranties, since that section is also expressly

---

16. It is interesting to note that neither §§ 9(2) and 11 (3d par.) nor Rule 23 of the Mass.R.Civ.P. — Mass —, contains all the procedural strictures which have limited the practicality of class actions in the Federal Courts. See Eisen v. Carlisle & Jacquelin, 417 U.S. 156, 94 S.Ct. 2140, 40 L.Ed.2d 732 (1974). Rule 23(d) of the Mass. R.Civ.P. — Mass. —, seems to permit the flexibility in notification of class members which, before the *Eisen* case was decided, many commentators had urged be allowed under the Federal rule. See, for example, note, 8 Suffolk U.L.Rev. 85 (1973).

limited in applicability to consumer transactions. Such inferences would not satisfy the former requirement of G.L. c. 231, § 7, Second (amended by St.1973, c. 1114, § 157, to apply only to District Courts), that a pleading "state concisely and with substantial certainty the substantive facts necessary to constitute the cause of action." See Becker v. Calnan, 313 Mass. 625, 630, 48 N.E.2d 668 (1943); Brighams Cafe Inc. v. Price Bros. Co., 334 Mass. 708, 137 N.E.2d 923 (1956). Although under the new rules reliance on inferences or conclusory statements may not necessarily render a pleading defective, the pleader may be well advised to avoid undue reliance on inferences which can only invite a motion to dismiss for failure to state a claim on which relief can be granted. Rule 12(b)(6) of the Mass.R.Civ.P. — Mass. —. See Conley v. Gibson, 355 U.S. 41, 45-48, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957).

[14] Perhaps most important of all, § 9(1) requires that the plaintiff allege and prove that the defendant used or employed "an unfair or deceptive act or practice declared unlawful by section two or by any rule or regulation issued under paragraph (c) of said section two." There can be no sound argument that this requirement was not met. As we stated at the beginning of this opinion, the plaintiff alleged that the defendant failed to fulfil promises made as part of the sale transaction to repair specified parts of the automobile and to align the front end, and refused to fulfil a promise, relied on by the plaintiff in making his purchase, to repair all other defects in the automobile subsequent to the expiration of the thirty-day warranty provided in the car order form. Section VII(B) of the rules and regulations promulgated by the Attorney General pursuant to c. 93A, § 2(c), provides in pertinent part: "It shall be an unfair and deceptive act or practice to fail to perform or fulfill any promises or obligations arising under a warranty." The definitions of warranty in these rules and regulations include the following: "An express warranty . . . or guarantee includes any affirmation of fact or promise made by the seller to the buyer which relates to the goods and becomes part of the basis of the bargain."[17] It is clear that the plaintiff has alleged a failure to fulfil warranty obligations as thus defined in the above quoted rule and that such failure gives rise to a § 9 claim for relief.

[15] Furthermore, the plaintiff's bill asserted, albeit with something less than clarity, that the defendant knew or should have known that the engine was defective at the time of sale and did not disclose this fact to the plaintiff. Section IV(A) of the rules and regulations of the Attorney General provides: "No claim or representation shall be made by any means concerning a product which directly, or by implication, or by failure to adequately disclose additional relevant information, has the capacity or tendency or effect of deceiving buyers . . . in any material respect. This prohibition includes, but is not limited to, representations or claims relating to the construction, durability, reliability, manner or time of performance, safety, strength, condition, or life expectancy of such product, or financing relating to such product, or the utility of such product or any part thereof, or the ease with which such product may be operated, repaired, or maintained or the benefit to be derived from the use thereof." A failure to disclose a defect of the nature alleged by the plaintiff is unlawful under this standard, and is actionable under § 9.[18]

---

17. Since the question has not been raised, nothing we say in this opinion should be construed as a determination of the validity of any regulation promulgated by the Attorney General under G.L. c. 93A, § 2(c).

18. It is unnecessary to decide now whether the result we have reached would also have been reached under FTC and Federal Court interpretations of the Federal act. We do not suggest that it could not. See Federal Trade Commn. v. Standard Educ. Soc., 302 U.S. 112, 116, 58 S.Ct. 113, 82 L.Ed. 141 (1937); Goodman v. Federal Trade Commn., 244 F.2d 584, 602-603 (9th Cir. 1957); National Trade Publications Serv. Inc. v. Federal Trade

[16–18] The absence from the foregoing discussion of any mention of the common law action for fraud and deceit is entirely intentional. The specific elements of that cause of action include proof that "the defendant made a false representation of a material fact with knowledge of its falsity for the purpose of inducing the plaintiff to act thereon, and that the plaintiff relied upon the representation as true and acted upon it to his damage." Barrett Associates, Inc. v. Aronson, 346 Mass. 150, 152, 190 N.E.2d 867 (1963), quoting from Kilroy v. Barron, 326 Mass. 464, 465, 95 N.E. 2d 190, 191 (1950). As numerous FTC cases have made clear, the definition of an actionable "unfair or deceptive act or practice" goes far beyond the scope of the common law action for fraud and deceit. To cite only a few distinctions, in the statutory action proof of actual reliance by the plaintiff on a representation is not required, United States Retail Credit Assn. Inc. v. Federal Trade Commn., 300 F.2d 212, 221 (4th Cir. 1962), and it is not necessary to establish that the defendant knew that the representation was false, Montgomery Ward & Co., v. Federal Trade Commn., 379 F.2d 666, 670 (7th Cir. 1967). The § 9 claim for relief is the creation of that statute. It is, therefore, sui generis. It is neither wholly tortious nor wholly contractual in nature, and is not subject to the traditional limitations of preëxisting causes of action such as tort for fraud and deceit.

[19] In some respects, however, this new statutory claim for relief does have special elements which must be alleged. One of these elements is set forth in paragraph (3) of § 9. At least thirty days before commencing suit, the plaintiff, with an exception not applicable to this case, must send a demand letter to the prospective defendant.[19] This letter must identify the claimant and describe, reasonably, the unfair or deceptive act or practice and the injury caused thereby. The plaintiff in the instant case, by alleging that he sent such a demand letter, satisfied this prerequisite to suit.

[20] The demand letter serves a dual function. The first of these functions is to encourage negotiation and settlement by notifying prospective defendants of claims arising from allegedly unlawful conduct. This gives the addressee an opportunity to review the facts and the law involved to see if the requested relief should be granted or denied. See Rice, New Private Remedies, at 318. The second function of the letter is to operate as a control on the amount of damages which the complainant can ultimately recover if he proves his case. If the addressee makes a reasonable tender of settlement which is rejected by the complainant, the damages recoverable are limited to the amount of the tender. If the addressee either fails to make a tender of settlement, or makes an unreasonable tender in relation to the injury suffered, a finding for the plaintiff will lead to a recovery in the amount of actual damages or of $25, whichever is greater. This amount is to be doubled or trebled if the court finds that the addressee's failure to grant relief on demand was made in bad faith with knowledge or reason to know that the act or practice complained of violated § 2. These are matters to be left to allegations and proof at trial.[20]

[21] The interlocutory decree sustaining the demurrer was erroneous at least as

---

Commn., 300 F.2d 790, 792 (8th Cir. 1962); Federal Trade Commn. v. Sterling Drug, Inc., 317 F.2d 669, 674 (2d Cir. 1963).

19. If the addressee does not maintain a place of business or keep assets within the Commonwealth, the complainant is not required to make a demand prior to commencing suit. G.L. c. 93A, § 9(3).

20. Where it appears that alleged acts or practices are clearly declared unlawful by the Attorney General's rules and regulations, we believe that there has been an effective allegation that the defendant had at least "reason to know" that those acts or practices violated § 2. Rice, New Private Remedies, at 319. 1969 Ann.Surv. of Mass.Law, § 8.5.

to the request for rescission based on the plaintiff's alleged minority. Since a demurrer cannot be upheld where the plaintiff's bill sets out any cause of suit, Pirrone v. Boston, — Mass. —, —,[c] 305 N.E.2d 96 (1973), the final decree dismissing the bill must be reversed. Because of the unsettled nature of the law concerning private actions under c. 93A prior to this case, moreover, we believe the plaintiff should be allowed amendment on remand as to all claims for relief. See Nissenberg v. Felleman, 339 Mass. 717, 726, 162 N.E.2d 304 (1959). The decree is reversed and the case is remanded to the Superior Court where the plaintiff may, on request made within sixty days from rescript, be permitted to amend in conformity with this opinion and with the new Rules of Civil Procedure.[21] The plaintiff is to have costs of appeal.

So ordered.



DALY DRY WALL, INC.

v.

BOARD OF APPEALS OF EASTON et al.

Appeals Court of Massachusetts, Bristol.

Argued Jan. 21, 1975.

Decided Feb. 5, 1975.

Appeal was taken from decision of the Superior Court, Bristol County, in connection with application for building permits. The Appeals Court held that when changes made by planning and zoning board in proposal which had originally been aired at

---

c. Mass.Adv.Sh. (1973) 1565, 1567.

21. 1969 Ann.Surv. of Mass.Law, 157, 167, Appendix II, contains "Sample Pleadings Un-

duly advertised public hearing held by that board did not change substantial character of original proposal, a second public hearing was not required before the changed proposal could be adopted by town meeting and that amendments of bylaw adopted by town meeting applied to certain lots.

Decree accordingly.

1. Zoning ⟶359

Where changes made by planning and zoning board in proposal which had originally been aired at duly advertised public meeting held by that board did not change the substantial character of original proposal, a second public hearing was not required before the changed proposal could be adopted by town meeting. M.G.L.A. c. 40 § 32; c. 40A §§ 6, 7A.

2. Zoning ⟶376

Amendments of bylaw adopted by town meeting and taking effect prior to filing of application for building permit applied to lots notwithstanding statute to effect that, when plan not subject to control law has been submitted to board and written notice of submission given to city or town clerk, use of land shall be governed by applicable provisions of bylaw in effect at time of submission of plan. M.G.L.A. c. 40A § 7A.

---

Henry N. Frenette, Jr., Brockton, for plaintiff.

Martyn H. Lincoln, Town Counsel, North Easton, for the Bd. of Appeals of Easton and another.

Before HALE, C. J., and GRANT and ARMSTRONG, JJ.

RESCRIPT.

[1, 2] 1. The changes made by the planning and zoning board on or about

---

der Chapter 93A, Section 9." If adjusted for the requirements of the new rules, this sample could provide a useful guideline for amendment.