**80** Mass.        459 NORTH EASTERN REPORTER, 2d SERIES

390 Mass. 604

Lewis H. SPENCE, receiver, et al.[1]

v.

BOSTON EDISON COMPANY et al.[2]

Supreme Judicial Court of Massachusetts, Suffolk.

Argued Sept. 12, 1983.

Decided Dec. 15, 1983.

Municipal housing authority brought action against utility company and Department of Public Utilities, challenging charges for electricity and steam on constitutional, statutory, and contractual grounds. The Superior Court, Suffolk County, Garrity, J., granted both defendants' motions to dismiss the constitutional claims, and denied utility company's motion to dismiss remaining claims. Upon interlocutory appeal by utility company of denial of motion to dismiss remaining claims, and report by Superior Court to Appeals Court of decision dismissing constitutional claim, appeal and report were consolidated in Appeals Court, and direct appellate review was granted. The Supreme Judicial Court, Lynch, J., held that: (1) housing authority could not bring constitutional challenge to rate promulgated by state agency; (2) housing authority's contractual claim was required to be brought before Department of Public Utilities, not Superior Court; and (3) housing authority's claim that charges for steam violated unfair businesses practices statute stated claim upon which relief could be granted.

Affirmed in part, reversed in part, and remanded with directions.

1. Civil Rights ⚖︎13.6

Municipal housing authority, which was a governmental entity, could not challenge utility rate-setting procedure under control of Department of Public Utilities on federal and state constitutional due process and equal protection grounds, and therefore could not assert a cause of action under federal and state civil rights statutes. M.G.L.A. c. 12, § 11I; 42 U.S.C.A. § 1983; U.S.C.A. Const. Amends. 5, 14; M.G.L.A. Const. Pt. 1, Arts. 1, 12; Amend. 106.

2. Civil Rights ⚖︎13.6

Municipal housing authority, which was a governmental entity, was not a "person" for the purpose of challenging action by state agency under federal or state civil rights statute. M.G.L.A. c. 12, § 11I; 42 U.S.C.A. § 1983.

   See publication Words and Phrases for other judicial constructions and definitions.

3. Civil Rights ⚖︎13.6

One purpose of federal civil rights statute is to prohibit public, governmental action from invading the private constitutional rights of individuals or entities such as corporations. 42 U.S.C.A. § 1983.

4. Civil Rights ⚖︎13.7

A municipality may be a "person" within meaning of federal civil rights statute for purposes of liability. 42 U.S.C.A. § 1983.

5. Constitutional Law ⚖︎42.3(3)

State agencies, which are creation of state, may not challenge the constitutionality of state statutes.

6. Constitutional Law ⚖︎42.3(3)

State agency may not challenge constitutionality of acts of another of the state's agencies.

7. Electricity ⚖︎11.5(1)

Claim by municipal housing authority that utility company violated state statute by unfairly setting electricity rate that applied only to the housing authority would have to be brought before Department of Public Utilities, not before superior court. M.G.L.A. c. 93A, § 11.

---

1. A group of tenants, the plaintiff class in the ongoing action of *Perez v. Boston Hous. Auth.,* was permitted to intervene.

2. Department of Public Utilities.

**8. Parties** ⇐47

Once a party has intervened in a case, it is for all intents and purposes an original party.

**9. Judgment** ⇐672

Fact that constitutional claims of municipal housing authority against utility company and state agency were dismissed did not preclude group of tenants who intervened in suit subsequent to oral argument before Supreme Judicial Court from pursuing same claims in superior court, even though tenants' complaint filed with motion to intervene alleged exactly the same claim as housing authority's complaint, where tenants' complaint had not been answered by defendants, and no one had challenged tenants' standing to assert the constitutional claims.

**10. Electricity** ⇐11.5(2)

Where complaint by municipal housing authority that utility company breached contract by charging authority minimum monthly fee for electricity for every apartment in complex, whether occupied or not, turned upon construction of tariff rather than of contract, housing authority could not bring claim in superior court without first making claim to Department of Public Utilities.

**11. Public Utilities** ⇐163

Interested parties can intervene in rate-making proceedings.

**12. Electricity** ⇐11.5(1)

Where utility company did not commit unfair or deceptive act or practice under state statute and where municipal housing authority's complaint concerning electric company's minimum monthly charge for every apartment in complex, whether occupied or not, was a quarrel with interpretation of rate and not with electric company's business practices, housing authority should have brought complaint before Department of Public Utilities and not before superior court. M.G.L.A. c. 93A, § 11.

**13. Appeal and Error** ⇐169

Where municipal housing authority based claim that utility company charged excessive amounts for providing steam both on state statute and common law, and where superior court found that statutory claim was one upon which relief could be granted and therefore did not reach common-law claim, Supreme Judicial Court would not address common-law claim. M.G.L.A. c. 93A, § 11.

**14. Pretrial Procedure** ⇐624

A cause may not be dismissed for failure to state a claim upon which relief could be granted unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.

**15. Pleading** ⇐48

Pleadings can be too vague to state a claim upon which relief can be granted.

**16. Pleading** ⇐48

Pleadings can state facts so specifically that it is clear from complaint that there is no way the plaintiff would be entitled to relief.

**17. Pretrial Procedure** ⇐622

For purposes of determining whether cause should be dismissed for failure of pleadings to state claim upon which relief could be granted, ordinarily, existence of unfair or deceptive acts and practices must be determined from circumstances of each case. M.G.L.A. c. 93A, § 11.

**18. Trade Regulation** ⇐864

Municipal housing authority claiming that utility company charged excessive amounts for provision of steam to housing development which had no other practical source for obtaining heat and hot water stated claim upon which relief could be granted under state statute prohibiting unfair methods of competition or unfair or deceptive acts or practices. M.G.L.A. c. 93A, § 11.

---

Richard M. Bluestein, Boston, for Lewis H. Spence, receiver.

**82** Mass.         **459 NORTH EASTERN REPORTER, 2d SERIES**

Robert S. Cummings, Boston (John J. Desmond, III, Boston, with him), for Boston Edison Co.

Thomas A. Barnico, Asst. Atty. Gen., for Dept. of Public Utilities.

Marsha Weinerman and Leslie S. Newman, Cambridge, for interveners, submitted a brief.

Before WILKINS, ABRAMS, LYNCH and O'CONNOR, JJ.

LYNCH, Justice.

This case was brought by Lewis H. Spence, receiver, on behalf of the Boston Housing Authority (BHA), against Boston Edison Company (Edison) and the Department of Public Utilities (DPU).[3] The BHA challenged the validity of Multiple Housing Rate K (Rate K), the rate promulgated by the DPU under which Edison charges the BHA for electricity, on the grounds that it was unconstitutionally discriminatory and in violation of G.L. c. 93A. In addition, the BHA alleged that minimum monthly charges for unoccupied apartments violated a contract between Edison and the BHA and G.L. c. 93A, § 11. It also alleged that Edison had grossly overcharged the BHA for the purchase of steam, in violation of G.L. c. 93A, § 11, and the common law. Motions to dismiss were filed both by Edison and the DPU.[4] A judge of the Superior Court granted both defendants' motions to dismiss the BHA's first claim and denied Edison's motion to dismiss the second and third claims. Edison was permitted to pursue an interlocutory appeal from the Superior Court's denial of its motion to dismiss claims two and three, and the Superior Court reported to the Appeals Court its decision allowing Edison's and the DPU's motions to dismiss the BHA's discrimination claim. The appeal and reports were consolidated in the Appeals Court, and the case is here on direct appellate review. We affirm both the Superior Court's dismissal of the discrimination claim and its decision on the third claim, that of the steam overcharge. We reverse its denial of Edison's motion to dismiss on the "contract" claim, and remand the case to the Superior Court for further proceedings not inconsistent with this opinion.

The BHA owns and operates approximately 18,643 apartments in sixty-seven housing projects for families and elderly persons of low income living in Boston. G.L. c. 121B, § 26. Edison supplies electrical power to the BHA at rates which are approved by the DPU. G.L. c. 164, § 94. Approximately 10,000 of the apartments (occupied and unoccupied) are billed at Rate K. Rate K applies to apartments in apartment complexes having more than one free-standing building. Edison charges different rates for other types of apartments and for commercial and industrial users. There has been a Rate K in effect since 1953.[5] It provides for a monthly minimum of $2.24 for each apartment, whether or not the apartment is occupied. Many of the apartments in the BHA projects have been vacant for years, due to structural defects, unsanitary conditions, and the need for major rehabilitation. Edison has been collecting $2.24 a month for each of these uninhabitable apartments. Some of the smaller apartments have been combined to make larger ones, yet the minimum is still charged for each small one. Other apartments are vacant for a period of some months between tenancies. It is estimated that Edison has charged the BHA $393,322 for apartments that have not been using any electricity at all.

Edison also supplies steam for heat and hot water to two BHA projects. The DPU does not regulate Edison in the sale of

---

3. The DPU was named as a defendant in only the first of three causes of action stated in the complaint.

4. The DPU's motion sought dismissal of the claim that Rate K was discriminatory. Edison's motion sought dismissal of the complaint in its entirety.

5. The DPU recently approved Edison's proposal to merge Rate K with Rate C (the rate charged for apartment houses) and the new rate became effective May 14, 1982. D.P.U. 906, 46 P.U.R. 4th 431 (Mass. Dep't of Pub.Utils.1982).

SPENCE v. BOSTON EDISON CO.   Mass.  83
Cite as 459 N.E.2d 80 (Mass. 1983)

steam. The BHA generates its own steam at other developments and claims that compared to its own costs for steam production, Edison has overcharged the BHA approximately $700,000 to $1,000,000 a year.

[1, 2] 1. *Ability of BHA to raise constitutional challenge.* The issue whether the BHA may assert that its rights to due process and equal protection of the law, protected by the United States and Massachusetts Constitutions and 42 U.S.C. § 1983 (1976 & Supp. V 1981) and G.L. c. 12, § 11I, the Federal and State Civil Rights Acts, though not initially addressed by the parties, is a crucial one. The issue boils down to whether the BHA is entitled to those constitutional protections and whether it is a "person" for the purpose of bringing an action pursuant to § 1983 or G.L. c. 12, § 11I.[6]

The BHA is a "public body politic and corporate." G.L. c. 121B, § 3, inserted by St.1969, c. 751, § 1. It is a creation of the State. On the one hand, the BHA has some of the characteristics of a private corporation and is generally considered independent of the Commonwealth and the city or town within whose territory it is set up. *Costonis v. Medford Hous. Auth.*, 343 Mass. 108, 113, 176 N.E.2d 25 (1961). *Johnson-Foster Co. v. D'Amore Constr. Co.*, 314 Mass. 416, 419, 50 N.E.2d 89 (1943). On the other hand, however, it is clear that a housing authority is basically a governmental entity. G.L. c. 121B, §§ 1–44A. Analogy to a municipal corporation is appropriate. Another "body politic and corporate," the Massachusetts Port Authority, was described as "a purely public corporation for public purposes—an arm of the State—analogous to a municipal corporation." *Opinion of the Justices*, 334 Mass. 721, 735, 136 N.E.2d 223 (1956).

In 1923, the United States Supreme Court held that a "City cannot invoke the protection of the Fourteenth Amendment against the State." *Newark v. New Jersey*, 262 U.S. 192, 193, 196, 43 S.Ct. 539, 540, 67 L.Ed. 943 (1923). This principle has often been reiterated. See *Arlington Heights v. Regional Transp. Auth.*, 653 F.2d 1149 (7th Cir.1981) (city may not challenge the constitutionality of certain tax ordinances enacted by the authority); *South Lake Tahoe v. California Tahoe Regional Planning Agency*, 625 F.2d 231 (9th Cir.1980) (city may not challenge the constitutionality of regulations and land use plans adopted by the planning agency, a political subdivision of the State of California).

The constitutional provisions invoked by the BHA give rights to the *citizens* which may not be infringed by the *government.* The words used to describe those entitled to these protections are "people" (Mass. Declaration of Rights, art. 1), "individual" (Mass. Declaration of Rights, art. 10), "subject" (Mass. Declaration of Rights, art. 12), "citizens" or "persons" (U.S. Const. amend. XIV). The BHA does not have these rights.

Recognition of the basic principle that governmental entities do not enjoy the constitutional guarantees of due process and equal protection leads one to the inevitable conclusion that they cannot assert a cause

---

6. 42 U.S.C. § 1983 (1976 & Supp. V 1981) provides: "Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress. For the purposes of this section, any Act of Congress applicable exclusively to the District of Columbia shall be considered to be a statute of the District of Columbia."

General Laws c. 12, § 11I, inserted by St.1979, c. 801, § 1, provides in pertinent part: "Any person whose exercise or enjoyment of rights secured by the constitution or laws of the United States, or of rights secured by the constitution or laws of the commonwealth, has been interfered with ... may institute and prosecute ... a civil action for injunctive and other appropriate equitable relief...."

General Laws c. 12, § 11H, provides for a cause of action by the Attorney General to protect persons' rights from interference by "threats, intimidation, or coercion." This section does not create a private right of action for persons whose rights are infringed in this way.

459 N.E.2d—4

**84** Mass. **459 NORTH EASTERN REPORTER, 2d SERIES**

of action under 42 U.S.C. § 1983 or G.L. c. 12, § 11I.

[3] In *Holden v. Division of Water Pollution Control*, 6 Mass.App. 423, 426, 376 N.E.2d 1259 (1978), the court said that in order "[t]o determine whether a party is a 'person aggrieved' within the meaning of a statute [G.L. c. 21, § 46A], it is necessary to look at the purpose of the statute." It is generally understood that one purpose of § 1983 is to protect the constitutional rights of individuals or entities (such as corporations) from violation by governmental action. *Public* action may not invade *private* rights. *Monell v. Department of Social Servs. of the City of N.Y.*, 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978).

[4] After *Monell*, it is clear that a municipality may be a "person" within the meaning of § 1983 for the purposes of liability. See also *United States v. Massachusetts Bay Transp. Auth.*, 614 F.2d 27 (1st Cir.1980) (MBTA is a "person" subject to civil penalties pursuant to 33 U.S.C. § 1321 for causing oil spills into navigable waters). However, *Monell* does not raise the question whether a municipality may be a "person" for the purpose of challenging State action itself.[7] *Appling County v. Municipal Elec. Auth. of Ga.*, 621 F.2d 1301, 1308 (5th Cir.1980). As noted above, the usual answer to that question is no. *Newark v. New Jersey*, *supra*.

The BHA makes the argument that courts are likely to hold that a governmental entity is a "person" within the meaning of a particular statute when the governmental entity is engaged in a purely business or commercial transaction. In *United States v. Coumantaros*, 165 F.Supp. 695 (D.Md.1958), for example, the United States was found to be a "person" within the meaning of the nonresident attachment statute and therefore was permitted to sue the defendant for money owing on the sale of a ship. The judge stressed that "the sovereign entity involved is acting not in its sovereign capacity but rather is engaging in commercial and business transactions such as other persons, natural or artificial, are accustomed to conduct." *Id.* at 698. In *United States v. Public Serv. Comm'n*, 422 F.Supp. 676, 682 (D.Md.1976), Blair, J., concurring, stated that "[w]hen ... situated in the market place, the United States is, like other consumers of utility services, engaged in a purely business and commercial transaction.... The sovereign asserting no rights of sovereignty has become merely a consumer."

[5, 6] It is one thing to allow governmental agencies the protections of a private consumer where the parties are both acting in a private capacity and where there is absolutely no "public aspect" to the transaction. It is quite another, however, to permit an agency created by statutory authority to raise constitutional challenges to procedures developed by legislative authority. The BHA is suing Edison not because it failed to deliver electricity as promised, but because (it claims) its rates unconstitutionally discriminate against housing authorities. This is a challenge not to the business practices of the electric company, but rather to the rate-setting procedure itself, which is directly and completely under the control of the DPU, which is itself a State agency. The BHA acknowledges the public nature of this claim by joining the DPU as a defendant. Agencies, which are creations of the State, may not challenge the constitutionality of State statutes. *Newark v. New Jersey*, *supra*. Neither may they challenge the constitutionality of the acts of another of the State's agencies. See *Arlington Heights v. Regional Transp. Auth.*, *supra* at 1152–1153 (since the Regional Transportation Authority has only those powers granted by law, "any claim that an RTA Ordinance enacted pursuant to a state statute is unconstitutional necessarily includes a claim that the authorizing statute is un-

---

7. The cases that do address this issue mostly concern constitutional challenges brought by cities, towns, or counties rather than smaller governmental agencies such as the BHA. We have already noted the similarity of an agency such as a housing authority to a municipal corporation.

SPENCE v. BOSTON EDISON CO.   Mass. 85
Cite as 459 N.E.2d 80 (Mass. 1983)

constitutional"); *South Lake Tahoe v. California Tahoe Regional Planning Agency, supra* at 233 (challenging the ordinances and plans of the State planning agency is no different from challenging the State statute itself).

The constitutional claims of the BHA are therefore barred by the long-standing and far-reaching prohibition on constitutional challenges by governmental entities to acts of their creator State. We note that the BHA does not argue that it is a statutorily authorized surrogate for tenants' rights and that the interveners are actively asserting the claim of the tenants.

[7] The claim by the BHA that Edison has violated G.L. c. 93A, § 11, by unfairly setting a rate that applies only to the BHA must also fail. As we discuss more fully below, any challenge to the validity of a rate approved by the DPU must be brought before the agency, not the Superior Court. *Boston v. Edison Elec. Illuminating Co. of Boston,* 242 Mass. 305, 312–313, 136 N.E. 113 (1922). Therefore, although for a different reason, we affirm the Superior Court's dismissal of these claims.

[8, 9] 2. *The interveners.* The interveners did not participate in the briefing or oral argument of the appeal from the dismissal of the BHA's constitutional claims. Subsequent to oral argument before this court, they filed a supplementary brief arguing that they should be permitted to maintain the constitutional claims, even if the BHA cannot do so itself. No one as yet has disputed this assertion. The motions to dismiss brought by Edison and the DPU were directed at the BHA, not the interveners. The decision of the Superior Court does not mention the interveners. The complaint filed with the motion to intervene as required by Mass.R.Civ.P. 24, 365 Mass. 769 (1974), alleges exactly the same claims as the BHA's complaint, but it has not even been answered by the defendants.[8] As no one has challenged the tenants' standing to assert these constitutional claims, the motion to dismiss the BHA's claims does not mean that the tenants' claims are also dismissed. Once a party has intervened in a case, it "is for all intents and purposes, an original party." *In re Raabe, Glissman & Co.,* 71 F.Supp. 678, 680 (S.D.N.Y.1947), as quoted in *Rafferty v. Sancta Maria Hosp.,* 5 Mass.App. 624, 628, 367 N.E.2d 856 (1977). There is no obstacle to the tenants' pursuing their claims in the Superior Court. The court in *United States Steel Corp. v. Environmental Protection Agency,* 614 F.2d 843, 845 (3d Cir.1979), recognized that "there are instances when an intervenor's claim does not rise and fall with the claim of the original party," and that "[t]he weight of authority ... supports the principle that an intervenor can continue to litigate after dismissal of the party who originated the action." Therefore, since the tenants can pursue their cause of action in the court below, there is no issue involving them properly before this court.

3. *The minimum charge for "apartments."* The second cause of action asserted by the BHA concerns the minimum of $2.24 a month charged by Edison for every apartment, whether occupied or not. The BHA claims that this is a violation of a contract between it and Edison (that the explicit understanding of the contract is that the word "apartment" means occupied apartment) and also a violation of G.L. c. 93A, §§ 2 and 11. The BHA argues that, since this is a dispute over the interpretation of a term of the contract rather than a collateral attack on the reasonableness of a rate, it can bring its claim in the Superior Court, without first making a claim to the DPU. This position is incorrect.

The BHA mischaracterizes the nature of the dispute here. It is true that there are some disputes over utility bills that courts can resolve. In *B.P.W. Plastics Corp. v. Massachusetts Elec. Co.,* 5 Mass.App. 882, 368 N.E.2d 830 (1977), for example, the Superior Court was determined to have

---

8. Boston Edison was given an extension of time to answer the interveners' complaint pending a decision on the motion to dismiss.

"jurisdiction to determine whether the calculation of the bills (as opposed to the legality of the rates) is correct." *Id.* at 883, 368 N.E.2d 830. But here it is precisely the rates that are in question. "[T]he meaning of the disputed language ... cannot be determined solely from the text itself, nor even by reference to the intent of the parties. The ultimate issue is not what those words mean in some abstract sense, but rather what [the Federal Energy Regulatory Commission, the administrative agency that approved the tariff] intended them to mean." *Distrigas of Mass. Corp. v. Boston Gas Co.*, 693 F.2d 1113, 1118 (1st Cir.1982) (there was primary jurisdiction in the FERC to resolve a dispute between two gas companies over storage rates).

As in the *Distrigas* case, "there is no 'obviously' correct interpretation of this tariff." *Id.* Surely Boston Edison had a particular meaning in mind for the word "apartment" when it prepared its tariff. Whether all apartments or just occupied apartments would be assessed the minimum charge is a matter that falls within agency discretion, requiring judgment and considerations of cost allocation. More relevant than the holding in *Great N. Ry. v. Merchants Elevator Co.*, 259 U.S. 285, 42 S.Ct. 477, 66 L.Ed. 943 (1922), relied upon by the BHA (court, rather than the Interstate Commerce Commission, could determine whether a situation fit into the rule or the exception of the tariff), is that in *Texas & Pac. Ry. v. American Tie & Timber Co.*, 234 U.S. 138, 34 S.Ct. 885, 58 L.Ed. 1255 (1914). In *Texas & Pac. Ry.*, the dispute was over the interpretation of the word "lumber," specifically, whether "lumber" included railway crossties. The Supreme Court found that the question should have been answered by the Interstate Commerce Commission, not the courts. *Id.* at 146, 34 S.Ct. at 888. Discussing both *Great N. Ry.* and *Tex. & Pac. Ry.*, the Court in *United States v. Western Pac. R.R.*, 352 U.S. 59, 77 S.Ct. 161, 1 L.Ed.2d 126 (1956), said "where words in a tariff are used in a peculiar or technical sense, and where extrinsic evidence is necessary to determine their meaning or proper application, so that 'the enquiry is essentially one of fact and of discretion in technical matters,' then the issue of tariff application must first go to the Commission." *Id.* at 66, 77 S.Ct. at 166, citing *Great N. Ry., supra* 259 U.S. at 291, 42 S.Ct. at 479.

[10, 11] Since it is clear that the meaning of "apartment" depends on the construction of a tariff rather than a contract, the BHA should have brought its complaint to the DPU. There were several avenues of protest available to the BHA at the time of the overcharge. General Laws c. 164, § 93, requires the DPU to hold a public hearing upon written complaint of a mayor, selectmen or twenty customers.[9] The DPU can on its own initiative investigate a proposed rate, G.L. c. 164, § 94, and complaints can be brought by a mayor, selectman, or member of the General Court pursuant to G.L. c. 25, § 4A. Interested parties can intervene in the ratemaking proceedings. *Boston Edison Co. v. Department of Pub. Utils.*, 375 Mass. 1, 44–46, 375 N.E.2d 305 (1978). Although the BHA has intervened in proceedings in the past, it has never pursued an appeal of the promulgation of Rate K to the Supreme Judicial Court. G.L. c. 25, § 5. Perhaps the simplest way for the BHA to have secured administrative review of Rate K would have been to refuse to pay the disputed portions of its bills and challenge them by way of 220 Code Mass.Regs. §§ 25.01, 25.-02(4) (1981).[10] The BHA has been charged this minimum rate since 1953. It has had

---

9. The BHA argues that this route is practically unavailable because Rate K applies only to the BHA and the Somerville Housing Authority. The question has never been presented to the DPU, however; thus it is unclear whether the hundreds of electricity-consuming households actually represented by the BHA would satisfy the requirement of twenty customers.

10. The BHA might question the availability of this remedy, since the billing and termination procedures of 220 Code Mass.Regs. § 25.01 (1981) are designated as being for "residential customers." Whether or not the BHA would be considered a "residential customer" is a question that the DPU should at least have an opportunity to consider.

ample opportunity to challenge what it felt to be an overcharge in the bill, and in fact it could refuse to pay the disputed portions of any unpaid bills and request a DPU hearing on the question right now.

[12] Likewise, Edison has not committed an unfair or deceptive act or practice under G.L. c. 93A, § 11. Although we have found liability under that statute when the utility fraudulently misrepresented its costs and violated the accounting procedures prescribed by the DPU in setting its rates, *Lowell Gas Co. v. Attorney Gen.*, 377 Mass. 37, 385 N.E.2d 240 (1979), we have also said that "it is not wrongful for a gas company to charge its customers the rates established by an order of the department." *Id.* at 49, 385 N.E.2d 240. What the BHA is questioning is the interpretation of a rate. The BHA claims the term "apartment" means one thing, while Edison claims it means another. There is no allegation that Edison has been fraudulent or deceptive in arriving at the tariff charged under Rate K. Since the BHA's quarrel is with the interpretation of the rate itself rather than with Edison's business practices, there is no cause of action under G.L. c. 93A and the BHA should have gone to the DPU. *Sullivan v. Boston Consol. Gas Co.*, 327 Mass. 163, 97 N.E.2d 535 (1951). *Boston v. Edison Elec. Illuminating Co. of Boston*, 242 Mass. 305, 136 N.E. 113 (1922). Therefore, Edison's motion to dismiss the BHA's second claim must be granted.

[13] 4. *The steam overcharge.* Finally, the BHA has claimed that Edison has charged excessive amounts for the provision of steam to two BHA developments which have no other practical source for obtaining heat and hot water. The BHA claims that the overcharge constitutes a violation of G.L. c. 93A, § 11, and the common law doctrine that public utility charges must be "reasonable." A judge of the Superior Court found that the BHA's c. 93A claim was one upon which relief could be granted. As a result he did not reach the common law claim. We agree with the lower court, and we also do not reach the common law claim. *Nader v. Citron*, 372 Mass. 96, 105, 360 N.E.2d 870 (1977).

[14-17] The rules of pleading in Massachusetts are generous. A cause may not be dismissed for failure to state a claim upon which relief could be granted "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Id.* at 98, 360 N.E.2d 870, citing *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 101–02, 2 L.Ed.2d 80 (1957). Pleadings can be too vague to state a claim, *Whitinsville Plaza, Inc. v. Kotseas*, 378 Mass. 85, 99–101, 390 N.E.2d 243 (1979); *Frank J. Linhares Co. v. Reliance Ins. Co.*, 4 Mass.App. 617, 620–621, 357 N.E.2d 313 (1976); pleadings can state the facts so specifically that it is clear from the complaint there is no way the plaintiff would be entitled to relief, *Fabrizio v. Quincy*, 9 Mass.App. 733, 734, 404 N.E.2d 675 (1980); but ordinarily the existence of unfair or deceptive acts and practices "must be determined from the circumstances of each case." *Don Lorenz, Inc. v. Northampton Nat'l Bank*, 6 Mass.App. 933, 381 N.E.2d 1108 (1978), citing *Commonwealth v. DeCotis*, 366 Mass. 234, 242, 316 N.E.2d 748 (1974). Edison argues that the BHA's statement of facts in its complaint is sufficiently specific to demonstrate absolutely that it does not have a claim. We disagree.

[18] General Laws c. 93A, § 11, prohibits "unfair method[s] of competition or ... unfair or deceptive act[s] or practice[s]." Courts have deliberately avoided setting down a clear definition of conduct constituting a violation of G.L. c. 93A. *Whitinsville Plaza, Inc. v. Kotseas, supra* 378 Mass. at 100, 390 N.E.2d 243. We have found that overcharging can rise to the level of an "unfair practice" under G.L. c. 93A, § 9. *Commonwealth v. DeCotis, supra* 366 Mass. at 242, 243, 316 N.E.2d 748. In the right circumstances, overcharging could also be an unfair practice under § 11 of that chapter. The BHA is entitled to the opportunity to prove that the price Edison charged for steam was so high as to be prohibited by G.L. c. 93A.

**88** Mass.     **459 NORTH EASTERN REPORTER, 2d SERIES**

Edison argues that a different standard applies to transactions between two worldly wise businesses than to transactions between a business and a true consumer who is not inured to the rough and tumble of the world of commerce. *Levings v. Forbes & Wallace, Inc.*, 8 Mass.App. 498, 504, 396 N.E.2d 149 (1979). One can easily imagine cases where an act might be unfair if practiced upon a commercial innocent yet would be common practice between two people engaged in business. The BHA may therefore have to show greater "rascality" than would one of its tenants. Whether Edison's conduct was unfair is a matter of fact however, and the BHA should have a chance to prove its claim.

The order of the Superior Court dismissing the BHA's claim of unconstitutional and unfair rate discrimination is affirmed; the denial of Edison's motion to dismiss the BHA's G.L. c. 93A claim for steam overcharges is affirmed; and the denial of Edison's motion to dismiss the BHA's claim relative to the minimum apartment charges is reversed. The case is remanded to the Superior Court for further proceedings consistent with this opinion.

*So ordered.*



390 Mass. 644
Steven THERRIEN et al.[1]

v.

**LABOR RELATIONS COMMISSION et al.[2]**

Supreme Judicial Court of Massachusetts, Suffolk.

Argued Sept. 15, 1983.

Decided Dec. 22, 1983.

Teachers who had been discharged appealed from the order of the labor relations commission finding that the school committee and the education association were guilty of prohibited practices, ordering the committee to reinstate them, but denying them back pay. Appeal was taken to the Appeals Court, Suffolk County. The Supreme Judicial Court ordered direct appellate review on its own initiative. The Supreme Judicial Court, Nolan, J., held that: (1) commission did not violate public policy or abuse its discretion in denying award of back pay to teachers who had been discharged for failure to pay association fees, and (2) in paying agency fees after they were terminated and filing prohibited practice charge three months after their termination, teachers did not comply with requirements of regulation providing right to continued employment during pendency of grievance or charges.

Affirmed.

1. Schools ⚖141(5)

Issue of whether nonunion teachers who refused to pay agency service fees as required by collective bargaining agreement had absolute right to refuse to pay such fees was not properly before Supreme Judicial Court, where labor relations commission found that teachers had asserted that their dismissal violated certain procedural requirements concerning curative tenders of the fees, and at no time in course of administrative proceedings did teachers challenge proper amount of agency fee or challenge their dismissals on constitutional level.

2. Labor Relations ⚖676

Supreme Judicial Court would not disturb exercise of labor relations commission's discretion regarding decision of whether or not to award back pay unless such decision was arbitrary or capricious, abuse of discretion, or patent attempt to

---

1. Walter Wasiuk.

2. On motions to the Appeals Court pursuant to Mass.R.A.P. 15(a), 365 Mass. 859 (1974), the school committee of Leominster and the Leominster Education Association were allowed to intervene after the entry of the appeal.