reasonably have been expected to know that he would be required to serve the remainder of the 1971 sentence.

The State prison authorities offer no explanation for their delay in filing the detainer until 1986. They contend, however, that to credit Royce for time served on the sentence from which he escaped would be to reward him for his escape. We do not so view the situation. In the first place, had ⌊402Royce not escaped, he would have wrapped up his 1971 State prison sentence concurrently with the 1971 Federal sentence which he has fully served. Moreover, Royce avoided punishment for the crime of escape because the Commonwealth declined to prosecute him. The Commonwealth also had the opportunity, which it missed, to request that the new State prison sentences be served from and after service of the unexpired portion of the 1971 State prison sentence. When sentences are not expressly ordered to be served consecutively, they are ordinarily regarded as concurrent. See *Henschel v. Commissioner of Correction*, 368 Mass. 130, 133, 330 N.E.2d 480 (1975); ABA Standards, Sentencing Alternatives & Procedures § 18–4.5(b)(iv) (Tent.Draft 1979). Believing that "fairness and a proper sense of justice," *Chalifoux v. Commissioner of Correction*, 375 Mass. at 427, 377 N.E.2d 923, calls for application of that principle in the circumstances of this case, we view what remained of the 1971 sentence to have merged in the new concurrent sentences Royce is presently serving.[3]

Royce, thus, is entitled to credit towards service of the 1971 sentence from July 20, 1982. Because it does not appear that the merged concurrent sentences have as yet

been fully served, the order appealed from is amended by striking all the words following "time served" and substituting the ⌊403words "on the October 28, 1971, twelve-year sentence from July 20, 1982." Otherwise, the judgment is affirmed.

*So ordered.*



28 Mass.App.Ct. 404

⌊404U.S. FUNDING, INC. OF AMERICA

v.

BANK OF BOSTON CORPORATION.

No. 89–P–973.

Appeals Court of Massachusetts, Norfolk.

Argued Jan. 24, 1990.

Decided March 21, 1990.

Suit was brought against bank for breach of agreement to provide borrower with line of credit and unfair and deceptive trade practices. Borrower's amended complaint was striken by the Superior Court Department, Norfolk County, Roger J. Donahue, J., on ground that it was not advanced in good faith, and borrower appealed. The Appeals Court, Armstrong, J., held that: (1) complaint by borrower alleging that bank breached its agreement to provide borrower with line of credit of $250,000 stated cause of actions for breach

---

3. We do not view *Kinney, petitioner*, 5 Mass. App.Ct. at 459–460, 363 N.E.2d 1337, as requiring a different result. In that case, after an escape from State prison, Kinney was returned to the custody of the county sheriff on a new house of correction sentence. This court held that Kinney was not "serving" his original State prison sentence while he was serving his new sentence in the house of correction. In this case, on the other hand, the 1971 sentence and the new ones were all to State prison. The court in *Kinney* also cited two cases involving parole violators in which approval was given to the practice, now codified in G.L. c. 127, § 149,

of having the parolee serve his entire new sentence before execution of the parole violation warrant activating the remainder of the original sentence. See *Zerbst v. Kidwell*, 304 U.S. 359, 58 S.Ct. 872, 82 L.Ed. 1399 (1938); *Harding v. State Bd. of Parole*, 307 Mass. 217, 29 N.E.2d 756 (1940). However, the situation of an escapee, for present purposes, is different from that of a parolee who commits a new offense while on parole. An escape offers the opportunity not only for a from and after sentence for an offense committed while on escape, but also for separate punishment for the crime of escape.

U.S. FUNDING, INC. v. BANK OF BOSTON          Mass. **923**
Cite as 551 N.E.2d 922 (Mass.App.Ct. 1990)

of contract and under unfair and deceptive trade practices provisions, even though complaint was not particularly detailed; (2) even if borrower named wrong bank in pleading, appropriate remedy would normally be substitution of correct party defendant rather than dismissal of action; and (3) striking complaint under Massachusetts Rule 11 on ground that complaint was not advanced in good faith, before filing of any answer or other responsive pleading and in absence of affidavits, depositions, answers to interrogatories, or testimony, was inappropriate use of Rule 11.

Reversed.

**1. Contracts ⚖️332(2)**
   **Trade Regulation ⚖️864**
   Complaint by borrower alleging that bank breached its agreement to provide borrower with line of credit of $250,000 stated cause of actions for breach of contract and under unfair and deceptive trade practices provisions, even though complaint was not particularly detailed. M.G.L.A. c. 93A, § 1 et seq.

**2. Damages ⚖️11**
   Damage awards for breach of contract to extend credit are not limited to nominal damages; actual damages that were foreseeable can be awarded if substitute financing is unavailable.

**3. Courts ⚖️122**
   Failure of borrower bringing suit for breach of contract to lend money to substantiate some amount of damages did not preclude superior court from having jurisdiction over suit, even though action might be remanded to district court. M.G.L.A. c. 212, § 4; c. 218, § 19; c. 231, § 102C.

**4. Trade Regulation ⚖️861, 864**
   Unfair or deceptive acts or practices made actionable by Massachusetts statutes go far beyond scope of common-law action for fraud and deceit, and are not necessarily subject to Massachusetts rule requiring specificity of pleading of fraud. M.G.L.A. c. 93A, § 1 et seq.; Rules Civ.Proc., Rule 9(b), 43A M.G.L.A.

**5. Pretrial Procedure ⚖️643, 652**
   Reference in complaint's cover sheet to seeking compensatory damages for injury to reputation of plaintiff's business, even if unachievable under settled law, was not basis for dismissal of complaint, which made no reference to such damages, asserting claims of breach of contract to lend and unfair and deceptive practices. M.G.L.A. c. 93A, § 1 et seq.

**6. Pretrial Procedure ⚖️559**
   Even if plaintiff bringing suit for breach of agreement to extend line of credit and deceptive and unfair practices named wrong bank in pleading, appropriate remedy would normally be substitution of correct party defendant rather than dismissal of action, particularly if it was shown that banks were related corporations and that there had been no prejudice. M.G.L.A. c. 93A, § 1 et seq.

**7. Pleading ⚖️360**
   Striking complaint for breach of contract to extend line of credit and unfair and deceptive practices under Massachusetts Rule 11 on ground that complaint was not advanced in good faith, before filing of any answer or other responsive pleading and in absence of affidavits, depositions, answers to interrogatories, or testimony, was inappropriate use of Rule 11. M.G.L.A. c. 93A, § 1 et seq.; Rules Civ.Proc., Rule 11, 43A M.G.L.A.

---

Joseph Wine, Braintree, for plaintiff.

John J. Kuzinevich, Upton, for defendant.

Before ARMSTRONG, CUTTER and KASS, JJ.

ARMSTRONG, Justice.

The plaintiff appeals from a judgment dismissing its amended complaint with prejudice under Mass.R.Civ.P. 11(a), 365 Mass. 753 (1974). The relevant history is as follows.

The original complaint alleged that the defendant agreed to provide the plaintiff with a line of credit in the amount of $250,-000 and failed to extend the credit in

breach of the conditions of the agreement. As a result, the complaint alleged, the plaintiff "suffered great financial loss, was put to great ⌊405expense and sustained a diminution in the value of its business"; it sought $1,000,000 in compensatory damages and three times that amount, plus attorney's fees, for a bad-faith violation of G.L. c. 93A. The defendant moved to strike the complaint for two reasons: first, violation of G.L. c. 231, § 13B, prohibiting the inclusion of an ad damnum or specific monetary amount unless damages are liquidated or are ascertainable by calculation and supported by an affidavit setting out the method employed in the calculation; and, second, violation of Mass.R.Civ.P. 11(a),[1] because "[i]t is obvious that the [p]laintiff has merely selected a number out of the air, without good grounds for support, for the purposes of annoyance, intimidation and harassment.... Plaintiff's unverified and unsupported claim is not advanced in good faith...."

The motion to strike was allowed without a statement of the ground, but the plaintiff was given leave to file a motion to amend the complaint. In response, the plaintiff filed such a motion, together with an amended complaint, different from the original complaint only in that it did not specify the amount of damages sought. The defendant filed an opposition and a motion to strike. The ground was that the complaint still violated rule 11. Five transgressions were listed: (1) The commitment letter was signed not by the defendant but by the First National Bank of Boston, (2) count 2, for breach of contract, is redundant of count 1; (3) count 3, seeking damages for fraud and violations of c. 93A, fails to identify the misrepresentation with

the specificity required by Mass.R.Civ.P. 9(b), 365 Mass. 751 (1974); (4) the complaint, by failing to substantiate some amount as damages, fails to show that the Superior Court had jurisdiction as opposed to the District Court under G.L. c. 231, § 102C; and ⌊406(5) the Civil Action Cover Sheet[2] was filed in bad faith, because it states that the plaintiff was "harmed in reputation" but nowhere is a libel or slander count pleaded. Pervading the motion were two other objections: first, that the complaint is substantially unchanged from the one previously struck, except for deletion of the ad damnum; second, that the $1,000,000 claim for damages (still appearing in the "Civil Action Cover Sheet") is "absurd on its face" for breach of a commitment to lend $250,000 "since it assumes that the U.S. Funding had a four hundred percent rate of return on its assets after carrying costs, expenses, and salaries.... Rather, on information and belief, [p]laintiff had a return on assets of 1.2 percent; below the industry average of 6–8%."

The motion to strike concluded as follows: "The only inference after reviewing the [c]omplaint and its patent deficiencies is that the suit was filed for the purpose of harassing the [d]efendant and attempting to recover some nuisance value from the transaction. It is clearly improper and not advanced in good faith. It should be stricken and sanctions imposed."

[1] It was error to strike the amended complaint. The complaint is a common garden variety pleading, stating claims for breach of contract and G.L. c. 93A. Shorn of its ad damnum, it is an acceptable complaint, not particularly detailed, but well within the boundaries laid down by *Nader v. Citron*, 372 Mass. 96, 98, 104–105, 360

---

1. In relevant part the rule reads: "The signature of an attorney to a pleading constitutes a certificate by him that he has read the pleading; that to the best of his knowledge, information, and belief there is a good ground to support it; and that it is not interposed for delay. If a pleading is not signed, or is signed with intent to defeat the purpose of this Rule, it may be stricken and the action may proceed as though the pleading had not been filed. For a wilful violation of this rule an attorney may be subjected to appropriate disciplinary action."

2. Superior Court Standing Order No. 1–83 (1983) requires one filing a civil complaint to fill out a Civil Action Cover Sheet that describes the type of action and damages sought "to facilitate court case data collection and the transfer procedure in the Superior Court Department...." The plaintiff, in completing the form, is required to set forth a "statement specifying in full and itemized detail the facts upon which the plaintiff then relies as constituting money damages." Superior Court Rule 29(2).

U.S. FUNDING, INC. v. BANK OF BOSTON          Mass. **925**
Cite as 551 N.E.2d 922 (Mass.App.Ct. 1990)

N.E.2d 870 (1977). It does not show "beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Id.* at 98, 360 N.E.2d 870, quoting from *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 101–102, 2 L.Ed.2d 80 (1957). See also *Charbonnier v. Amico*, 367 Mass. 146, 152–153, 324 N.E.2d 895 (1975); *Whitinsville Plaza, Inc. v. Kotseas*, 378 Mass. ⌊407⌋85, 89, 390 N.E.2d 243 (1979); *Wrightson v. Spaulding*, 20 Mass.App.Ct. 70, 71–73, 478 N.E.2d 141 (1985).

[2-6] The specific points urged by the defendant in its motion to strike border on the frivolous. (a) There is no rule of law that limits damage awards for breach of a contract to lend money to nominal damages. Actual damages that were foreseeable can be awarded if substitute financing is unavailable. See *Harsha v. State Sav. Bank*, 346 N.W.2d 791, 796–797 (Iowa 1984); *W–V Enterprises, Inc. v. Federal Sav. & Loan Ins. Corp.*, 234 Kan. 354, 367–368, 373, 673 P.2d 1112 (1983); *St. Paul at Chase Corp. v. Manufacturers Life Ins. Co.*, 262 Md. 192, 240–243, 278 A.2d 12, cert. denied, 404 U.S. 857, 92 S.Ct. 104, 30 L.Ed.2d 98 (1971). Compare *First Pa. Mortgage Trust v. Dorchester Sav. Bank*, 395 Mass. 614, 627, 481 N.E.2d 1132 (1985). See generally Restatement (Second) of Contracts § 343 comment e & illustration 15 (1981); 5 Corbin, Contracts § 1078, at 447–448 (1964); 11 Williston, Contracts § 1411, at 614 (3d ed. 1968); Annotation, Measure and Elements of Damages for Breach of Contract to Lend Money, 4 A.L.R.4th 682, 698–703 (1981). (b) The Superior Court had jurisdiction even though the action might be remanded to the District Court under G.L. c. 231, § 102C. See G.L. c. 212, § 4 (general jurisdiction of Superior Court); G.L. c. 218, § 19 (concurrent jurisdiction of District Courts in "all civil action[s] in which money damages are sought"). (c) While Mass.R.Civ.P. 9(b) requires specification of circumstances in "averments of fraud, mistake, duress or undue influence," the concept of "unfair or deceptive acts or practices" made actionable by G.L. c. 93A "goes far beyond the scope of the common law action for fraud and deceit," *Slaney v. Westwood Auto, Inc.*, 366 Mass. 688, 703, 322 N.E.2d 768 (1975), and does not necessarily require similar pleading specificity. (d) The reference in the cover sheet to seeking compensatory damages for injury to the reputation of the plaintiff's business may be unachievable under settled law but it is not a basis for dismissal of the complaint (which makes no reference to such damages). (e) If there is any ground for the defendant's motion that has possible merit, it is that the plaintiff's dealings were with First National Bank ⌊408⌋of Boston rather than with the named defendant (Bank of Boston Corporation). As to this, however, the record supplies no factual basis for a conclusion that the plaintiff did not contract with Bank of Boston Corp. If it did, the appropriate remedy would normally be substitution of the correct party defendant rather than dismissal of the action—particularly if it is shown that the corporations are related and that there has been no prejudice caused to the correct defendant by the delay.

[7] More generally, we think that the judgment in this case represents an inappropriate use of rule 11. It is true that rule 11 is "a useful tool to restrain frivolous and abusive litigation," *Anderson v. Cryovac, Inc.*, 96 F.R.D. 431, 431 (D.Mass. 1983), and that, unlike Federal rule 11,[3] Massachusetts rule 11 retains the provision for striking pleadings that are signed with intent to defeat the purpose of the rule (such as an intent to harass or to cause needless delay or expense). Dismissal was ordered in this case, however, before the

3. See *New England Allbank for Sav. v. Rouleau*, 28 Mass.App.Ct. 135, 141 n. 5, 547 N.E.2d 61 (1989). The history and reasons for the 1983 amendment to the Federal rule 11 are discussed in 2A Moore, Federal Practice § 11.01[4] (2d ed.1987), where it is said, at 11-5 (citations omitted): "The provision in the original rule for striking pleadings and motions as sham and false has been deleted. The passage has rarely been utilized, and decisions thereunder have tended to confuse the issue of attorney honesty with the merits of the action. Motions under this provision generally present issues better dealt with under Rules 8, 12 or 56."

**926** Mass.    **551 NORTH EASTERN REPORTER, 2d SERIES**

filing of any answer or other responsive pleading and in the absence of affidavits, depositions, answers to interrogatories, or testimony. The result is a record devoid of a factual basis for concluding that the plaintiff's claim is either frivolous or improperly motivated.

"All fact issues raised by pleadings or other papers should be resolved by the usual litigation processes before questions of honesty are addressed, and no investigation or discovery directed only toward honesty should be allowed until such issues have been resolved, by trial or otherwise, in the moving party's favor." Risinger, Honesty in Pleading and Its Enforcement: Some "Striking" Problems with Federal Rule of ₄₀₉Civil Procedure 11, 61 Minn.L. Rev. 1, 61–62 (1976). "Rule 11 should not be used to raise issues of legal sufficiency that more properly can be disposed of by a motion for a more definite statement or by a motion for summary judgment." 5 Wright & Miller, Federal Practice & Procedure § 1334 (1969).

The cases relied on by the defendant do not support the use of rule 11 to jump the gun. *Rhinehart v. Stauffer,* 638 F.2d 1169 (9th Cir.1980), permitted dismissal apparently at the pretrial conference stage of the litigation after it appeared that the plaintiff's attorney had signed a complaint without sufficient knowledge of the matter to be able to discuss it with opposing counsel and without having even discussed the case with, or received information about the case from, his client. In *Murray v. Dominick Corp. of Canada, Ltd.,* 117 F.R.D. 512 (S.D.N.Y.1987), the dismissal came during a trial that showed that certain pretrial submissions of the plaintiff contained material statements of fact that the judge found to have been knowingly false. In *Anderson v. Cryovac, Ltd.,* 96 F.R.D. at 432, the complaint was not dismissed.

A defendant who wishes to avoid the expense of a trial to defend against a frivolous, improperly motivated claim, is not without recourse. "If a complaint lacks merit, the defendant should take the appropriate steps to cause the matter to be brought within the purview of rule 56(b),

365 Mass. 824 (1974)." *Wrightson v. Spaulding,* 20 Mass.App.Ct. at 72, 478 N.E.2d 141. Having first established that the complaint lacks merit, the defendant may then proceed in appropriate cases to avail himself of the remedies afforded by rule 11 and by G.L. c. 231, § 6F, which may include costs, damages, and attorneys' fees. See *New England Allbank for Sav. v. Rouleau,* 28 Mass.App.Ct. 135, 141 n. 5, 547 N.E.2d 61 (1989).

*Judgment reversed.*



28 Mass.App.Ct. 417

₄₁₇COMMONWEALTH

v.

Edward M. WHITE, Jr.

No. 89-P-508.

Appeals Court of Massachusetts, Middlesex.

Argued Feb. 15, 1990.

Decided March 23, 1990.

Further Appellate Review Granted May 3, 1990.

Following his conviction for rape, defendant filed motion for new trial. The Superior Court, Middlesex County, Paul A. Chernoff, J., denied relief and defendant appealed. The Appeals Court, Fine, J., held that defendant did not receive effective assistance of counsel.

Judgment reversed and verdict set aside.

**1. Criminal Law ⊕641.13(1)**

In evaluating claim of ineffective assistance of counsel, court considers first whether the conduct of trial counsel fell measurably below that which might be expected from an ordinary fallible lawyer, and then whether prejudice resulted from any shortcomings of counsel.