**WHITINSVILLE PLAZA, INC.**

v.

**Charles H. KOTSEAS et al.[1] (and a companion case[2]).**

Supreme Judicial Court of Massachusetts, Worcester.

Argued Oct. 5, 1978.

Decided May 15, 1979.

Purchaser of land sued shopping center developer and lessee of land retained by developer alleging violations of anticompetitive deed restrictions and requested declaratory, injunctive and monetary relief. The Superior Court, Beaudreau, J., granted defendants' motion to dismiss and the Supreme Judicial Court granted request for direct appellate review. The Supreme Judicial Court, Quirico, J., held that: (1) reasonable covenants against competition may be considered to run with land when they serve a purpose of facilitating orderly and harmonious development for commercial use; (2) purchaser stated claim for relief against developer and its lessee for breach of covenant that developer would not use its retained land in the center in competition with discount store contemplated by purchaser, on theory that the covenant ran with the land, and (3) merely by bringing suit to enforce restrictions on commercial use of land, purchaser did not violate antitrust laws.

Judgments affirmed in part and vacated in part and cases remanded.

**1. Pretrial Procedure** ⚷686

In ruling on motion to dismiss, allegations of complaint and annexed exhibits, as well as such inferences that may be drawn therefrom in plaintiff's favor, are to be taken as true. Rules of Civil Procedure, rule 12(b).

**2. Covenants** ⚷114(1)

Grantee of land in shopping center stated claim for relief against developer and its lessee for breach of covenant that developer would not use its retained land in the center in competition with discount store contemplated by grantee on theory that the covenant ran with the land.

**3. Covenants** ⚷69(3)

Reasonable covenants against competition may be considered to run with land when they serve a purpose of facilitating orderly and harmonious development for commercial use; overruling, to extent inconsistent, *Norcross v. James,* 140 Mass. 188, 2 N.E. 946; *Shade v. M. O'Keefe, Inc.,* 260 Mass. 180, 156 N.E. 867; *Shell Oil Co. v. Henry Ouellette & Sons,* 352 Mass. 725, 227 N.E.2d 509.

**4. Courts** ⚷100(1)

Rule that reasonable covenants against competition may be considered to run with the land when they serve purpose of facilitating orderly and harmonious development for commercial use applies to all such covenants executed after June 13, 1967, the date of the decision in *Shell Oil Co. v. Henry Ouellette & Sons.*

**5. Appeal and Error** ⚷854(5)

All issues raised by defendants' arguments remained open on plaintiff's appeal, in case in which Supreme Judicial Court could not tell from the record on which of several grounds stated in motions the judge relied in ordering actions dismissed.

**6. Courts** ⚷95(1)

**Trade Regulation** ⚷819

Consent decrees entered by Federal Trade Commission and unpublished decisions by trial courts in other states are not authoritative interpretations of federal law.

1. The other defendant is Paul Kotseas. As used herein, the name Kotseas refers to both Charles and Paul acting jointly.

2. The other action is *Whitinsville Plaza, Inc. v. Whitinsville CVS, Inc.* Kotseas also filed a third-party claim against CVS in the first action, see Mass.R.Civ.P. 14(a), 365 Mass. 760 (1974), but no issues are thereby raised for our consideration in these appeals.

**7. Covenants ⇐1**

Covenant restraining competition will be enforced if it is reasonably limited in time and space and consonant with public interest.

**8. Contracts ⇐116(2)**

To be valid, covenant restraining individual employee from competing with employer must be necessary for protection of employer.

**9. Covenants ⇐1**

Enforcement of covenant restraining commercial use of land can be barred by proof that it is unreasonable in time, space or product line, or obstructs public interest.

**10. Monopolies ⇐12(2)**

Merely by bringing suit to enforce restrictions on commercial use of land in shopping center, plaintiff did not violate antitrust laws. M.G.L.A. c. 93A §§ 2(a), 11.

**11. Monopolies ⇐12(1.7)**

Absent oppressive or vexatious misuse of legal process, it is not illegal to resort to courts in an attempt to limit competition.

---

David A. Talman, Worcester, for Whitinsville Plaza, Inc.

John M. Griffin and Harry P. Kotseas, Worcester, for Charles H. Kotseas & another.

Dennis Pojani, Worcester, for Whitinsville CVS, Inc.

Before HENNESSEY, C. J., and QUIRICO, KAPLAN, WILKINS and ABRAMS, JJ.

QUIRICO, Justice.

These are civil actions commenced by Whitinsville Plaza, Inc. (Plaza), against Charles H. Kotseas and Paul Kotseas (Kotseas) and against Whitinsville CVS, Inc. (CVS). In its further amended complaint against Kotseas, Plaza alleged imminent violations of certain anticompetitive deed restrictions and requested declaratory, injunctive, and monetary relief under theories of breach of contract and unfair acts or practices within the meaning of G.L. c. 93A, § 2. Plaza's amended complaint against CVS likewise alleged imminent violations of the deed restrictions, and it requested declaratory, injunctive, and monetary relief on theories of breach of contract, unfair trade practices, and interference with contractual relations. A judge of the Superior Court granted the defendants' motions to dismiss for failure to state a claim. See Mass.R.Civ.P. 12(b)(6), 365 Mass. 754 (1974).

Plaza appealed from the dismissal of its actions, and we granted its application for direct appellate review in both cases. See Mass.R.A.P. 11(a), 365 Mass. 854 (1974). We hold that dismissal for failure to state a claim was erroneous as to some counts of each complaint.

[1] In ruling on a motion to dismiss, "the allegations of the complaint [and annexed exhibits], as well as such inferences that may be drawn therefrom in the plaintiff's favor, are to be taken as true." *Nader v. Citron*, 372 Mass. 96, ———, 360 N.E.2d 870, 872 (1977). Accord, *Dziokonski v. Babineau*, — Mass. —, —[a], 380 N.E.2d 1295 (1978); *Lantner v. Carson*, — Mass. —, —[b], 373 N.E.2d 973 (1978). These are as follows. In 1968, Kotseas conveyed certain land identified as "Parcel A" to four individuals as trustees of the "122 Trust" (Trust), a wholly owned subsidiary of Plaza. The deed set forth numerous, detailed, reciprocal restrictions and covenants designed to assure the harmonious development of a shopping center on Parcel A and on abutting land retained by Kotseas. In particular, Kotseas promised (a) not to use the retained land in competition with the discount store contemplated by the grantee and (b) to use the retained land only for enumerated business purposes.[3]

a. Mass.Adv.Sh. (1978) 1759, 1760.

b. Mass.Adv.Sh. (1978) 640, 642.

3. The deed also purported to restrict land later acquired by Kotseas within a one-half mile radius. Except as this provision may bear on the intent of the parties to bind Kotseas personally rather than as landowner, we need not consider

Among the permitted business uses of the land retained by Kotseas was a "drug store," defined in an appendix to the deed as a store selling prescribed types of merchandise. In addition, the deed recited that "[t]he foregoing restrictions shall be considered as covenants running with the land to which they are applicable and shall bind and inure to the benefit of the heirs and assigns of the respective parties to whom any part of the lands made subject to the above restrictions covenants and conditions shall at any time become or belong during the period hereinbefore set forth." [4]

In 1975, the Trust conveyed Parcel A to Plaza and, thereafter, ceased operations. The deed to Plaza expressly made Plaza subject to, and gave it the benefit of, the restrictions and covenants in the 1968 deed from Kotseas to the Trust. At some later time, Kotseas leased a portion of its abutting land to CVS for use as a "discount department store and pharmacy." Plaza's complaints state that the lease to CVS, dated May 10, 1977, was expressly subject to the 1968 deed restrictions and that operation of the contemplated CVS store would violate those restrictions. Although the defendants controvert these allegations, we must, as we have said, accept them as true in ruling on the motion to dismiss.[5]

As against Kotseas, Plaza sought (a) an injunction prohibiting the use of the retained land in violation of the restrictions and (b) damages suffered because of the alleged violations. In the alternative, Plaza prayed for a declaration that its own land was no longer subject to the anticompetitive restrictions. Plaza also requested the court to find that Kotseas had knowingly and wilfully violated G.L. c. 93A, § 2, and to award double or treble damages and counsel fees. As against CVS, Plaza requested similar relief and also requested damages on the theory that CVS had tortiously interfered with Plaza's contract by inducing Kotseas to violate its restrictions. The defendants filed motions to dismiss, stating as grounds that Plaza lacked standing to sue on the covenants and that the covenants were, in any event, unreasonable and in restraint of trade.

The granting of the motions to dismiss raises a number of complex and somewhat interrelated issues. Our analysis involves initial consideration of two principles of practice under the Massachusetts Rules of Civil Procedure. First, a complaint may demand relief in the alternative and may contain inconsistent allegations. Mass.R. Civ.P. 8(e)(2), 365 Mass. 749 (1974). Because it would be premature to consider whether Plaza could prevail against CVS both on the theory that CVS is bound to obey the 1968 restrictions and also on the theory that CVS tortiously induced Kotseas to violate those same restrictions, it is necessary for us to consider each of those claims independently. Second, adoption of the Rules abolished many obsolete rules of pleading and procedure in the interest of simplifying the conduct of civil litigation. In particular, there is no requirement that a complaint state the legal theory on which the pleader relies; rather, the complaint need only set forth "a short and plain statement of the claim showing that the pleader is entitled to relief . . . ." Mass.R. Civ.P. 8(a)(1), 365 Mass. 749 (1974). In Federal practice, this liberalization has been held to abolish the "theory of the pleadings" doctrine, to the end that a complaint is not subject to dismissal if it would support relief on *any* theory of law. *Thompson v. Allstate Ins. Co.*, 476 F.2d 746, 749 (5th Cir. 1973). See 2A J. Moore, Federal Practice par. 8.14, at 1713–1718 (2d ed. 1975); 5

it because the actions complained of have occurred and will occur on land that Kotseas owned in 1968.

4. The deed also provided that the restrictions would terminate when a certain adjacent area ceased to be used for parking or when the parties or their successors should so agree in a recorded instrument.

5. Because the lease was not annexed to the complaint, it is not open in the present posture of the case for the defendants to argue for or against any particular interpretation of it. See Mass.R.Civ.P. 12(b), 365 Mass. 754 (1974).

C.A. Wright & A.R. Miller, Federal Practice and Procedure § 1219, at 141–146 (1969). See also *Nader v. Citron, supra,* 372 Mass. at ——[c], 360 N.E.2d 870. We are, therefore, obligated to consider each of the alternative theories of law—namely, that the covenants run with the land, that the covenants constitute contractual promises, and that the defendants have engaged in unfair trade practices—on which Plaza's action might be maintained. E. g., *Rollins Environmental Servs., Inc. v. Superior Court,* 368 Mass. 174, 179–180, 330 N.E.2d 814 (1975). Underlying all the issues in this case, of course, is the question whether, notwithstanding Plaza's right to sue on one or more legal theories, the 1968 restrictions are unenforceable as unreasonable restraints of trade. With this understanding of the breadth of the present appeal, we turn to examination of the several issues.

## I. THEORIES OF RECOVERY.

[2] A. *Real covenant analysis.* Plaza has primarily sought to maintain its actions on the theory that the covenants contained in the 1968 deed run with the land. In our view, Plaza has alleged sufficient facts to be entitled to a hearing on its claims for legal and equitable relief on this theory. See generally 5 R. Powell, Real Property pars. 672–675, at 149–185 (Rohan rev. ed. 1979) (summarizing requirements for covenants to run with land). The covenants in question are evidenced by a writing signed by Kotseas, the covenantor. See *Frank v. Visockas,* 356 Mass. 227, 228–229, 249 N.E.2d 1 (1969) (equity action); *Kennedy v. Owen,* 136 Mass. 199, 203 (1884) (action at law); G.L. c. 259, § 1, Fourth (Statute of Frauds for interests in land). The language of the 1968 deed aptly expresses the intention of the original parties that the covenants run with the land. See *Snow v. Van Dam,* 291 Mass. 477, 480–481, 197 N.E. 224 (1935) (equity action); *Savage v. Mason,* 3 Cush. 500, 505 (1849) (action at law). The deed also grants mutual easements sufficient to satisfy the requirement that Plaza and CVS be in privity of estate. See, e. g., *Morse v. Aldrich,* 19 Pick. 449, 454 (1837) (action at law). Plaza's complaint alleges that CVS had actual knowledge of the restrictions and shows, in any event, that the restrictions were recorded with the deed. See, e. g., *Whitney v. Union Ry.,* 11 Gray 359, 363–364 (1860) (notice required for existence of equitable servitude).

One additional prerequisite for either legal or equitable relief is, however, arguably lacking in this case on the present state of our case law. It is essential that both the benefit and the burden of a real covenant "touch and concern" the affected parcels of land before it will be considered to run. *Orenberg v. Johnston,* 269 Mass. 312, 316, 168 N.E. 794 (1929); *Bronson v. Coffin,* 118 Mass. 156, 163 (1875); *Wheelock v. Thayer,* 16 Pick. 68, 70 (1835). This court has long held that a covenant not to compete contained in a deed, such as is involved in this case, does not "touch and concern" the land to be benefited and that, in consequence, such a covenant does not run with the land. *Shade v. M. O'Keefe, Inc.,* 260 Mass. 180, 183, 156 N.E. 867 (1927); *Norcross v. James,* 140 Mass. 188, 192, 2 N.E. 946 (1885). In *Shell Oil Co. v. Henry Ouellette & Sons,* 352 Mass. 725, 227 N.E.2d 509 (1967), we intimated that we might overrule *Norcross* and *Shade* in an appropriate case. *Id.* at 730–731 & n.8, 227 N.E.2d 509. We believe this is such a case.

It is essential to our task that we identify precisely the holding and rationale of the cases we propose to overrule. *Norcross* was an action seeking specific performance of a covenant not to quarry stone from a parcel of land. The covenant in question was contained in a deed by which one Kibbe conveyed a stone quarry to one Flynt, and it concerned adjoining land retained by Kibbe. The defendant James, a successor to Kibbe's interest, began operating a quarry on the restricted land. The plaintiff Norcross, a successor to Flynt's interest, sought an injunction to halt that operation. 140 Mass. at 188, 2 N.E. 946. In an opinion by Justice Holmes, this court denied relief. *Id.* at 192, 2 N.E. 946.

c. Mass.Adv.Sh. (1977) at 412.

Justice Holmes analyzed the case before him in two steps. He first noted a distinction drawn in early English decisions between promises resembling warranties of title and those resembling grants of easements. Warranty-like covenants ran "with the estate" to grantees from the covenantee, but were enforceable only against the covenantor. Easement-like covenants, on the other hand, ran "with the land" in favor of and against subsequent owners. *Id.* at 188–190, 2 N.E. 946. See also O.W. Holmes, The Common Law 371–409 (1881) (developing historical analysis summarized later in *Norcross* opinion).

Having traced the development of the law of real covenants, Justice Holmes proceeded to determine whether the covenant could be encompassed within the easement-like class.[6] He stated that a real covenant must "touch or concern" the land by conferring "direct physical advantage in the occupation of the dominant estate." 140 Mass. at 192, 2 N.E. at 949. The covenant against operating a quarry did not do so because "[i]t does not make the use or occupation of [the dominant estate] more convenient. It does not in any way affect the use or occupation; it simply tends indirectly to increase its value, by excluding a competitor from the market for its products." *Id.* In addition, the covenant transgressed a supposed rule against attaching "new and unusual incidents" to land, for it attempted to create "an easement of monopoly,—an easement not be be competed with" not theretofore recognized. *Id.*

Two observations about *Norcross* are appropriate before we consider later developments. First of all, the benefit of the covenant surely touched and concerned the dominant estate within the ordinary sense and meaning of the phrase "touch and concern." Justice Holmes's analysis has been described as "overlook[ing] the purpose of all building restrictions, which is to enhance the market value of the promisee's land, whether for residential or for business purposes." 2 American Law of Property § 9.28, at 414 (Casner ed. 1952). It has been suggested that Justice Holmes's "real objection to [the covenant was] the policy against monopolies, and not any policy with reference to real covenants as such." C. Clark, Real Covenants and Other Interests Which "Run with Land" 84 n.26 (1929). Cf. 140 Mass. at 193, 2 N.E. 946 (unnecessary to decide whether covenant would be invalid restraint of trade if enforcement attempted against Kibbe). If free-competition policies were indeed the basis for the *Norcross* decision, it would now seem preferable for us to deal with them explicitly rather than to condemn all anticompetitive covenants regardless of reasonableness.

Second, *Norcross* seems to turn on an assumption that there could be no other class of covenants, differing both from easements and from warranties, but which might nevertheless run with the land. Justice Holmes reasoned that neither the benefit nor the burden of the covenant could run because the benefit was personal to the original covenantee and was therefore inconsistent with the existence of any easement-like right appurtenant to the dominant land. Underlying such reasoning is the peculiar Massachusetts requirement of privity of estate, created by the existence of an easement between the parties to an action on a real covenant. Clark, *supra* at 88. Cf. *Morse v. Aldrich, supra* at 452–454 (statement of Massachusetts privity rule); 140 Mass. at 191, 2 N.E. 946 (citing Massachusetts privity cases). Yet, privity of estate in this sense had never been thought essential to an action *in equity* for specific performance of a covenant. *Beals v. Case,* 138 Mass. 138, 139–140 (1884); *Parker v. Nightingale,* 6 Allen 341, 344 (1863).

Notwithstanding the questions inherent in the *Norcross* decision, this court uncritically followed that case in *Shade v. M. O'Keefe, Inc.,* 260 Mass. 180, 156 N.E. 867 (1927). Like *Norcross, Shade* was a suit in equity by a successor to the promisee against a successor to the promisor seeking specific performance of an anticompetitive

6. Because Kibbe, the original covenantor, was not a party to the *Norcross* case, it was obvious that classifying the covenant with warranties of title would not assist the plaintiff.

covenant. The covenant in question prohibited the operation of a grocery store on the defendant's land for ninety-nine years after 1902, the date of the original deed. 260 Mass. at 181–182, 156 N.E. 867. The court reiterated that, for a covenant to be enforceable in equity, it must accompany or create "an easement or *quasi* easement" in the promisor's land for the benefit of the promisee's land. *Id.* at 183, 156 N.E. 867. It thus followed the rule stated by Justice Holmes in *Norcross.*[7] Without further analysis the court stated that the case before it was indistinguishable from *Norcross,* and it concluded that the action should be dismissed.

This court next confronted the question raised by *Norcross* in *Shell Oil Co. v. Henry Ouellette & Sons,* 352 Mass. 725, 227 N.E.2d 509 (1967), which was a suit in equity by a remote grantee of the promisee against the original promisor and a potential purchaser of part of the burdened land. We there considered a broad and sweeping covenant restraining all uses of the defendants' land that would compete with an existing use of the plaintiff's land. 352 Mass. 726–727, 227 N.E.2d 509, 512. We wrote, "There is much to be said for the position advanced by one of the amici curiae that it is not 'unreasonable to approve covenants . . . which protect . . . [business] investments—very large in most instances—against competition close by,' where the protection will be very limited geographically and will not constitute, in the particular circumstances, an unreasonable restraint of trade. If we were without precedent, we might (in 1967 conditions) reach a conclusion different from that of our predecessors upon the facts which appeared in *Norcross v. James,* and in *Shade v. M. O'Keefe, Inc.* We recognize that there may be substantial reasons for permitting those, having privity of estate with a covenantee of a reasonable covenant restricting competition, to enforce such a covenant in equity against a person having (a) actual or constructive notice of the covenant, and (b) privity of estate with the covenantor." We nonetheless held *Norcross* controlling and ordered that the complaint be dismissed. *Id.* at 729–731, 227 N.E.2d at 512. We did so primarily because of bar reliance on our earlier decisions, but we gave clear warning of our intention to reconsider *Norcross* "in the case of a reasonably limited covenant . . . hereafter made, which shows clearly the parties' intention that the burden and benefit of the covenant are to run to successors in title of the covenantor and the covenantee." *Id.* at 730–731 & 731 n.8, 227 N.E.2d at 513 n.8.[8]

Our most recent encounter with the *Norcross* rule was in *Gulf Oil Corp. v. Fall River Hous. Auth.,* 364 Mass. 492, 306 N.E.2d 257 (1974). In that case, the city of Fall River established a redevelopment plan for a certain area. The plan permitted an unlimited number of gasoline stations to be operated in a zone designated "A" and prohibited all but incidental or accessory use for gasoline sales in zone "B" if a gasoline station already existed in zone "A." The plaintiff obtained a parcel in zone "A" by mesne conveyances from the defendant housing authority and was operating a gasoline station. Another defendant, the Mt. Hope Development Corporation (Mt. Hope), purchased a parcel in zone "B" from the authority, and it sought to operate a gasoline station as well. The deeds to Mt. Hope and to the plaintiff's predecessor both incorporated restrictions substantially equivalent to those set forth in the redevelopment plan. *Id.* at 493–495, 306 N.E.2d 257.

7. The court cited *Clapp v. Wilder,* 176 Mass. 332, 340, 57 N.E. 692 (1900); *King v. Wight,* 155 Mass. 444, 447, 29 N.E. 644 (1892); *Bronson v. Coffin,* 108 Mass. 175, 187 (1871), and *Hurd v. Curtis,* 19 Pick. 459, 464 (1837), in support of its statement. *Clapp* held only that, on the particular facts presented, the promisee had not intended a set-back "condition" to create an equitable servitude. The other three cases all concerned the privity requirement in actions at law.

8. The *Ouellette* opinion was dated June 13, 1967. The covenants involved in this case were contained in a deed dated February 28, 1968, and were, on the assumed facts, unambiguously intended to run with the land to successors in title. Whether they are also "reasonably limited" is the subject of part II of this opinion.

In the *Gulf Oil* case, we ultimately held that the plaintiff might properly seek an injunction against the contemplated use by Mt. Hope. *Id.* at 501, 306 N.E.2d 257. We did not, however, explicitly overrule *Norcross* to reach this result. Instead, we noted that application of the *Norcross* rule had been limited to cases where "the plain and practically exclusive reason for the covenant was to eliminate possible competition for the promisee." *Id.* at 499, 306 N.E.2d at 262. Reasoning that the covenants in *Gulf Oil* were primarily designed to foster planned growth of the redevelopment area and not to grant an individual landowner a monopoly, we concluded that the "touch and concern" requirement was met. *Id.* at 499–500, 306 N.E.2d 257.

Massachusetts has been practically alone in its position that covenants not to compete do not run with the land to which they relate. It has long been the opinion of text writers that our rule is anachronistic and in need of change. See 2 American Law of Property § 9.28, at 414 (Casner ed. 1952); 5 Powell, *supra* par. 678, at 197. The American Law Institute has suggested that an otherwise enforceable covenant not to compete should be held enforceable in the same manner as an equitable servitude. Restatement of Property § 539, Comment k (1944). Reasonable anticompetitive covenants are enforceable in the great majority of States where the issue has arisen. See Comment, Covenants Not to Compete—Do They Pass?, 4 Cal.W.L.Rev. 131, 133–134 (1968). Modern judicial analysis of cases like the one at bar appears to concentrate on the effects of particular covenants on competition and to avoid the esoteric convolutions of the law of real covenants. See, e. g., *Hall v. American Oil Co.*, 504 S.W.2d 313, 316 n.3 (Mo.App. 1973); *Quadro Stations, Inc. v. Gilley*, 7 N.C.App. 227, 231–235, 172 S.E.2d 237 (1970).

In addition to the doctrinal questions about the *Norcross* rule and the preference of most authorities for a more flexible approach, we may note the unfairness that would result from applying that rule to the facts of this case. In what appears to have been an arm's-length transaction, Kotseas agreed in 1968 not to use retained land in competition with the Trust. We may assume (a) that Kotseas received compensation for thus giving up part of his ownership rights by limiting the uses he could make of the retained land, and (b) that freedom from destructive, next-door competition was part of the inducement for the Trust's purchase and of the price paid by the Trust. Plaza, a closely associated business entity, succeeded to the Trust's interest in 1975. One of these entities established a business, presumably at great cost to itself and in reliance on the contractually obtained limitation of competition in its own narrow market area. Notwithstanding the promise not to do so, Kotseas proceeded to lease land to CVS for the purpose of carrying on the business that it knew would, at least in part, compete with Plaza and divert customers from Plaza's premises. Acting with full knowledge of the 1968 arrangement, CVS participated in this inequitable conduct by Kotseas. If we assume for the moment that the 1968 covenants are reasonable in their application to the present facts, we cannot condone the conduct of Kotseas and CVS. Yet, if *Norcross* remains the law, we are powerless to prevent Kotseas and CVS from indirectly destroying or diminishing the value of Plaza's investment in its business.

[3] We think the time has come to acknowledge the infirmities and inequities of *Norcross.* Prior decisions by this court establish what we believe is the proper direction. With respect to covenants in commercial leases, we have long held that reasonable anticompetitive covenants are enforceable by and against successors to the original parties. *R. M. Sedrose, Inc. v. Mazmanian*, 326 Mass. 578, 581, 95 N.E.2d 677 (1950); *Parker v. Levin*, 285 Mass. 125, 127, 188 N.E. 502 (1934); *Sheff v. Candy Box Inc.*, 274 Mass. 402, 406, 174 N.E. 466 (1931); *Strates v. Keniry*, 231 Mass. 426, 429, 121 N.E. 151 (1918). We have applied a similar rule with respect to covenants between fee owners when we could identify intelligible land-use planning goals. *Gulf Oil Corp. v. Fall River Hous. Auth., supra*, 364 Mass. at

499–500, 306 N.E.2d 257; *Jenney v. Hynes*, 282 Mass. 182, 195, 184 N.E. 444 (1933). The distinction we attempted to draw in *Gulf Oil* between covenants intended to suppress competition and those aimed at orderly land development was, we think, in part an attempt to reconcile our decisions with the *Norcross* rule, but was perhaps otherwise untenable as a practical matter: it is difficult to separate overall planning goals from the natural desire of businessmen-developers to be free from unlimited and ruinous competition by their neighbors. In short, our decisions support what we hereby state to be the law: reasonable covenants against competition *may* be considered to run with the land when they serve a purpose of facilitating orderly and harmonious development for commercial use. To the extent they are inconsistent with this statement, *Norcross, Shade*, and *Ouellette* are hereby expressly overruled.

[4] We recognized in our decision in *Ouellette* that "[t]he fact of bar reliance in the past, however, must be given weight where a rule affecting real estate is involved." 352 Mass. at 730, 227 N.E.2d at 512. The fact of such reliance is a persuasive reason for excluding all covenants executed before June 13, 1967, the date of the *Ouellette* decision, from the operation and effect of the new rule which we have declared in the preceding paragraph of the present opinion. *Rosenberg v. Lipnick*, ––– Mass. –––, –––[d], 389 N.E.2d 385 (1979). See *Tucker v. Badoian*, ––– Mass. –––, –––[e], 384 N.E.2d 1195 (1978) (Kaplan, J., concurring). We believe that parties who, after the date of the *Ouellette* decision, executed restrictive covenants of the kind involved in this case could reasonably have relied on the expectation that on the next appropriate occasion thereafter this court would overrule the *Shade* and *Norcross* decisions, as we have done by our present decision. We believe further that parties who executed such covenants after *Ouellette* could not reasonably expect that the covenants would continue to be unenforceable under the rule of the *Shade* and *Norcross* decisions. We therefore hold that our overruling of the rule of the *Shade* and *Norcross* decisions shall apply to all such covenants executed after the *Ouellette* decision. Cf. *Whitney v. Worcester*, ––– Mass. –––, –––[f], 366 N.E.2d 1210 (1977); *Diaz v. Eli Lilly & Co.*, 364 Mass. 153, 167, 302 N.E.2d 555 (1973); 58 B.U.L.Rev. 818, 837–839 (1978).

What we have said should not be construed as an invitation to legal draftsmen to insert unlimited, "boilerplate"-type covenants against competition in real estate documents. As we have said, an enforceable covenant will be one which is consistent with a reasonable overall purpose to develop real estate for commercial use. In addition, the ordinary requirements for creation and enforcement of real covenants must be met. We have summarized many of these requirements earlier in this opinion. Others are found in G.L. c. 184, §§ 27, 30, which regulate enforcement of land-use restrictions generally. Within these limits, however, commercial developers may control the course of development by reasonable restrictive covenants free from resort to devious subterfuges in their attempts to avoid the doubts created by the *Norcross* rule and our efforts to apply or reconcile it in later cases.

B. *Contract analysis.* Although part I–A of this opinion indicates that each of Plaza's complaints states a cause of action and that, accordingly, neither should have been dismissed, we do not overlook the possibility of relief on a purely contractual basis. The deeds from Kotseas to the Trust and from the Trust to Plaza amply demonstrate an intention that the rights accruing under Kotseas's covenants were assignable and, hence, enforceable by Plaza against Kotseas. See *Adamowicz v. Iwanicki*, 286 Mass. 453, 456, 190 N.E. 711 (1934); Restatement (Second) of Contracts § 149, Comment d, Illustration 6 (Tent. Drafts

d. Mass.Adv.Sh. (1979) 853, 860.

e. Mass.Adv.Sh. (1978) 3207, 3219.

f. Mass.Adv.Sh. (1977) 1713, 1734–1736.

1–7, 1973). As an alternative to the remedy available on a real-covenant theory, Plaza may, on proper pleadings, prove facts sufficient to warrant contractual relief including an order directing Kotseas to enforce the deed restrictions against CVS. Moreover, such proof may be relevant to Plaza's complaint that CVS tortiously induced Kotseas to violate the provisions of the deed to the Trust. See Restatement (Second) of Torts § 766 (Tent. Draft No. 23, 1977).

The parties in this case have not briefed or argued the issues suggested by this cursory analysis of contract doctrines. We therefore stop short of extended discussion. See, e. g., *Town Taxi Inc. v. Police Comm'r of Boston*, —— Mass. ——, —— – ——[g], 387 N.E.2d 129 (1979); Mass.R.A.P. 16(a)(4), as amended, 367 Mass. 919 (1975). Because the assignability of the benefit of Kotseas's contractual obligation presents an issue of fact, however, it was error to dismiss the claim based on CVS's alleged interference with that obligation.

C. *Plaza's claims under G.L. c. 93A.* What we have already said sufficiently establishes Plaza's right to proceed beyond the pleading stage on counts other than those seeking recovery under G.L. c. 93A. Therefore it is not strictly necessary that we consider separately whether the facts alleged in Plaza's complaints also state a claim for relief under G.L. c. 93A, §§ 2(*a*) and 11. *Nader v. Citron*, —— Mass. ——, ——[h], 360 N.E.2d 870 (1977). We recognize that c. 93A in general, and the private remedy provisions of § 11 thereof in particular, have been a source of considerable uncertainty. See Pirozzolo, Chapter 93A—The Massachusetts Little FTC Act—A Potent Unexplored Remedy in Business Disputes, 62 Mass.L.Q. 77, 77–78 (1978). We further recognize that the unusual remedial provisions of § 11, encompassing multiple damages for wilful and knowing violations and attorneys' fees for any violation, also provide an incentive to defendants to make reasonable offers of single damages to avoid exposure to multiple damages and attorneys' fees. Cf. *Kohl v. Silver Lake Motors, Inc.*, 369 Mass. 795, 801–803, 343 N.E.2d 375 (1976).

It would doubtless be helpful if there were a clear definition of conduct which may constitute a violation of c. 93A. Such a definition would assist litigants in identifying those cases which have only the normal incentives for settlement as distinguished from those which truly implicate the incentives under c. 93A. On the other hand there are some practical considerations which suggest that it might be unwise for us to attempt to formulate such a definition at so early a stage of this litigation. First, c. 93A is a relatively new statute. It was originally enacted in 1967 (St.1967, c. 813, § 1), and § 11 was added thereto in 1972 (St.1972, c. 614, § 2). There has not been a sufficient amount of litigation from which to develop definitions. Second, it would be preferable if a definition were formulated and developed with the benefit of a record of facts agreed upon or actually established by proof rather than from mere allegations in a complaint as in the present case. *Commonwealth v. DeCotis*, 366 Mass. 234, 241–242, 316 N.E.2d 748 (1974).

The plaintiff's allegations in support of its claim for relief under c. 93A are basically the following: the defendants, either alone or in concert, have violated the terms of a commercial agreement, and that conduct "constitutes unfair acts and practices prohibited" by the statute. We conclude that those allegations are not sufficient to support a claim under c. 93A, and that the judge properly ordered the dismissal of the counts in question. However, we believe that, in view of the paucity of judicial precedents under this statute, this is an appropriate case in which to permit the plaintiff an opportunity to amend its complaint as to these counts, if it makes a motion therefor within a reasonable time after the release of this decision.

## II. DEFENSE OF UNREASONABLENESS.

[5] In addition to making the various arguments referred to in part I, the defend-

g. Mass.Adv.Sh. (1979) 738, 740–741.

h. Mass.Adv.Sh. (1977) 402, 413–414.

ants in both cases argue that Plaza's complaints should be dismissed because the covenants sought to be enforced constitute an unreasonable restraint of trade. We cannot tell from the record on which of the several grounds stated in the motions the judge relied in ordering the actions dismissed. All issues raised by the defendants' arguments nonetheless remain open on appeal. *Ciszewski v. Industrial Accident Bd.*, 367 Mass. 135, 138, 325 N.E.2d 270 (1975); *Thomas Cook & Sons v. Assembled Homes, Inc.*, 357 Mass. 425, 426, 258 N.E.2d 310 (1970); *Waldor Realty Corp. v. Town Clerk of Bellingham*, 350 Mass. 669, 671, 216 N.E.2d 453 (1966). Affirmance of the dismissal on the ground of unreasonable restraint of trade might be proper, but only if we first held the covenants unenforceable as a matter of law. See *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957). We cannot so hold on the factually barren record before us.

**[6]** The defendants have relied in their briefs almost exclusively on consent decrees entered by the Federal Trade Commission and on unpublished decisions by trial courts in other States. These are not, however, authoritative interpretations of Federal law. See *May Dep't Stores Co. v. First Hartford Corp.*, 435 F.Supp. 849, 852–853 (D.Conn.1977), and cases cited. They do not establish that the facts disclosed by the record in this case constitute a per se violation of any Federal law. Goldschmid, Antitrust's Neglected Stepchild: A Proposal for Dealing with Restrictive Covenants under Federal Law, 73 Colum.L.Rev. 1193, 1201–1202 (1973). Note, The Antitrust Implications of Restrictive Covenants in Shopping Center Leases 86 Harv.L.Rev. 1201, 1211–1218 (1973). See *Continental T.V., Inc. v. GTE Sylvania Inc.*, 433 U.S. 36, 49–50 & n.16, 97 S.Ct. 2549, 53 L.Ed.2d 568 (1977); *United States v. E.I. duPont deNemours & Co.*, 351 U.S. 377, 76 S.Ct. 994, 100 L.Ed. 1264 (1956). Accordingly, to the extent the defendants' arguments implicate Federal law, those arguments raise no issue appropriate for decision on a motion to dismiss.

**[7–9]** The defendants also argue that the restrictive covenants are illegal under the common law. Our law is settled that a covenant restraining competition will be enforced if it is reasonably limited in time and space and consonant with the public interest. *Analogic Corp. v. Data Translation, Inc.*, 371 Mass. 643, — —, 358 N.E.2d 804 (1976); *Loranger Constr. Co. v. C. Franklin Corp.*, 355 Mass. 727, 730, 247 N.E.2d 391 (1969); *Thomas v. Paker*, 327 Mass. 339, 341, 98 N.E.2d 640 (1951). Where a covenant restrains an individual employee from competing with his employer, we have insisted that the covenant be necessary for the protection of the employer, and we have accordingly identified only a few interests worthy of protection. See *New England Canteen Serv., Inc. v. Ashley*, — Mass. —, — —[1], 363 N.E.2d 526 (1977), and cases cited. The cases of *Marine Contractors Co. v. Hurley*, 365 Mass. 280, 287–288, 310 N.E.2d 915 (1974); *All Stainless, Inc. v. Colby*, 364 Mass. 773, 779, 308 N.E.2d 481 (1974), and *Richmond Bros. v. Westinghouse Broadcasting Co.*, 357 Mass. 106, 111, 256 N.E.2d 304 (1970), in which we have said that an employer is not entitled to protection from ordinary competition and on which the defendants rely, all embody our concern to preserve an individual's livelihood except in narrowly defined circumstances. The covenants involved here, however, impose no restraint on Kotseas's *employment* opportunities and, to the extent they may bind CVS, restrain a business entity rather than an individual. They are not rendered unenforceable merely because they protect an interest we might not recognize in any employment setting. Unreasonableness in time, space, or product line, or obstruction of the public interest, are the principal bars to enforcement. These factors raise questions of fact to be resolved at a trial on the merits; they do not justify dismissal for failure to state a claim.

**[10, 11]** Finally, we reject the suggestions that, merely by bringing suit to enforce the 1968 restrictions, Plaza has violat-

1. Mass.Adv.Sh. (1977) 1186, 1189–1190.

ed the antitrust laws or c. 93A. Absent oppressive or vexatious misuse of legal process, it is not illegal to resort to the courts in an attempt to limit competition. *Eastern R.R. Presidents Conference v. Noerr Motor Freight, Inc.*, 365 U.S. 127, 139, 81 S.Ct. 523, 5 L.Ed.2d 464 (1961). Cf. *California Motor Transp. Co. v. Trucking Unlimited*, 404 U.S. 508, 515, 92 S.Ct. 609, 30 L.Ed.2d 642 (1972). The present record suggests that Plaza has merely sought to enforce what it reasonably believes to be a lawful contractual obligation assumed by the defendants.

### III. CONCLUSION.

To the extent that they dismiss Plaza's claims under c. 93A, the judgments are affirmed without prejudice to Plaza's right to amend its complaints within a reasonable time hereafter. To the extent they dismiss Plaza's claims for violation of real covenants or for interference with contractual relations, the judgments are erroneous and must be vacated. The cases are remanded to the Superior Court for further proceedings consistent with this opinion.

*So ordered.*




**Lillian PASTAN et al.,[1] Executors,**

**v.**

**Lillian PASTAN et al.[2]**

Supreme Judicial Court of Massachusetts, Norfolk.

Argued April 2, 1979.

Decided May 21, 1979.

Executors of trust brought action seeking construction of will according to law of Commonwealth which might bind Internal Revenue Service to give effect to full marital deduction for trust created under will. The Probate Court for Norfolk County, Ford, J., reported questions of law to Appeals Court, and upon application of executors direct appellate review was granted. The Supreme Judicial Court, Kaplan, J., held that executors were required to value assets distributed to marital deduction trust as at date of distribution, and to assure that value then passing to trust was not less than 50 percent of adjusted gross estate for federal estate tax purposes.

So ordered.

**1. Trusts ⟹282**

In allocating assets in kind, fiduciary as general rule is to take them at their values as at time of distribution and ordinarily at their then market values.

**2. Trusts ⟹282**

Despite wording in a dispositive instrument which seemingly empowers fiduciary to be fanciful or arbitrary in making evaluations of property distributed, he is held by law to the exercise of an honest, objective judgment, which in practice will mean a reasonable judgment corresponding to reality, and in case of traded-in properties will doubtless mean judgment in terms of market values.

**3. Wills ⟹682(2)**

Were there no indication in will of any difference of character or purpose as between two trusts created in will, a rule of equity would suggest that both trusts should suffer and enjoy on an even basis market depreciations and appreciations, but that rule bends to contrary intention.

**4. Wills ⟹684.10(3)**

Where terms of marital deduction bequest showed intention to avoid any interpretation that would jeopardize marital deduction under federal estate tax law by

1. Harvey Pastan and Julius Stone.

2. Robert S. Pastan, Patricia Manuel, Arlyne Norman, Sanford Pastan, and Harvey Pastan (beneficiaries).