Westlaw.

Not Reported in F.Supp.          Page 1
Not Reported in F.Supp., 1997 WL 115651 (S.D.N.Y.), 70 Empl. Prac. Dec. P 44,748
**(Cite as: Not Reported in F.Supp., 1997 WL 115651)**

**H**
Yankelevitz v. Cornell University
S.D.N.Y.,1997.

United States District Court, S.D. New York.
David YANKELEVITZ, M.D. Plaintiff,
v.
CORNELL UNIVERSITY and Cornell University Medical College, Defendants.
**No. 95 CIV. 4593 PKL.**

March 14, 1997.

Lawrence R. Sandak, Sive, Paget & Riesel, P.C., of counsel, for Plaintiff.
Valerie L. Cross, of counsel, Office of the University Counsel, Cornell University, for Defendants.

*OPINION AND ORDER ON RECONSIDERATION*

LEISURE, District Judge.
*1 This action arises out of plaintiff David Yankelevitz's employment by defendant Cornell University, also named herein as defendant Cornell University Medical College. Plaintiff previously moved this Court to disqualify defendants' counsel and to amend his complaint pursuant to Rule 15(a) of the Federal Rules of Civil Procedure. Defendants cross-moved to strike, pursuant to Rule 12(f) of the Federal Rules of Civil Procedure, portions of plaintiff's complaint. By an Opinion and Order entered on August 7, 1996, plaintiff's motion to disqualify defense counsel was granted with respect to an individual attorney and denied with respect to defendants' legal department; plaintiff's motion to amend his complaint was granted; and defendants' motion to strike was denied. Before the Court is defendants' motion for reconsideration or in the alternative for certification for interlocutory appeal of the above holdings. For the reasons stated below, defendants' motion for reconsideration is granted in part and denied in part, and the motion for certification for interlocutory appeal is denied.

BACKGROUND

The relevant background facts are set forth in this Court's opinion of August 7, 1996, familiarity with which is presumed. Briefly, plaintiff, who is employed by defendants, claims that defendants have retaliated against him for hindering the defense of a sex discrimination case brought against the hospital by another individual. Specifically, plaintiff's immediate supervisor, Dr. Claudia Henschke, had alleged that she was passed over for a promotion on the basis of her sex. As part of the investigation of her charges, plaintiff was interviewed by Cornell's attorneys, including Thomas Mead Santoro, Esq., Deputy University Counsel for Cornell.

Plaintiff asserts that thereafter Santoro and other of defendants' employees retaliated against plaintiff by, *inter alia,* initiating an audit to determine whether plaintiff violated Cornell's Conflict of Interest policy and Faculty Practice Plan (the "FPP"). Plaintiff claims that the audit was used to harass and intimidate him, and to deny him job advancements. Further, in an amendment proposed in one of the underlying motions, plaintiff alleges that defendants' counterclaim, which seeks an accounting by plaintiff under the terms of the FPP, was made in retaliation for plaintiff's filing of the instant action.

Defendants request reargument as to the holdings in this Court's prior opinion, namely, reconsideration of the portions of the order: (1) disqualifying Santoro as defense counsel on the basis of the advocate-witness disqualification rule; (2) allowing plaintiff to add factual amendments to Complaint paragraphs 26 and 29 and to add new paragraphs 28, 31, and 32, relating to Santoro's conduct with regard to the continuation of the FPP audit or other allegedly retaliatory conduct; and (3) declining to strike Complaint paragraph 32, which alleges that defendants' counterclaim for an accounting is an unlawful retaliatory act.

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Case 7:07-cv-09588-KMK    Document 17-36    Filed 06/02/2008    Page 2 of 7

Not Reported in F.Supp.
Not Reported in F.Supp., 1997 WL 115651 (S.D.N.Y.), 70 Empl. Prac. Dec. P 44,748
(Cite as: Not Reported in F.Supp., 1997 WL 115651)

Page 2

DISCUSSION

*2 A motion for reconsideration provides an opportunity for parties to bring to the trial court's attention a factual matter or controlling decision that "the court has overlooked" in originally deciding a motion. Local Civil Rule 3(j). The standard is strict, and prohibits a party from raising new arguments or facts that were not before the court in connection with the underlying motion. See, e.g., Swan Brewery v. U.S. Trust Co., 145 F.R.D. 40, 43 (S.D.N.Y.1992). Such a motion is not a mechanism to allow parties to relitigate contentions and arguments already briefed, considered, and decided. See id.

Defendants also seek certification of the above questions for interlocutory appeal. A party may seek appeal of an interlocutory order if the district court certifies "that such order involves a controlling question of law as to which there is substantial ground for difference of opinion and that an immediate appeal from the order may materially advance the termination of the litigation." 28 U.S.C. § 1292(b) (1994); see alsoFed. R.App. Proc. 5(b) (requiring that a petition for permission to appeal include "a statement of the reasons why a substantial basis exists for a difference of opinion on the question and why an immediate appeal may materially advance the termination of the litigation").

The Court of Appeals for the Second Circuit has observed that § 1292(b) carves out "a rare exception to the final judgment rule that generally prohibits piecemeal appeals," and is a mechanism "reserved for those cases where an immediate appeal may avoid protracted litigation." Koehler v. Bank of Bermuda Ltd., 101 F.3d 863, 865-66 (2d Cir.1996). Thus, of the three requirements stated in the text of the statute-that there exist a controlling question of law, that there exist substantial grounds for a difference of opinion, and that immediate review may materially advance termination of the litigation-the last may be the most critical. Cf. id. at 866 (citing the legislative history of the statute, as well as scholarly commentary, see Note, Interlocutory Appeals in the Federal Courts Under 28 U.S.C. 1292(b),88 Harv. L.Rev. 607, 609-11, for the proposition that the primary aim of the provision is to avoid fruitless litigation, although not necessarily adopting that view).

I. Plaintiff's Motion to Disqualify

On this motion for reargument, defendants contend that this Court overlooked controlling law in holding (1) that plaintiff had met the "high standard of proof" applicable in a motion to disqualify opposing counsel under the advocate-witness rule; and (2) that Santoro's testimony was necessary. As to the burden of proof, defendants argue that the Court improperly relied on the pleadings and plaintiff's affidavit, which defendants characterize as self-serving and conclusory, in concluding that Santoro should be called as a witness for his client. As to the necessity of Santoro's testimony, defendants argue that the Court overlooked the fact that other witnesses would be available to testify to the matters alleged and that therefore the Court erred in concluding that the case involves "actions, statements, and beliefs of Santoro that only Santoro can explain or refute." Yankelevitz v. Cornell Univ., No. 95 Civ. 4593, 1996 WL 447749, at *3 (S.D.N.Y. Aug.7, 1996).

*3 Defendants have not, in the Court's view, pointed to any controlling decision or factual matter that this Court overlooked in the prior opinion. Nevertheless, it is apparent that some clarification may be helpful to the parties, and the Court therefore will undertake to explain the basis for its prior holding. Generally, a "party seeking disqualification must carry a heavy burden and meet a high standard of proof." Paretti v. Cavalier Label Co., 722 F.Supp. 985, 987 (S.D.N.Y.1989) (citations and internal quotation marks omitted). However, no case the Court has uncovered establishes with precision what that "high standard" is, nor specifies the exact quantum of evidence needed to sustain the movant's burden. Some courts have instead observed simply that motions to disqualify opposing counsel should

Not Reported in F.Supp.                                                                                                    Page 3
Not Reported in F.Supp., 1997 WL 115651 (S.D.N.Y.), 70 Empl. Prac. Dec. P 44,748
**(Cite as: Not Reported in F.Supp., 1997 WL 115651)**

be closely examined and are subject to "strict scrutiny." *See Fulfree v. Manchester,* 945 F.Supp. 768, 770 (S.D.N.Y.1996).

The advocate-witness rule, embodied in Disciplinary Rule 5-102(A) of the New York Code of Professional Conduct, provides that an attorney who "ought to be called as a witness" on a client's behalf must withdraw as the client's advocate before a tribunal. The minimal threshold test for whether an attorney "ought to testify" is "whether the attorney's testimony could be significantly useful to his client,"*Lamborn v. Dittmer,* 873 F.2d 522, 531 (2d Cir.1989) (citing *MacArthur v. Bank of N.Y.,* 524 F.Supp. 1205, 1208 (S.D.N.Y.1981)), or whether the testimony is "necessary to one side's case," taking into account "such factors as the significance of the matters, weight of the testimony, and availability of other evidence,"*Keoseian v. von Kaulbach,* 707 F.Supp. 150, 154 (S.D.N.Y.1989).

Defendants are corporate entities and therefore can only act through their representatives. It is undisputed that Santoro acted as defendants' representative in many of the events underlying plaintiff's allegations. Plaintiff complains of retaliation by defendants, and therefore a basic element of his claims is to prove defendants' retaliatory intent. Plaintiff can establish unlawful employment retaliation if he demonstrates, among other things, that a retaliatory animus was a motivating factor. *See Cosgrove v. Sears, Roebuck & Co.,* 9 F.3d 1033, 1039 (2d Cir.1993) ("Title VII is violated when an employer is motivated by retaliatory animus, even if valid objective reasons for the [adverse employment action] exist."). Thus, retaliation could be shown if defendants' representatives evinced a retaliatory animus against plaintiff. In order to defend itself, then, Cornell will have to show that those acting on its behalf lacked retaliatory intent.

It is undisputed that Santoro was involved, as defendants' representative, in the initial interview of plaintiff during Cornell's investigation of Henschke's charges. Defendants also apparently do not dispute plaintiff's allegation that Santoro stated, in a letter to plaintiff's counsel, that, of all the individuals interviewed in the investigation, plaintiff was the only one who "refused to answer questions fully." Yankelevitz Aff. ¶ 17; Compl. ¶ 18. This statement provides one of the factual bases supporting an inference that retaliation motivated defendants' subsequent actions. Thus, Santoro's testimony is necessary because the case involves "actions, statements, and beliefs of Santoro that only Santoro can explain or refute." *Yankelevitz,* 1996 WL 447749, at *3. Retaliatory animus or lack thereof on the part of Santoro, who acted as defendants' representative, is a necessary part of this case and Mr. Santoro's testimony would be, to say the least, "significantly useful" as evidence of his intent.

*4 Defendants request leave for interlocutory appeal, arguing that an immediate appeal may materially advance the termination of this litigation because of Santoro's knowledge of the issues in this case. Thus, Cornell argues, an immediate appeal, because it could lead to Santoro's reinstatement as defense counsel, may shorten this litigation by eliminating the delay caused by replacement of Santoro with new counsel unfamiliar with the history of the lawsuit. This Court disagrees. As stated in the original opinion, "[d]isqualification of Santoro will not 'work a substantial hardship' on defendants because the remainder of Cornell's legal department, individual members of [which] have substantial familiarity with this case," was not vicariously disqualified. *Id.* Although that observation was made in the context of determining whether the "substantial hardship" exception stated in Disciplinary Rule 5-101(B)(4) would apply in this case, this factor also sways that Court in denying certification for interlocutory appeal. Defendants have not convinced the Court that an immediate appeal of this question, even if it led to reversal of the disqualification, is likely *materially* to advance the termination of this lawsuit, because Cornell has not shown that the inevitable delay caused by the need to replace Santoro will be significant.

II. *Plaintiff's Motion to Amend*

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp. Page 4
Not Reported in F.Supp., 1997 WL 115651 (S.D.N.Y.), 70 Empl. Prac. Dec. P 44,748
**(Cite as: Not Reported in F.Supp., 1997 WL 115651)**

Defendants next argue that this Court overlooked controlling law in holding that plaintiff should be allowed to amend his complaint because he sought to add factual amendments to claims that were not the subject of dismissal motions. Because the original holding omitted discussion of defendants' argument that the proposed amendments were futile because they constituted inadmissible statements regarding settlement discussions, and because this argument was raised in defendants' original papers in the underlying motion, the Court grants the motion for reargument, and upon reargument holds that plaintiff's motion for leave to amend is granted.

Rule 15(a) states that leave to amend "shall be freely given when justice so requires," and the Second Circuit has accordingly held that leave should be granted absent "undue delay, bad faith, futility of the amendment, and perhaps most important, the resulting prejudice to the opposing party." *State Teachers Retirement Bd. v. Fluor Corp.,* 654 F.2d 843, 856 (2d Cir.1981); *see also Foman v. Davis,* 371 U.S. 178, 182, 83 S.Ct. 227, 9 L.Ed.2d 222 (1963); *Richardson Greenshields Sec., Inc. v. Lau,* 825 F.2d 647, 653 n. 6 (2d Cir.1987). Defendants argue that the proposed amendments relate to settlement discussions and thus would be inadmissible at trial under Rule 408 of the Federal Rules of Evidence.[FN1] If the challenged material in fact relates to settlement discussions, then such amendment would arguably be futile because they could be stricken under Rule 12(f) of the Federal Rules of Civil Procedure. *See, e.g., Lipsky v. Commonwealth United Corp.,* 551 F.2d 887, 893 (2d Cir.1976) ("[I]t is settled that [a motion to strike as immaterial or impertinent] will be denied, unless it can be shown that *no evidence in support of the allegation would be admissible.*" (emphasis added)); *Kelly v. L.L. Cool J.,* 145 F.R.D. 32, 40 (S.D.N.Y.1992) (granting motion to strike allegation relating to a compromise negotiations).

> FN1. Defendants' arguments in this vein focus on Complaint paragraph 28, which alleges that:
>
> On or about December 15, 1994, Mr. Santoro told Dr. Yankelevitz that Dr. Yankelevitz had failed to take certain actions with respect to the Faculty Practice Plan which could result in the termination of his employment with Cornell and that if Dr. Yankelevitz failed to take certain immediate actions as directed by Mr. Santoro, he would face consequences affecting his continued employment at Cornell. At that time, Mr. Santoro knew, or should have known, that some or all of the requirements being imposed upon Dr. Yankelevitz were not imposed upon any other member of the Department of Radiology and that the Department did not even have procedures in place to permit Dr. Yankelevitz to satisfy those requirements.

**\*5** However, in this case, the parties sharply dispute whether the alleged statements and conduct occurred in conversations that in fact constitute settlement discussions. Moreover, defendants have not demonstrated that the proposed amendments would involve *inadmissible* evidence of compromise negotiations. Rule 408 states that evidence of statements or conduct that relates to the "furnishing or offering or promising to furnish, or ... accepting or offering or promising to accept, a valuable consideration in compromising or attempting to compromise a claim" is not admissible "to prove liability for or invalidity of the claim or its amount."

Defendants contend that their affidavits describing a December 15, 1994 meeting demonstrate that the any evidence relating to the meeting would be inadmissible under Rule 408, and that Complaint paragraph 28 should not be allowed.[FN2] This Court disagrees. First, it is not clear that any of the discussions related to an offer of consideration in order to settle a claim. As far as can be determined from the affidavits, Cornell's representatives seem merely to have explained the hospital's position as to what plaintiff would have to do in order to com-

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.
Not Reported in F.Supp., 1997 WL 115651 (S.D.N.Y.), 70 Empl. Prac. Dec. P 44,748
(Cite as: Not Reported in F.Supp., 1997 WL 115651)

Page 5

ply with the FPP audit. Although defendants' affiants characterize the meeting as an attempt to "settle [ ]" or "resolve" the FPP audit issues, *see* Santoro Aff. ¶ 18; Thompson Aff. ¶ 4, that label alone does not place the meeting within Rule 408's ambit.

> FN2. The other proposed amendments do not appear to relate to this meeting, and defendants do not appear to suggest that any of the other allegations relate to any other compromise negotiation.

Second, it is not clear that evidence relating to the challenged allegations, even if the statements or conduct occurred in the context of a compromise negotiation, would be offered in order to prove liability for or invalidity of the claim that is purportedly being negotiated in the conversations. It is not alleged that there was any discussion of settling a claim that the FPP audit was brought in retaliation against plaintiff for his participation in the investigation of Henschke's charges. The proposed amendments could only be stricken if "no evidence in support of the allegation would be admissible." *Lipsky*, 551 F.2d at 893. Evidence in support of the allegations about the December 15, 1994 meeting could be admissible as long as it was not offered to show the liability for or invalidity of the FPP audit-but rather offered to show, for example, that defendants used the audit as an indirect means of threatening plaintiff with termination.

Thus, it is not clear that the amendments could properly be stricken as relating to settlement negotiations, especially given the general disfavor with which motions to strike are generally viewed. *See, e.g., Lipsky*, 551 F.2d at 893 (noting that evidentiary findings should be avoided at the preliminary stages of litigation). Therefore it is not clear at this point that the proposed amendments would be futile. *Cf. Eskofot A/S v. E.I. Du Pont De Nemours & Co.*, 872 F.Supp. 81, 94 (S.D.N.Y.1995) (Leisure, J.) (declining to strike allegations, despite strong reservations about the plaintiff's contention that the allegations did not relate to settlement negotiations, because it was unclear whether or not the discussions referred to were such negotiations).

*6 Accordingly, plaintiff's motion for leave to amend is, upon reconsideration, granted without prejudice to defendants' ability to move to strike the allegations, should it become clear that they refer to conversations that would be inadmissible under Rule 408 of the Federal Rules of Evidence or that would otherwise be subject to a motion to strike under Rule 12(f) of the Federal Rules of Civil Procedure. Defendants' request for permission for immediate appeal appears to be based on an understanding of this Court's prior order as holding that a proposed amendment can be held to be futile *only* if it is the subject of a motion to dismiss. Such a view was not the intended holding of this Court. Therefore, the motion for certification for interlocutory appeal is deemed moot.

III. *Defendants' Cross-Motion to Strike*

Defendants' only argument for reconsideration of the Court's original holding with respect to striking one of plaintiff's allegations of retaliation is that the Court overlooked the fact that the counterclaim that plaintiff alleges is retaliatory is compulsory under the Federal Rules of Civil Procedure. Defendants further urge that because a holding that a compulsory counterclaim can be complained of as an unlawful retaliatory employment action could have "enormous policy implications and practical effects" and appears to be a decision of first impression in this Circuit, certification for interlocutory appeal is warranted.

Defendants' motion for reargument must be denied for failure to meet the strict requirements of Rule 3(j). The Court did not overlook the fact that the counterclaim was compulsory. Indeed, the August 7, 1996 opinion stated that the Court was "unwilling to adopt a rule stating that compulsory counterclaims ... cannot, as a matter of law, constitute retaliation," and concluded that "a state of facts could be proven in which the counterclaim, al-

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Case 7:07-cv-09588-KMK    Document 17-36    Filed 06/02/2008    Page 6 of 7

Not Reported in F.Supp.                                                                                            Page 6
Not Reported in F.Supp., 1997 WL 115651 (S.D.N.Y.), 70 Empl. Prac. Dec. P 44,748
**(Cite as: Not Reported in F.Supp., 1997 WL 115651)**

though it may be compulsory, is causally connected" to the institution of the instant action. *Yankelevitz,* 1996 WL 447749, at *4, *6. The holding, because of the compulsory nature of the counterclaim, puts an employer in a difficult position by forcing it to choose between facing an additional retaliation claim by asserting the counterclaim or waiving the counterclaim by not asserting it. This Court's prior opinion on this issue attempted to balance the hardship thus placed on defendants, against the requirement that parties be accorded latitude in pleadings, as proper under the liberal "any state of facts" standard applicable on a motion to strike. The Court upheld a plaintiff's ability to make allegations that could, under a given set of facts proved, allow the plaintiff to recover.

The fact that defendants disagree with the balance struck by this Court does not render the motion to strike an issue for reargument, but the "substantial ground for difference of opinion"-as to the policy implications of the holding, if nothing else-does militate in favor of certification of the question for interlocutory appeal. The potential practical impact of the holding on employers' ability to bring compulsory counterclaims are arguably an important matter requiring review by the Second Circuit in light of the absence of controlling law on the question. Nevertheless, because it appears unlikely that "immediate appeal of the order may materially advance the termination of this litigation," this Court holds that the issue is not proper for immediate review. 28 U.S.C. § 1292(b) (1994).

*7 The retaliation claim on the basis of defendants' counterclaim represents a small portion of the overall litigation, which alleges a two-year pattern of retaliatory conduct by defendants. Moreover, many of plaintiff's other retaliation claims revolve around the same FPP audit that is the subject of defendants' counterclaim, and defendants' counterclaim itself is to be litigated. Thus, elimination of the challenged retaliation claim, even if it could be obtained on appeal, would not significantly reduce the issues remaining in the case. *Cf. Westwood Pharms. v. Natural Fuel Gas Distrib. Corp.,* 964 F.2d 85, 88 (2d Cir.1992) (questioning the propriety of certification because "[e]ven if we were to hold that [interlocutory appellee] is barred from raising the [challenged defense], many of the same factual issues relevant to that defense would still have to be litigated"); *Isra Fruit Ltd. v. Agrexco Agric. Export Co.,* 804 F.2d 24, 25-26 (2d Cir.1986) (finding it "quite unlikely that an immediate appeal may materially advance the termination of this lawsuit" because the challenged claims were "closely related" to unchallenged claims; elimination of the challenged claim was unlikely to result in "any appreciable saving of time" in trial of the remaining issues; discovery as to all of the claims "appears likely to overlap to a considerable extent"; and various techniques, such as the use of special verdicts, were available to avoid the necessity of re-trial should the challenged claim be reversed on post-trial appeal).

Defendants' request for certification fails to meet the stringent "burden of persuading the court ... that exceptional circumstances justify a departure from the basic policy of postponing appellate review until after the entry of a final judgment." *DiCola v. American Steamship Owners Mut. Protection & Indemnity Assoc. (In re Prudential Lines, Inc.),* 59 F.3d 327, 332 (2d Cir.1995) (quoting *Coopers & Lybrand v. Livesay,* 437 U.S. 463, 475, 98 S.Ct. 2454, 57 L.Ed.2d 351 (1978)) (internal quotation marks omitted) (alteration in *DiCola* ).

CONCLUSION

Defendants' motion for reconsideration is HEREBY GRANTED with respect to plaintiff's motion for leave to amend, and upon reconsideration, plaintiff's motion is HEREBY GRANTED. Defendants' motion for reconsideration is HEREBY DENIED with respect to the motion to disqualify and the cross-motion to strike portions of the complaint. Finally, defendants' petition for certification for interlocutory appeal is HEREBY DENIED.

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.  Page 7
Not Reported in F.Supp., 1997 WL 115651 (S.D.N.Y.), 70 Empl. Prac. Dec. P 44,748
**(Cite as: Not Reported in F.Supp., 1997 WL 115651)**


SO ORDERED

S.D.N.Y.,1997.
Yankelevitz v. Cornell University
Not Reported in F.Supp., 1997 WL 115651 (S.D.N.Y.), 70 Empl. Prac. Dec. P 44,748

END OF DOCUMENT

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.